UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
CERTAIN UNDERWRITERS AT ) Civil Action
LLOYD'S, LONDON, LEXINGTON )
INSURANCE COMPANY, and )
WÜRTTEMBERGISCHE VERSICHERUNG AG )
) Case No.:
Plaintiffs )
)
v. )
) **COMPLAINT FOR DECLARATORY**
STERLING FINANCIAL INVESTMENT ) **JUDGMENT AND BREACH OF**
GROUP, INC., CHARLES P. GARCIA, THOMAS G. ) **CONTRACT**
KARIDAS, and VFINANCE INVESTMENTS, INC. )
)
Defendants. )
-------------------------------------------------------------------X

Plaintiffs, Certain Underwriters at Lloyd's, London ("Lloyd's"), Lexington Insurance Company ("Lexington"), and Württembergische Versicherung AG ("Württ") (hereinafter referred to collectively as "Insurers" or "Plaintiffs"), by and through their attorneys, Kissel Pesce Hirsch & Wilmer, LLP, for their Complaint against Defendants, Sterling Financial Investment Group, Inc. ("Sterling"), Charles P. Garcia ("Garcia"), Thomas G. Karidas ("Karidas"), and vFinance Investments, Inc. ("vFinance"), allege as follows:

### NATURE OF ACTION, JURISDICTION, AND VENUE

1.    This is an action for a declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2002 and breach of contract.

2.    This court has jurisdiction over this action based on diversity of citizenship pursuant to 28 U.S.C. §1332 (a). The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

3. Venue is proper in this District pursuant to 28 U.S.C. §1391 (a) (3) and (d) because Defendants are subject to personal jurisdiction in this district and there is no other district in which this action may otherwise be brought, and Defendant Karidas is an alien who may be sued in any district.

## PARTIES

4. Plaintiff Lloyd's consists of members of underwriting syndicate numbers 2987 and 2488, managed respectively by Brit Syndicates Limited and ACE Underwriting Agencies Limited, business entities organized and existing under the laws of the United Kingdom that are in the business of the sale and insurance of insurance policies for, *inter alia,* professional liability, have their principal places of business in London, England and conduct business in the states of Florida and New York.

5. The participating Lloyd's Syndicates subscribe in their designated percentages to one or both of policy number SF403040X, effective from May 9, 2004 to May 24, 2005, and policy number FD0504362, effective from May 24, 2005 to May 24, 2006, as follows: (1) Syndicate 2987, 30% under policy number SF403040X and 50% under policy number FD0504362; and (2) Syndicate 2488, 20% under policy number SF403040X. Copies of policy number SF403040X and policy number FD0504362, collectively referred to herein as the "Policies," are attached hereto as Exhibits "A" and "B."

6. Plaintiff Lexington is an insurance company incorporated under the laws of the state of Delaware, with its principal place of business in Boston, Massachusetts. Plaintiff Lexington subscribes to the Policies in its designated percentage of 30% under policy number SF0403040X and 50% under policy number FD0504362.

7. Plaintiff Württ is an insurance company incorporated under the laws of Germany. It is a branch of Württembergische UK Limited, doing business in the United Kingdom. Plaintiff Württ subscribes in its designated percentage of 20% under policy number SF0403040X.

8. Defendant Sterling is a financial services corporation incorporated under the laws of the state of Florida, with its principal place of business at 1200 North Federal Highway, Suite 400, Boca Raton, Florida 33432. Defendant Sterling, at all times relevant to this action, was a registered broker-dealer with the National Association of Securities Dealers ("NASD," now known as the Financial Industry Regulatory Authority), a non-governmental regulatory organization for the trading and exchange of securities based in New York, New York.

9. Defendant Garcia is the Chief Executive Officer of Defendant Sterling. Upon information and belief, Defendant Garcia maintains residences at 2358 N.W. 23rd Road, Boca Raton, Florida 33432, and at 234 S. Halifax Drive, Ormond Beach, Florida.

10. Defendant Karidas is an individual residing in Athens, Greece, with a business address at Kifisias Avenue, Building 3, Kifisias 14562, Athens, Greece 720.

11. At all relevant times, Defendant Karidas was acting in the course and scope of his employment with Defendant Sterling as a registered representative and/or investment advisor.

12. Defendant vFinance is a corporation incorporated under the laws of the state of Florida, with its principal place of business at 3010 North Military Trail, Suite #300, Boca Raton, Florida, 33431.

13. Upon information and belief, Defendant vFinance is a successor-in-interest to Defendant Sterling.

## FACTS

### A. THE POLICIES

14. The Policies provide Defendants Sterling, Garcia and Karidas with claims made and reported Securities Broker/Dealer Professional Liability Insurance, subject to their stated terms, conditions, exclusions and endorsements.

15. The Policies are each subject to a $1 million limit of liability for any one Loss, and a $2 million limit of liability in the aggregate. Each policy's limit of liability is in excess of a $100,000 retention (hereinafter referred to as "Retention Amount") for each and every claim.

16. Defendants Sterling, Garcia and Karidas fall within the definition of "Insured" under Definition (f) and endorsements to the Policies.

17. Section 1.C.1 of the Policies provides:

> The Insurer shall have the right and duty to defend, subject to and as part of the Limits of Liability, any Claim made against an Insured during the Policy Period or Discovery Period (if applicable) and reported in writing to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act for which coverage if afforded by this policy, even if any of the allegations of the Claim are groundless, false or fraudulent.

18. The Policies define "Loss" in relevant part, as "damages, judgments, settlements and Defense Costs. . . ."

19. The Policies define "Defense Costs" in relevant part, as "reasonable and necessary fees, costs and expenses consented to by the Insurer . . . resulting solely from the investigation, adjustment, defense and appeal of a Claim against an Insured(s). . . ."

20. Under Section 1.C.2 of the Policies, a "Settlement Opportunity" exists when the "Insurer recommends a settlement that does not exceed the policy's applicable Limit of Liability and which is acceptable to the claimant."

21. Section 1.C.2 of the Policies provides, in pertinent part, that if the Insureds do not consent to a "Settlement Opportunity" within thirty (30) days, then the Insurers' "liability for the Claim shall not exceed the amount for which [they] could have settled the Claim plus Defense Costs incurred up to the date of the refusal to settle."

22. Section 1.C.2 of the Policies also provides:

> In the event the Insured(s) refuse to refuse to consent to a Settlement Opportunity, the Insurer shall have the right but not the obligation to continue the defense of the Claim after the date of the refusal to settle and may in such a case, at any time after the date of the refusal to settle, withdraw from the further defense of the Claim by tendering control of the defense to the Insured.

23. Section 1.C.2 of the Policies further provides that "the Insured(s) shall not admit liability for or settle any Claim or incur any defense costs without the Insurer's prior written consent."

24. Section 5, "Limits of Liability," of the Policies provides that "Defense Costs are not payable by the Insurer in addition to the Limit of Liability. Defense Costs are part of Loss and as such are subject to the Limit of Liability for Loss."

25. Section 6, "Retention," of the Policies provides:

> The Insurer shall only be liable for the amount of Loss arising from a Claim which is in excess of the applicable Retention Amount . . . such Retention Amount **to be borne by the Insureds** and shall remain uninsured with regard to all Loss arising from any Claim (emphasis added).

26. Sections 8 and 7, "Notice/Claim Provisions," of the Policies provide, in relevant part:

> (a) The Broker/Dealer or the Insured, shall as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of a Claim made against an Insured as soon as practicable during the Policy Period or during the Discovery Period (if applicable) as long as such Claim(s) is reported no later than 30 days after the date such Claim was first made against an Insured.

### B. THE INSURERS ACCEPTED COVERAGE FOR FOUR CLAIMS TENDERED BY DEFENDANTS STERLING AND GARCIA

27. *Roger Wheeler, et al. v. Cardinal Capital Management, Inc., et al.*, NASD Case No. 05-01877 (the "Wheeler Claim") is a claim against, *inter alia*, Defendants Sterling and Garcia that was filed with the NASD in California on or about April 18, 2005 and, upon information and belief, remains pending.

28. At least three other claims are pending against, *inter alia*, Defendant Sterling: (1) *Carmella Donnino, et al v. Sterling Financial Investment Group, Inc., et al.*, NASD Case No. 05-03710 (the " Donnino Claim"); (2) *Charles P. Camilleri and Frances Camilleri v. Sterling Financial Investment Group, Inc., et al.*, NASD Case No. 05-05582 (the "Camilleri Claim"); and (3) *Howard Frank and Diana Frank v. JW Genesis, Inc. n/k/a Wachovia Securities Financial Network, LLC, et al.*, NASD Case No. 05-06709 (the "Frank Claim").

29. The Donnino Claim was filed with the NASD in Florida on July 18, 2005. The Camilleri Claim was filed with the NASD in Florida on October 31, 2005. The Frank Claim was filed with the NASD in Florida on January 4, 2006.

30. Defendants Sterling and Garcia tendered the Wheeler Claim to the Insurers subscribing to policy number SF403040X.

31. Defendant Sterling tendered the Donnino, Camilleri and Frank Claims to the Insurers subscribing to policy number FD0504362.

32. With the consent of Defendants Sterling and Garcia, the Insurers assigned the law firm of Marshall, Dennehey, Warner, Coleman & Goggin as defense counsel to defend the Wheeler Claim.

33. With the consent of Defendant Sterling, the Insurers assigned the law firm of Marshall, Dennehey, Warner, Coleman & Goggin as defense counsel to defend the Donnino and Camilleri claims, and the law firm of Sutherland Asbill & Brennan to defend the Frank Claim.

34. The Insurers accepted coverage for each claim subject to the terms, conditions, and exclusions of the Policies and their rights under the Policies and at law.

35. The Insurers have notified Defendants that the "Insureds" under the Policies must satisfy the Retention Amount for each claim before the Insurers had any obligation to pay Loss under the Policies.

### C. DEFENDANTS STERLING AND GARCIA BREACHED CONTRACTUAL OBLIGATIONS UNDER THE POLICIES

36. Defendants Sterling and Garcia have, without valid reason or excuse, failed and refused to satisfy their obligations under Section 6 of the Policies to pay the Retention Amount.

37. Defendants Sterling and Garcia breached their obligations under Section 6 of the Policies by failing and refusing to make Loss payments in connection with the Wheeler, Donnino, Camilleri and Frank Claims, including payments for Defense Costs within the Retention Amount.

38. As a result of the breaches by Defendants Sterling and Garcia, the Insurers have paid or will pay Defense Costs in connection with the Wheeler, Donnino, and Camilleri Claims totaling $113,947.49

39. Each of the payments the Insurers have made or will make for each Claim are for Loss amounts comprised of Defense Costs within the Retention Amount ($27,814.51 for the Wheeler Claim, $28,290.58 for the Donnino Claim and $57,842.40 for the Camilleri Claim).

40.     With the knowledge and consent of Defendants Sterling and Garcia, defense counsel engaged in settlement discussions with the claimants in each of the four Claims. During that process, the Insurers and Defendants Sterling and Garcia agreed that it was reasonable to determine whether and for what amount each of the Claims could be settled.

41.     Once defense counsel obtained settlement demands and began to negotiate lower demands, the Insurers promptly advised Defendants Sterling and Garcia and their counsel that "Settlement Opportunities" under Section 1.C.2 of the Policies had become available in each Claim. Copies of these letters are attached hereto as Exhibits "C," "D," "E," and "F."

42.     In each case, the "Settlement Opportunity" was, alone or when added to the incurred Defense Costs, less than the Retention Amount applicable to each Claim.

43.     Defense counsel advised the Insurers and the Insureds that, in their opinion, the settlement demands in each Claim were reasonable.

44.     Upon information and belief, each Claim could have been settled for a Loss amount that is within the Retention Amount, including the Defense Costs that had been incurred.

45.     Upon information and belief, Defendants Sterling and Garcia have not resolved any of the four Claims in compliance with Section 1.C.2.

46.     Consequently, pursuant to Section 1.C.2 of the Policies, the Insurers advised Defendants Sterling and Garcia and defense counsel that they were withdrawing coverage for each of the four Claims. Copies of these letters are attached hereto as Exhibits "G," "H," "I," and "J."

47.     Because of the failure and refusal of Defendants Sterling and Garcia to pay the Defense Costs incurred by defense counsel, the Insurers have paid or will pay amounts that Defendants Sterling and Garcia are required to pay.

48. The Insurers have demanded that Defendants Sterling and Garcia repay the Defense Costs the Insurers have paid or will pay to the respective defense counsel.

49. Defendants Sterling and Garcia have failed and refused to repay the Defense Costs the Insurers have paid or will pay and that defense counsel have incurred.

50. As a result, and pursuant to the Alternative Dispute Resolution Provision in Sections 18 and 16 of the Policies (the "ADR Provision"), the Insurers filed a demand for arbitration against Defendants Sterling and Garcia with the American Arbitration Association ("AAA") on September 26, 2006. Copies of the original and amended arbitration demands are attached hereto as Exhibits "K" and "L."

51. Defendants Sterling and Garcia rejected the Insurers' arbitration demand and elected non-binding mediation administered by the AAA.

52. A mediation session between the parties took place on March 26, 2007; the mediation terminated without the parties reaching a resolution because Defendants Sterling and Garcia refused to meaningfully participate.

53. Pursuant to the ADR provisions of the Policies, more than 120 days after the termination of the mediation has elapsed.

### D. THE INSURERS DECLINED COVERAGE FOR THE CLAIM TENDERED BY DEFENDANTS STERLING AND KARIDAS

54. On May 21, 2006, Defendant Sterling's counsel notified the Insurers subscribing to policy number FD0504362 of a claim that had been made it on or about November 22, 2005 by a group of investors alleging that Defendants Sterling and Karidas had made unauthorized trades totaling $5,232,730. (the "Cofinas Claim"). A copy of the May 21, 2006 letter is attached hereto as Exhibit "M."

55. In a letter dated June 20, 2006, the Insurers reserved the right to disclaim coverage for the Cofinas Claim on late notice grounds and requested that Defendant Sterling provide additional information regarding the Cofinas Claim.

56. On May 17, 2007, counsel for Defendant Karidas notified the Insurers subscribing to policy number FD0504362 of a Statement of Claim ("SOC") that the Cofinas claimants had filed against Defendants Sterling and Karidas with NASD in New York on or about December 7, 2006. That proceeding, which, upon information and belief, is currently pending, is styled *Agisilaos Cofinas, et al. v. Sterling Financial Investment Group, Inc. and Thomas Karidas*. A copy of the May 17, 2007 letter is attached hereto as Exhibit "N."

57. Defendant Karidas, without the Insurers' consent or authorization, admitted in writing that he had made unauthorized trades in the Cofinas claimants' securities accounts.

58. By a letter dated June 8, 2007 to counsel for Defendant Karidas, the Insurers disclaimed coverage under policy number FD0504362 for the Cofinas Claim on late notice grounds. A copy of this letter is attached hereto as Exhibit "O."

59. The Insurers also noted in the June 8, 2007 letter that to the extent the date of the SOC, December 7, 2006, might be considered the date the Claim was made against Karidas, coverage was not available under policy number FD0504362 because that date was not within the policy period; the Insurers also reserved the right to deny coverage as a result of Defendant Karidas's written admission of liability for the Cofinas Claim.

60. By a letter dated June 18, 2007, counsel for Defendant Karidas requested that the Insurers treat the Cofinas Claim as a notification under policy number SF403040X. A copy of this letter is attached hereto as Exhibit "P."

61.     By a letter dated July 18, 2007, the Insurers advised counsel for Defendant Karidas that coverage for the Cofinas Claim was not available to Karidas under policy number SF403040X because the Cofinas Claim was not made during the period that policy was in effect. A copy of the July 18, 2007 letter is attached hereto as Exhibit "Q."

## COUNT I
## DECLARATORY JUDGMENT

## DEFENDANTS ARE LIABLE FOR THE RETENTION AMOUNT APPLICABLE TO EACH CLAIM

62.     Plaintiffs repeat and reallege the allegations of paragraphs 1-X of this complaint as if fully set forth herein.

63.     The Polices' limits of liability are in excess of the Retention Amount applicable for each and every claim.

64.     Section 6 of the Policies provides that "[t]he Insurer shall only be liable for the amount of Loss arising from a Claim which is in excess of the applicable Retention Amount…" and that the Retention Amount is to be borne by the Insureds.

65.     Under Section 6 the Policies, Defendants bear the responsibility of paying all Loss, including Defense Costs within the Retention Amount of the Policies, for the Wheeler, Donnino, Camilleri, Frank and Cofinas Claims.

66.     Under Section 6 of the Policies, Plaintiffs have no obligation to pay Loss, including Defense Costs, until the Retention Amount has been exhausted for each Claim.

67.     To date, Defendants have refused to acknowledge the Retention Amount, their sole responsibility for the Retention Amount and that Plaintiffs are only liable for Loss, including Defense Costs, that exceeds the Retention Amount.

68. An actual dispute exists between Plaintiffs and Defendants regarding their rights and obligations under the Policies with respect to the Retention Amount.

69. Accordingly, Plaintiffs seek a declaration from this Court that: (1) the Wheeler, Donnino Camilleri, Frank and Cofinas Claims are subject to a separate Retention Amount for each Claim; (2) Defendants bear the sole responsibility of paying all Loss, including Defense Costs, within the Retention Amount for each Claim; and (3) Plaintiffs have no obligation to pay Loss, including Defense Costs, until the Retention Amount has been exhausted or exceeded for each Claim.

## COUNT II
## DECLARATORY JUDGMENT

### PLAINTIFFS PROPERLY INVOKED SECTION 1.C.2 OF EACH POLICY

70. Pursuant to Section 1.C.2 of each policy, if the Insureds do not consent to a "Settlement Opportunity" within thirty (30) days, then the Insurers' "liability for the Claim shall not exceed the amount for which [they] could have settled the Claim plus Defense Costs incurred up to the date of the refusal to settle."

71. In the event the Insured(s) refuse to consent to a Settlement Opportunity, pursuant to Section 1.C.2, the Insurers may "at any time after the date of the refusal to settle, withdraw from the further defense of the Claim by tendering control of the defense to the Insured."

72. The claimants in the Wheeler, Donnino, Camilleri and Frank Claims have demanded $30,000, between $32,000 and $35,000, $46,000 and $30,000, respectively.

73. Defendants Sterling and Garcia refused to consent to "Settlement Opportunities" in the Wheeler, Donnino, Camilleri and Frank Claims.

74. Because the total Loss for each Claim based on the settlement demands were within the Retention Amount for each Claim, the Insurers withdrew from the defense of those Claims.

75. An actual dispute exists between Plaintiffs and Defendants Sterling and Garcia regarding their rights and obligations under the Policies for the Claims.

76. Accordingly, Plaintiffs seek a declaration from this Court that they are not obligated to provide a defense to or indemnify Defendants Sterling and Garcia for the Wheeler, Donnino, Camilleri and Frank claims.

## COUNT III
## DECLARATORY JUDGMENT

### DEFENDANTS STERLING AND KARIDAS BREACHED THEIR DUTY TO TIMELY REPORT THE COFINAS CLAIM

77. Plaintiffs repeat and reallege the allegations of paragraphs 1-X of this complaint as if fully set forth herein.

78. Sections 8 and 7 of the respective Policies require Defendants Sterling and Karidas to give written notice to the Insurers of a claim made against an Insured no later than 30 days after the date such claim was first made against an Insured.

79. The Cofinas Claim was first made on or about November 22, 2005.

80. Defendant Sterling did not report the Cofinas Claim to the Insurers subscribing to policy number FD0504362 until on or about May 21, 2006, nearly six months after the Cofinas Claim was first made.

81. Defendant Karidas did not report the Cofinas Claim to the Insurers subscribing to policy number FD0504362 until on or about May 17, 2007, nearly 18 months after the Cofinas Claim was first made.

13

82. In addition, to the extent the Cofinas Claim was first made against Defendants Sterling and Karidas on December 7, 2006, the date of the SOC, coverage is not available because the Cofinas Claim was not first made during either policy period.

83. An actual dispute exists between Plaintiffs and Defendants Sterling and Karidas regarding their rights and obligations under the Policies for the Cofinas Claim.

84. Accordingly, Plaintiffs seek a declaration from this Court that they are not obligated to provide a defense to or indemnify Defendants Sterling and Karidas for the Cofinas Claim.

## COUNT IV
## DECLARATORY JUDGMENT

### DEFENDANTS BREACHED THE POLICIES WHEN KARIDAS ADMITTED LIABILITY IN THE COFINAS CLAIM

85. Plaintiffs repeat and reallege the allegations of paragraphs 1-X of this complaint as if fully set forth herein.

86. Section 1.C.2 of the Policies prohibits an Insured from admitting liability for any claim without the Insurers' written consent.

87. Defendant Karidas, without the Insurers' written consent, has admitted, in writing, that he made unauthorized trades in the Cofinas claimants' securities accounts.

88. An actual dispute exists between Plaintiffs and Defendants Sterling and Karidas regarding their rights and obligations under the Policies for the Cofinas Claim.

89. Accordingly, Plaintiffs seek a declaration from this Court that they are not obligated to provide a defense to indemnify Defendants Sterling and Karidas for the Cofinas Claim.

## COUNT V
## BREACH OF CONTRACT AGAINST DEFENDANTS
## STERLING, GARCIA AND VFINANCE

90.     Plaintiffs repeat and reallege the allegations of paragraphs 1-X of this complaint as if fully set forth herein.

91.     Section 6 of the Policies provides that "[t]he Insurer shall only be liable for the amount of Loss arising from a Claim which is in excess of the applicable Retention Amount..." and that such Retention Amount is to be borne by the Insureds.

92.     Under Section 6 of the Policies, Defendants Sterling and Garcia bear the responsibility of paying all Loss, including, Defense Costs, within the Retention Amounts of the Policies for the Wheeler, Donnino, Camilleri and Frank Claims.

93.     Defendants Sterling and Garcia have breached their obligations under the Policies by refusing to pay Loss within the Retention Amounts, for the Wheeler, Donnino, Camilleri and Frank Claims.

94.     As a result of Defendants Sterling's and Garcia's breach of their obligations under Section 6 of the Policies, Plaintiffs have paid or will pay $113,947.49 to the respective defense counsel for the Wheeler, Donnino and Camilleri Claims.

95.     The amounts that the Plaintiffs have or will pay, all of which are within the Retention Amount for each Claim, and total $27,814.51 for the Wheeler Claim, $28,290.58 for the Donnino Claim and $57,842.40 for the Camilleri Claim.

96.     vFinance, as Sterling's successor-in-interest, is liable to Plaintiffs for any damages caused by Defendants Sterling and Garcia.

97.     The Plaintiffs have suffered damages in the amount of $113,947.49, plus interest and costs, as a result of the breach of contract by defendants Sterling and Garcia.

WHEREFORE, Plaintiffs respectfully request that this Court grant Plaintiffs the following relief:

a) a Judgment declaring that the coverage under the Policies is subject to the Retention Amount; that Defendants are solely liable for paying all Loss, including Defense Costs, within the Retention Amount; and Plaintiffs have no obligation to pay any Loss, including Defense Costs, until the Retention Amount has been exhausted or exceeded for each Claim.

b) a Judgment declaring that Plaintiffs have no obligation to further defend or indemnify Defendants Sterling and Garcia in connection with the Wheeler, Donnino, Camilleri, and Frank Claims;

c) a Judgment declaring that Plaintiffs have no obligation to defend or indemnify Defendants in connection with the Cofinas claim;

d) an Order requiring Defendants Sterling and Garcia to pay to Plaintiffs an amount no less than $113,947.49, plus interest and costs, as a result of the breach of contract by Defendants Sterling, Garcia and vFinance.

e) such other, further or different relief as appears just and proper to this Court.

KISSEL PESCE HIRSCH & WILMER LLP

By: _____

Frederick J. Wilmer (FW-7796)
Attorneys for Plaintiffs Certain Underwriters at
Lloyd's, London, Lexington Insurance Company,
and Württembergische Versicherung AG
580 White Plains Road
Tarrytown, New York 10591
(914) 750-5933