Exhibit C

# Kissel & Pesce LLP

Attorneys at Law

555 White Plains Road
Tarrytown, New York 10591

---

Telephone (914) 750-5933
Facsimile (914) 750-5922

August 1, 2006

CONFIDENTIAL

**VIA E-MAIL AND CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Cristina Avila
Sterling Financial Investment Group, Inc.
1200 North Federal Highway, Suite 400
Boca Raton, Florida 33432

> Re:  Securities Broker/Dealer Professional Liability Insurance
> Insured:      Sterling Financial Investment Group, Inc.
> Policy Ref.:   SF403040X
> Policy Period: May 9, 2004-May 9, 2005
> Policy Limits: $1 million/$2 million in the aggregate, including
>                Defense Costs excess of a $100,000 retention
>                (includes Defense Costs)
> Subject:      *Roger Wheeler and Paul Wheeler under the power*
>                *of attorney for Roger Wheeler and Mary Wheeler as*
>                *Joint Tenants v. Sterling Financial Investment*
>                *Group, Inc., et al.*
> Our File No.   40117.00034

Dear Cristina:

As you are aware, this firm represents the interests of certain Underwriters at Lloyd's ("Underwriters") that issued the referenced Securities Broker/Dealer Professional Liability Insurance policy to Sterling Financial Investment Group, Inc. ("Sterling") for claims made and reported during the period May 9, 2004 to May 9, 2005. The subject policy provides limits of liability of $1 million for each Claim and $2 million in the aggregate in excess of a $100,000 self-insured retention for each Claim.

We understand that settlement negotiations with the claimants in this matter have resulted

**New York City**
60 East 42nd Street, Suite 817
New York, New York 10165
Telephone (212) 557-7927
Facsimile  (212) 557-7950

**London**
81 Gracechurch Street
London EC3V OAU, England
Telephone  +44 (0) 20 7398-4350
Facsimile  +44 (0) 20 7398-4351

**New Jersey**
111 Dunnell Road
Maplewood, New Jersey 07040-2689
Telephone (973) 275-1588
Facsimile  (973) 275-7808

**Kissel & Pesce** LLP

Ms. Avila
August 1, 2006
Page No.: 2

in a reduced settlement demand by Claimants of $30,000 on June 22, 2006. Claimants demand this amount in full and final settlement of all claims against Sterling in the Wheeler matter. It is our understanding that Sterling refused to make a counter-offer to this demand above their previous offer of $7,500. For the reasons set forth in this letter, Sterling's insurers demand that Sterling settle the Wheeler matter within the applicable self-insured retention up to the claimants' current demand of $30,000.

<center>*    *    *</center>

We have been advised that a hearing on discovery issues is scheduled to take place in California on August 3, 2006 and that other major case events requiring Marshall Dennehey's attendance are scheduled to take place in California over the next few months, including the arbitration in November 2006.

Marshall Dennehey also provided us with the results of their investigation of the Wheeler accounts vis-a-vis Sterling and reported that that the out-of pocket losses in those accounts are $70,162.66.

Based on the foregoing, Underwriters have instructed us to invoke the terms of the subject policy regarding settlement opportunities. *See Section 1.C.2.Investigation and Settlement.* The relevant provisions of the policy follow:

> ...if a Settlement Opportunity[1] arises in connection with any Claim (regardless of type) and the Insured(s) do not consent to the settlement within the timeframe described below, the retention amount shall remain the applicable amount set forth in Item 5 of the Declarations [the retention amount is $100,000, inclusive of Defense Costs] even if consent is given to a subsequent settlement.

> The Insured(s) must consent to a Settlement Opportunity within thirty (30) days of the date the Insured(s) are first made aware of the Settlement Opportunity, or in the case of a Settlement Opportunity which arises from a settlement offer by the claimant then within the time permitted by the claimant to accept such settlement offer but no later than thirty (30) days. Furthermore, in the event the Insured(s) do not consent to the settlement within the timeframe described herein, the Insurer's liability for the Claim shall not exceed the amount for which the Insurer could have settled the Claim plus Defense Costs[2] incurred up to the date of the refusal to settle.

---

[1] According to the policy, a "Settlement Opportunity" exists if the insurer recommends a settlement that does not exceed the policy's applicable Limit of Liability which is acceptable to the claimant (a "Settlement Opportunity")…. *Section 1.C.2.Defense, paragraph two.*

[2] Defense Costs are defined by the policy as "reasonable and necessary fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to

**Kissel & Pesce** LLP

Ms. Avila
August 1, 2006
Page No.: 3

In the event the Insured(s) refuse to consent to a Settlement Opportunity, the Insurer shall have the right but not the obligation to continue the defense of the Claim after the date of the refusal to settle and may in such a case, at any time after the date of the refusal to settle, withdraw from the further defense of the Claim by tendering control of the defense to the Insured.

Claimants made a settlement demand of $30,000 from Sterling on June 22, 2006. The demand is within the policy's $1 million limit of liability and within Sterling's $100,000 self-insured retention. It also represents less than one-half of the claimants' out-of-pocket losses, a significant discount off of the loss suffered by the accounts. It will certainly cost Sterling more than $30,000 to have Marshall Dennehey continue to defend Sterling through arbitration. Based on (1) the uncertainty of how the arbitration panel will view the strength of the claimants' claims against Sterling, (2) the costs incurred in defending this matter, (3) the anticipated costs of defense (defense counsel's projected budget for this matter is more than $86,000), including Marshall Dennehey's travel to California for various hearings, and (4) the results of the profit and loss analyses performed on the Wheeler accounts vis-à-vis Sterling (out-of-pocket losses are approximately $70,000), we invoke the above-referenced provisions of the policy. Sterling shall have until 30 days from receipt of this letter to agree to this Settlement Opportunity. If Sterling does not agree Underwriters will withdraw from the further defense of the Wheeler matter.

To be clear, Sterling has an opportunity to settle this matter for an amount well within the $100,000 retention. Sterling's payment of the current demand taken together with incurred Defense Costs would not exceed the applicable retention. Since the retention would not be exhausted, Underwriters would not be obligated to make any payments under the policy.[3]

As a final point, we have been notified that Sterling has not yet paid any of Marshall Dennehey's fees/expenses incurred in connection with their defense of Sterling in this matter and that Sterling has a minimum outstanding balance of $11,000. As we advised you in previous correspondence, Sterling is responsible for the payment of any Defense Costs that are incurred within the $100,000 self-insured retention. Underwriters are "only liable for the amount of Loss arising from a Claim which is in excess of the applicable Retention Amount…, such Retention Amount to be borne by the Insureds and shall remain uninsured with regard to all Loss arising from any Claim." *Section 6.* Loss is defined by the subject policy to include Defense Costs. *Section 2.(i).* In view of the foregoing policy provisions, Sterling's failure to pay Marshall Dennehey's fees in connection with this matter is unacceptable and a violation of it's obligations under the policy and at law. Sterling should make arrangements to pay all of Marshall Dennehey's outstanding invoices without further delay.

---

apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of a Claim against an Insured(s), but excluding salaries of any Insured. *Section 2.(d) "Defense Costs."*

[3] The Retention provisions of the policy provide that Sterling's insurers are only liable for the amount of Loss arising from a Claim which is in excess of the applicable Retention Amount.

**Kissel & Pesce** LLP

Ms. Avila
August 1, 2006
Page No.: 4

Please note that nothing in this letter is intended to amend or replace the coverage positions taken in previous correspondence and we hereby continue to fully reserve all of Underwriters' rights under the policy and applicable law. We note that by referring to certain provisions of the policy, Underwriters do not intend to waive or limit any of their rights. To the contrary, we expressly reserve all of Underwriters' rights under applicable law and under the policy, including but not limited to, the right to raise all policy terms, conditions and exclusions as defenses to coverage where appropriate.

We invite you to contact us with any questions you may have regarding the contents of this letter

Very truly yours,

Jeffrey Hirsch

cc:    Charles Garcia (*via* e-mail only)
       Peter Tictin, Esq. (*via* e-mail only)
       Safeonline (*via* e-mail only)
       Panagiota Ainalakis, Esq.

Exhibit D

# Kissel & Pesce LLP

Attorneys at Law

555 White Plains Road
Tarrytown, New York 10591

Telephone (914) 750-5933
Facsimile (914) 750-5922

August 1, 2006

**CONFIDENTIAL**

**VIA E-MAIL AND CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Cristina Avila
Sterling Financial Investment Group, Inc.
1200 North Federal Highway, Suite 400
Boca Raton, Florida 33432

<div style="margin-left:2em;">

Re:    Securities Broker/Dealer Professional Liability Insurance
Insured:    Sterling Financial Investment Group, Inc.
Policy Ref.:    FD0504362
Policy Period: May 24, 2005-2006
Policy Limits: $1 M any one Loss/$2 M in the aggregate, xs
$100,000 each and every Claim retention
Claimants:    Carmella Donnino
Our File No.:    40117.00035

</div>

Dear Cristina:

As you are aware, this firm represents the interests of certain Underwriters at Lloyd's ("Underwriters") that issued the referenced Securities Broker/Dealer Professional Liability Insurance policy to Sterling Financial Investment Group, Inc. ("Sterling") for claims made and reported during the period May 24, 2005 to May 24, 2006. The subject policy provides limits of liability of $1 million for each Claim and $2 million in the aggregate in excess of a $100,000 self-insured retention for each Claim.

We understand that settlement negotiations with the claimants in this matter have resulted in a reduced demand of $43,000 but that the claimant's attorney represented to Marshall Dennehey that his clients would be inclined to settle all claims against Sterling for an amount in the range of $32,000 to $35,000. Claimants demand this amount in full and final settlement of all claims against Sterling in the Donnino matter. It is our understanding that Sterling refused to

**New York City**
60 East 42nd Street, Suite 817
New York, New York 10165
Telephone (212) 557-7927
Facsimile (212) 557-7950

**London**
81 Gracechurch Street
London EC3V OAU, England
Telephone +44 (0) 20 7398-4350
Facsimile +44 (0) 20 7398-4351

**New Jersey**
111 Dunnell Road
Maplewood, New Jersey 07040-2689
Telephone (973) 275-1588
Facsimile (973) 275-7808

# Kissel & Pesce LLP

Ms. Avila
August 1, 2006
Page No.: 2

make a counter-offer to this opportunity above $15,000. For the reasons set forth in this letter, Sterling's insurers demand that Sterling settle the Donnino matter within the applicable self-insured retention up to the claimants' current formal demand of $43,000.

<div align="center">*      *      *</div>

We understand that the parties are still exchanging discovery and that the arbitration hearing is scheduled to begin on December 18, 2006.

Marshall Dennehey also provided us with the results of their investigation of the Donnino accounts and reported that the out-of-pocket losses in those accounts are $60,218.

Based on the foregoing, Underwriters have instructed us to invoke the terms of the subject policy regarding settlement opportunities. *See Section 1.C.2.Investigation and Settlement.* The relevant provisions of the policy follow:

> ...if a Settlement Opportunity[1] arises in connection with any Claim (regardless of type) and the Insured(s) do not consent to the settlement within the timeframe described below, the retention amount shall remain the applicable amount set forth in the Schedule [the retention amount is $100,000, inclusive of Defense Costs] even if consent is given to a subsequent settlement.

> The Insured(s) must consent to a Settlement Opportunity within thirty (30) days of the date the Insured(s) are first made aware of the Settlement Opportunity, or in the case of a Settlement Opportunity which arises from a settlement offer by the claimant then within the time permitted by the claimant to accept such settlement offer but no later than thirty (30) days. Furthermore, in the event the Insured(s) do not consent to the settlement within the timeframe described herein, the Insurer's liability for the Claim shall not exceed the amount for which the Insurer could have settled the Claim plus Defense Costs[2] incurred up to the date of the refusal to settle.

> In the event the Insured(s) refuse to consent to a Settlement Opportunity, the Insurer shall have the right but not the obligation to continue the defense of the Claim after the date of the refusal to settle and may in such a case, at any time after the date of the

---

[1] According to the policy, a "Settlement Opportunity" exists if the Insurer recommends a settlement that does not exceed the policy's applicable Limit of Liability and which is acceptable to the claimant (a "Settlement Opportunity").... *Section 1.C.2.Defense, paragraph two.*
[2] Defense Costs are defined by the policy as "reasonable and necessary fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of a Claim against an Insured(s), but excluding salaries of any Insured. *Section 2.(d) "Defense Costs."*

**Kissel & Pesce** LLP

Ms. Avila
August 1, 2006
Page No.: 3

refusal to settle, withdraw from the further defense of the Claim by
tendering control of the defense to the Insured.

Claimant has represented a willingness to settle this matter for $43,000, but informally
expressed an opportunity to settle in the range of $32,000 to $35,000. Both opportunities are
within the policy's $1 million limit of liability and within Sterling's $100,000 self-insured
retention. The opportunities also represent a significant discount off of the loss suffered by the
claimant's accounts, i.e., the out-of-pocket losses. It will certainly cost Sterling more than
$43,000 to have Marshall Dennehey continue to defend Sterling through arbitration. Based on
(1) the uncertainty of how the arbitration panel will view the strength of the claimants' claims
against Sterling, (2) the costs incurred in defending this matter, (3) the anticipated costs of
defense (defense counsel's projected budget for this matter is more than $45,000), and (4) the
results of the profit and loss analyses performed on the Camilleri accounts (out-of-pocket losses
are approximately $60,000), we invoke the above-referenced provisions of the policy. Sterling
shall have until 30 days from receipt of this letter to agree to this Settlement Opportunity. If
Sterling does not agree Underwriters will withdraw from the further defense of the Donnino
matter.

To be clear, Sterling has an opportunity to settle this matter for an amount well within the
$100,000 retention. Sterling's payment of the current demand taking together with incurred
Defense Cost would not exceed the applicable retention. Since the retention would not be
exhausted, Underwriters would not be obligated to make any payments under the policy.[3]

As a final point, we have been notified that Sterling has not yet paid any of Marshall
Dennehey's fees/expenses incurred in connection with their defense of Sterling in this matter and
that Sterling has a minimum outstanding balance of $13,000.   As we advised you in previous
correspondence, Sterling is responsible for the payment of any Defense Costs that are incurred
within the $100,000 self-insured retention. Underwriters are "only liable for the amount of Loss
arising from a Claim which is in excess of the applicable Retention Amount..., such Retention
Amount to be borne by the Insureds and shall remain uninsured with regard to all Loss arising
from any Claim." *Section 6.* Loss is defined by the subject policy to include Defense Costs.
*Section 2.(i).* In view of the foregoing policy provisions, Sterling's failure to pay Marshall
Dennehey's fees in connection with this matter is unacceptable and a violation of it's obligations
under the policy and at law. Sterling should make arrangements to pay all of Marshall
Dennehey's outstanding invoices without further delay.

Please note that nothing in this letter is intended to amend or replace the coverage
positions taken in previous correspondence and we hereby continue to fully reserve all of
Underwriters' rights under the policy and applicable law. We note that by referring to certain
provisions of the policy, Underwriters do not intend to waive or limit any of their rights. To the
contrary, we expressly reserve all of Underwriters' rights under applicable law and under the

---

[3] The Retention provisions of the policy provide that Sterling's insurers are only liable for the amount of Loss
arising from a Claim which is in excess of the applicable Retention Amount.

# Kissel & Pesce LLP

Ms. Avila
August 1, 2006
Page No.: 4

policy, including but not limited to, the right to raise all policy terms, conditions and exclusions as defenses to coverage where appropriate.

We invite you to contact us with any questions you may have regarding the contents of this letter

Very truly yours,

*J Hirsch (pa)*

Jeffrey Hirsch

cc:     Charles Garcia (*via* e-mail only)
        Peter Tictin, Esq. (*via* e-mail only)
        Aon (U.K., *via* e-mail only)
        Aon (U.S., *via* e-mail only)
        Panagiota Ainalakis, Esq.

Exhibit E

# Kissel & Pesce LLP

Attorneys at Law

555 White Plains Road
Tarrytown, New York 10591

---

Telephone (914) 750-5933
Facsimile (914) 750-5922

August 1, 2006

CONFIDENTIAL

**VIA E-MAIL AND CERTIFIED MAIL
RETURN RECEIPT REQUESTED**

Cristina Avila
Sterling Financial Investment Group, Inc.
1200 North Federal Highway, Suite 400
Boca Raton, Florida 33432

> Re:  Securities Broker/Dealer Professional Liability Insurance
> Insured:     Sterling Financial Investment Group, Inc.
> Policy Ref.:   FD0504362
> Policy Period: May 24, 2005-2006
> Policy Limits: $1 M any one Loss/$2 M in the aggregate, xs
>                $100,000 each and every Claim retention
> Claimants:   Charles P. and Frances Camilleri
> Our File No.:  40117.00042

Dear Cristina:

As you are aware, this firm represents the interests of certain Underwriters at Lloyd's ("Underwriters") that issued the referenced Securities Broker/Dealer Professional Liability Insurance policy to Sterling Financial Investment Group, Inc. ("Sterling") for claims made and reported during the period May 24, 2005 to May 24, 2006. The subject policy provides limits of liability of $1 million for each Claim and $2 million in the aggregate in excess of a $100,000 self-insured retention for each Claim.

We understand that settlement negotiations with the claimants in this matter have resulted in a formal settlement demand of $92,000. However, it is our understanding that the claimants' attorney represented to Marshall Dennehey on June 28, 2006 that his clients would be inclined to settle all claims against all respondents for $46,000. It is our understanding that Sterling authorized Marshall Dennehey to communicate a counter-offer of $17,500 in response to the

---

**New York City**
60 East 42nd Street, Suite 817
New York, New York 10165
Telephone (212) 557-7927
Facsimile (212) 557-7950

**London**
81 Gracechurch Street
London EC3V OAU, England
Telephone +44 (0) 20 7398-4350
Facsimile +44 (0) 20 7398-4351

**New Jersey**
111 Dunnell Road
Maplewood, New Jersey 07040-2689
Telephone (973) 275-1588
Facsimile (973) 275-7808

# Kissel & Pesce LLP

Ms. Avila
August 1, 2006
Page No.: 2

$46,000 demand. For the reasons set forth in this letter, Sterling's insurers demand that Sterling settle the Camilleri matter within the applicable self-insured retention up to the claimants' current demand of $46,000.

<center>*        *        *</center>

We understand that the parties are still exchanging discovery and that the arbitration hearing is scheduled to begin on October 4, 2006.

Marshall Dennehey provided us with the results of their investigation of the Camilleri accounts and reported that the out-of pocket losses in those accounts are $112,235, which does not include the $25,000 that the claimants allegedly invested in Ultimate Body Scan through Marc Levy.

Based on the foregoing, Underwriters have instructed us to invoke the terms of the subject policy regarding settlement opportunities. *See Section 1.C.2.Investigation and Settlement.* The relevant provisions of the policy follow:

> ...if a Settlement Opportunity[1] arises in connection with any Claim (regardless of type) and the Insured(s) do not consent to the settlement within the timeframe described below, the retention amount shall remain the applicable amount set forth in the Schedule [the retention amount is $100,000, inclusive of Defense Costs] even if consent is given to a subsequent settlement.

> The Insured(s) must consent to a Settlement Opportunity within thirty (30) days of the date the Insured(s) are first made aware of the Settlement Opportunity, or in the case of a Settlement Opportunity which arises from a settlement offer by the claimant then within the time permitted by the claimant to accept such settlement offer but no later than thirty (30) days. Furthermore, in the event the Insured(s) do not consent to the settlement within the timeframe described herein, the Insurer's liability for the Claim shall not exceed the amount for which the Insurer could have settled the Claim plus Defense Costs[2] incurred up to the date of the refusal to settle.

---

[1] According to the policy, a "Settlement Opportunity" exists if the Insurer recommends a settlement that doesnot exceed the policy's applicable Limit of Liability and which is acceptable to the claimant (a "Settlement Opportunity").... *Section 1.C.2.Defense, paragraph two.*

[2] Defense Costs are defined by the policy as "reasonable and necessary fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of a Claim against an Insured(s), but excluding salaries of any Insured. *Section 2.(d) "Defense Costs."*

# Kissel & Pesce LLP

Ms. Avila
August 1, 2006
Page No.: 3

> In the event the Insured(s) refuse to consent to a Settlement
> Opportunity, the Insurer shall have the right but not the obligation
> to continue the defense of the Claim after the date of the refusal to
> settle and may in such a case, at any time after the date of the
> refusal to settle, withdraw from the further defense of the Claim by
> tendering control of the defense to the Insured.

Claimants made a settlement demand of $46,000 from Sterling on June 28, 2006. The demand is within the policy's $1 million limit of liability and within Sterling's $100,000 self-insured retention. It also represents less than one-half of the claimants' out-of-pocket losses, a significant discount off of the loss suffered by the accounts. It will certainly cost Sterling more than $46,000 to have Marshall Dennehey continue to defend Sterling through arbitration. Based on (1) the uncertainty of how the arbitration panel will view the strength of the claimants' claims against Sterling, (2) the costs incurred in defending this matter, (3) the anticipated costs of defense (defense counsel's projected budget for this matter is more than $45,000), and (4) the results of the profit and loss analyses performed on the Camilleri accounts (out-of-pocket losses are approximately $112,000), we invoke the above-referenced provisions of the policy. Sterlign shall have until 30 days from receipt of this letter to agree to this Settlement Opportunity. If Sterling does not agree Underwriters will withdraw from the further defense of the Camilleri matter.

To be clear, Sterling has an opportunity to settle this matter for an amount well within the $100,000 retention. Sterling's payment of the current demand taken together with incurred Defense Costs would not exceed the applicable retention. Since the retention would not be exhausted, Underwriters would not be obligated to make any payments under the policy.[3]

As a final point, we have been notified that Sterling has not yet paid any of Marshall Dennehey's fees/expenses incurred in connection with their defense of Sterling in this matter and that Sterling has a minimum outstanding balance of $28,000. As we advised you in previous correspondence, Sterling is responsible for the payment of any Defense Costs that are incurred within the $100,000 self-insured retention. Underwriters are "only liable for the amount of Loss arising from a Claim which is in excess of the applicable Retention Amount..., such Retention Amount to be borne by the Insureds and shall remain uninsured with regard to all Loss arising from any Claim." Section 6. Loss is defined by the subject policy to include Defense Costs. Section 2.(i). In view of the foregoing policy provisions, Sterling's failure to pay Marshall Dennehey's fees in connection with this matter is unacceptable and a violation of it's obligations under the policy and at law. Sterling should make arrangements to pay all of Marshall Dennehey's outstanding invoices without further delay.

Please note that nothing in this letter is intended to amend or replace the coverage positions taken in previous correspondence and we hereby continue to fully reserve all of Underwriters' rights under the policy and applicable law. We note that by referring to certain

---

[3] The Retention provisions of the policy provide that Sterling's insurers are only liable for the amount of Loss arising from a Claim which is in excess of the applicable Retention Amount.

# Kissel & Pesce LLP

Ms. Avila
August 1, 2006
Page No.: 4

provisions of the policy, Underwriters do not intend to waive or limit any of their rights.  To the contrary, we expressly reserve all of Underwriters' rights under applicable law and under the policy, including but not limited to, the right to raise all policy terms, conditions and exclusions as defenses to coverage where appropriate.

We invite you to contact us with any questions you may have regarding the contents of this letter.

Very truly yours,

Jeffrey Hirsch

cc:    Charles Garcia (*via* e-mail only)
Peter Tictin, Esq. (*via* e-mail only)
Aon (U.K., *via* e-mail only)
Aon (U.S., *via* e-mail only)
Panagiota Ainalakis, Esq.

Exhibit F

**Penny Ainalakis-Barone**

| | |
|---|---|
| **From:** | P Ainalakis [painalakis@kphwlaw.com] |
| **Sent:** | Friday, January 12, 2007 3:43 PM |
| **To:** | 'pt@trlawoffice.com' |
| **Cc:** | 'Alan.Wolper@sablaw.com'; 'ellen.cohen@sablaw.com'; jeff hirsch (jhirsch@kphwlaw.com) |
| **Subject:** | KP 40117.00045 Sterling Financial/Frank |
| **Sensitivity:** | Confidential |

| **Tracking:** | **Recipient** | **Read** |
|---|---|---|
| | 'pt@trlawoffice.com' | |
| | 'Alan.Wolper@sablaw.com' | Read: 1/12/2007 3:53 PM |
| | 'ellen.cohen@sablaw.com' | Read: 1/12/2007 3:42 PM |
| | jeff hirsch (jhirsch@kphwlaw.com) | |

Re:    Securities Broker/Dealer Professional Liability Insurance
     Insured:      Sterling Financial Investment Group, Inc.
     Policy Ref.:    FD0504362
     Policy Period:  May 24, 2005-2006
     Policy Limits:  $1 million any one Loss and $2 million in the aggregate excess of a $100,000 each and
                  every Claim retention (includes Defense Costs)
     Claimants:    Howard and Diana Frank
     Our file no.:   40117.00045

Dear Peter:

Defense counsel, Sutherland Asbill, have notified us that the Franks have backed away from today's scheduled mediation based on Sterling's failure to come up with enough cash to fund a settlement. Sterling's actions are troublesome. From what we have seen in recent e-mail chains, it seems that claimants previously agreed to mediate at all based on your representations that Sterling would have cash available for settlement purposes. Please explain Sterling's strategy, if any.

Prior to mediation, defense counsel valued the Frank matter at $20,000-$25,000. Sutherland's incurred costs and fees are approximately $50,000 (excluding what's been incurred in preparing for mediation). In sum, this case does not present any exposure to the policy, and Sterling had an opportunity to settle the case within the self-insured retention amount of $100,000, *inclusive of* defense costs. As we've previously advised, this retention amount applies to each "Claim" and is Sterling's responsibility to pay.

The opportunity to settle the Frank matter within Sterling's self-insured retention has been jeopardized by your/Sterling's failure to hold cash in reserve for this matter as previously promised to claimants. Moreover, we are not entirely clear about the reserves Sterling was required to maintain following the VFinance transaction.

Sutherland Asbill have incurred additional costs to prepare for a mediation that has now been cancelled, allegedly due to Sterling's conduct. The insurers will not permit any of those costs to apply against the applicable self-insured retention.

*This e-mail is intended to supplement previous correspondence to you and Sterling. Nothing in this e-mail is intended to waive or limit any of the Insurers' rights under the policy or under applicable law. All rights are hereby reserved.*

Very truly yours,
Penny

_____

Panagiota Ainalakis-Barone
Kissel Pesce Hirsch & Wilmer LLP

* Please note the new firm name, address and e-mail address

580 White Plains Rd.
Tarrytown, NY 10591

direct tel: 914.733.7771
main tel: 914.750.5933
main fax: 914.750.5922

IMPORTANT NOTICE: This e-mail message is intended to be received only by persons entitled to receive the confidential information it may contain. E-mail messages to clients of Kissel Pesce Hirsch & Wilmer, LLP presumptively contain information that is confidential and legally privileged; e-mail messages to non-clients are normally confidential and may also be legally privileged. If you have received this message in error, please forward it back without copying, storing or forwarding this message to any other party. Kissel Pesce Hirsch & Wilmer, LLP is a limited liability partnership organized in the United States under the laws of the State of New York, which laws limit the personal liability of partners.

8/10/2007

Exhibit G

# Kissel & Pesce LLP

Attorneys at Law

555 White Plains Road
Tarrytown, New York  10591

---

Telephone (914) 750-5933
Facsimile (914) 750-5922

September 20, 2006

**CONFIDENTIAL**

**VIA E-MAIL AND CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Cristina Avila
Sterling Financial Investment Group, Inc.
1200 North Federal Highway, Suite 400
Boca Raton, Florida 33432

        Re:    Securities Broker/Dealer Professional Liability Insurance
               Insured:    Sterling Financial Investment Group, Inc.
               Policy Ref.:  SF403040X
               Policy Period: May 9, 2004–May 9, 2005
               Policy Limits: $1 million/$2 million in the aggregate, including
                           Defense Costs excess of a $100,000 retention
                           (includes Defense Costs)
               Subject:    *Roger Wheeler and Paul Wheeler under the power*
                           *of attorney for Roger Wheeler and Mary Wheeler as*
                           *Joint Tenants  v. Sterling Financial Investment*
                           *Group, Inc., et al.*
               Our File No.   40117.00034

Dear Cristina:

It has now been more than thirty days since our August 1, 2006 letter (enclosed), which advised, among other things, that "Sterling shall have until 30 days from receipt of this letter to agree to [a] Settlement Opportunity [in the Wheeler matter].  If Sterling does not agree, Underwriters will withdraw from the further defense of the Wheeler matter."

Because Sterling did not agree to settle the Wheeler matter, we hereby advise Sterling that Underwriters further invoke the terms of Section I.C.2. of the Policy and withdraw coverage, including the defense, of this matter.  Such withdrawal is effective immediately.

---

**New York City**
60 East 42nd Street, Suite 817
New York, New York 10165
Telephone (212) 557-7927
Facsimile (212) 557-7950

**London**
81 Gracechurch Street
London EC3V OAU, England
Telephone +44 (0) 20 7398-4350
Facsimile +44 (0) 20 7398-4351

**New Jersey**
111 Dunnell Road
Maplewood, New Jersey 07040-2689
Telephone (973) 275-1588
Facsimile (973) 275-1730

**Kissel & Pesce** LLP

Ms. Avila
September 20, 2006
Page No.: 2

    We invite you to contact us with any questions you may have regarding the contents of this letter.

Very truly yours,

Jeffrey Hirsch

cc:    Charles Garcia (*via* e-mail only)
        Peter Tictin, Esq. (*via* e-mail only)
        Safeonline (*via* e-mail only)
        Panagiota Ainalakis, Esq.

Exhibit H

# Kissel & Pesce LLP

Attorneys at Law

555 White Plains Road
Tarrytown, New York 10591

Telephone (914) 750-5933
Facsimile (914) 750-5922

September 20, 2006

CONFIDENTIAL

VIA E-MAIL AND CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Cristina Avila
Sterling Financial Investment Group, Inc.
1200 North Federal Highway, Suite 400
Boca Raton, Florida 33432

Re:   Securities Broker/Dealer Professional Liability Insurance
Insured:   Sterling Financial Investment Group, Inc.
Policy Ref.:   FD0504362
Policy Period:   May 24, 2005-2006
Policy Limits:   $1 M any one Loss/$2 M in the aggregate, xs
$100,000 each and every Claim retention
Claimants:   Carmella Donnino
Our File No.:   40117.00035

Dear Cristina:

It has now been more than thirty days since our August 1, 2006 letter (enclosed), which advised, among other things, that "Sterling shall have until 30 days from receipt of this letter to agree to [a] Settlement Opportunity [in the Donnino matter]. If Sterling does not agree, Underwriters will withdraw from the further defense of the Donnino matter."

Because Sterling did not agree to settle the Donnino matter, we hereby advise Sterling that Underwriters further invoke the terms of Section I.C.2. of the Policy and withdraw coverage, including the defense, of this matter. Such withdrawal is effective immediately.

We invite you to contact us with any questions you may have regarding the contents of this letter.

Very truly yours,

Jeffrey Hirsch

---

**New York City**
60 East 42nd Street, Suite 817
New York, New York 10165
Telephone (212) 557-7927
Facsimile (212) 557-7950

**London**
81 Gracechurch Street
London EC3V OAU, England
Telephone +44 (0) 20 7398-4350
Facsimile +44 (0) 20 7398-4351

**New Jersey**
111 Dunnell Road
Maplewood, New Jersey 07040-2689
Telephone (973) 275-1588
Facsimile (973) 275-7808

**Kissel & Pesce** LLP

Ms. Avila
September 20, 2006
Page No.: 2

cc:     Charles Garcia (*via* e-mail only)
        Peter Tictin, Esq. (*via* e-mail only)
        Aon (U.K., *via* e-mail only)
        Aon (U.S., *via* e-mail only)
        Panagiota Ainalakis, Esq.

Exhibit I

# Kissel & Pesce LLP

Attorneys at Law

555 White Plains Road
Tarrytown, New York  10591

---

Telephone (914) 750-5933
Facsimile (914) 750-5922

September 20, 2006

**CONFIDENTIAL**

**VIA E-MAIL AND CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Cristina Avila
Sterling Financial Investment Group, Inc.
1200 North Federal Highway, Suite 400
Boca Raton, Florida 33432

|  |  |
|---|---|
| Re: | Securities Broker/Dealer Professional Liability Insurance |
| Insured: | Sterling Financial Investment Group, Inc. |
| Policy Ref.: | FD0504362 |
| Policy Period: | May 24, 2005-2006 |
| Policy Limits: | $1 M any one Loss/$2 M in the aggregate, xs $100,000 each and every Claim retention |
| Claimants: | Charles P. and Frances Camilleri |
| Our File No.: | 40117.00042 |

Dear Cristina:

It has now been more than thirty days since our August 1, 2006 letter (enclosed), which advised, among other things, that "Sterling shall have until 30 days from receipt of this letter to agree to [a] Settlement Opportunity [in the Camilleri matter]. If Sterling does not agree, Underwriters will withdraw from the further defense of the Camilleri matter."

Because Sterling did not agree to settle the Camilleri matter, we hereby advise Sterling that Underwriters further invoke the terms of Section I.C.2. of the Policy and withdraw coverage, including the defense, of this matter. Such withdrawal is effective immediately.

We invite you to contact us with any questions you may have regarding the contents of this letter.

Very truly yours,

Jeffrey Hirsch

---

| **New York City** | **London** | **New Jersey** |
|---|---|---|
| 60 East 42nd Street, Suite 817 | 81 Gracechurch Street | 111 Dunnell Road |
| New York, New York  10165 | London EC3V OAU, England | Maplewood, New Jersey  07040-2689 |
| Telephone (212) 557-7927 | Telephone +44 (0) 20 7398-4350 | Telephone (973) 275-1588 |
| Facsimile  (212) 557-7950 | Facsimile  +44 (0) 20 7398-4351 | Facsimile  (973) 275-7808 |

# Kissel & Pesce LLP

Ms. Avila
September 20, 2006
Page No.: 2

cc:    Charles Garcia (*via* e-mail only)
       Peter Tictin, Esq. (*via* e-mail only)
       Aon (U.K., *via* e-mail only)
       Aon (U.S., *via* e-mail only)
       Panagiota Ainalakis, Esq.

Exhibit J



KISSEL PESCE HIRSCH & WILMER
A Limited Liability Partnership

580 White Plains Rd - 5th Floor
Tarrytown, New York 10591
Main Tel: 914.750.5933
Facsimile: 914.750.5922

Direct Dial: 914.733.7770
E-Mail: jhirsch@kphwlaw.com

March 9, 2007

CONFIDENTIAL

VIA E-MAIL AND CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Cristina Avila
Sterling Financial Investment Group, Inc.
1200 North Federal Highway, Suite 400
Boca Raton, Florida 33432

> Re:    Securities Broker/Dealer Professional Liability Insurance
> Insured:       Sterling Financial Investment Group, Inc.
> Policy Ref.:   FD0504362
> Policy Period: May 24, 2005-May 24, 2006
> Policy Limits: $1 million/$2 million in the aggregate, including Defense
> Costs excess of a $100,000 retention (includes Defense
> Costs)
> Subject:       *Frank v. Sterling*
> Claimants:     Howard and Diana Frank
> Our File No.   40117.00045

Dear Cristina:

As you are aware, this firm represents the interests of certain Underwriters at Lloyd's ("Underwriters") that issued the referenced Securities Broker/Dealer Professional Liability Insurance policy to Sterling Financial Investment Group, Inc. ("Sterling") for claims made and reported during the period May 24, 2005 to May 24, 2006. The subject policy provides limits of liability of $1 million for each Claim and $2 million in the aggregate, in excess of a $100,000 self-insured retention for each Claim.

We understand that recent settlement negotiations with the claimants in this matter have resulted in a settlement demand of $30,000 and that payment of such demand would result in a full and final settlement of the Franks' claims against Sterling. It is our understanding that Sterling made a counter-offer to this demand in the amount of $20,000 (consisting mostly of vFinance stock), but that claimants rejected the offer and threatened to amend their Statement of Claim to name additional parties. For the reasons set forth in this letter, Sterling's insurers have authorized us to withdraw coverage for the *Frank* matter.

*        *        *

KISSEL PESCE HIRSCH & WILMER LLP

Cristina Avila
March 9, 2007
Page 2

Throughout their handling of this matter, defense counsel Sutherland Asbill & Brennan advised Sterling that the Franks' out-of pocket losses are approximately $37,000 and that a settlement in the range of 25,000-$40,000 would be both reasonable and recommended. The claimants' most recent settlement demand was $30,000 and defense counsel believed that there would be some room to negotiate a further discount and achieve a settlement had the matter been mediated as scheduled. However, it appears that Sterling failed to keep enough cash on reserve for this matter and as a result, was unable to negotiate a settlement with the claimants. As such, the mediation was cancelled.

Opportunities to mediate and arbitrate this matter were apparently jeopardized or stalled by Sterling's inability or failure to commit to having cash available to fund a settlement in this matter.

Based on the foregoing, Underwriters have instructed us to invoke the terms of the subject policy regarding settlement opportunities. *See Section 1.C.2.Investigation and Settlement.* The relevant provisions of the policy follow:

> ...if a Settlement Opportunity[1] arises in connection with any Claim (regardless of type) and the Insured(s) do not consent to the settlement within the timeframe described below, the retention amount shall remain the applicable amount set forth in the Schedule [the retention amount is $100,000, inclusive of Defense Costs] even if consent is given to a subsequent settlement.
>
> The Insured(s) must consent to a Settlement Opportunity within thirty (30) days of the date the Insured(s) are first made aware of the Settlement Opportunity, or in the case of a Settlement Opportunity which arises from a settlement offer by the claimant then within the time permitted by the claimant to accept such settlement offer but no later than thirty (30) days. Furthermore, in the event the Insured(s) do not consent to the settlement within the timeframe described herein, the Insurer's liability for the Claim shall not exceed the amount for which the Insurer could have settled the Claim plus Defense Costs[2] incurred up to the date of the refusal to settle.
>
> In the event the Insured(s) refuse to consent to a Settlement Opportunity, the Insurer shall have the right but not the obligation

---

[1] According to the policy, a "Settlement Opportunity" exists if the Insurer recommends a settlement that does not exceed the policy's applicable Limit of Liability and which is acceptable to the claimant (a "Settlement Opportunity").... *Section 1.C.2.Defense, paragraph two.*

[2] Defense Costs are defined by the policy as "reasonable and necessary fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of a Claim against an Insured(s), but excluding salaries of any Insured. *Section 2.(d) "Defense Costs."*

KISSEL PESCE HIRSCH & WILMER LLP

Cristina Avila
March 9, 2007
Page 3

to continue the defense of the Claim after the date of the refusal to
settle and may in such a case, at any time after the date of the
refusal to settle, withdraw from the further defense of the Claim by
tendering control of the defense to the Insured.

Claimants have represented a willingness to settle this matter for $30,000.  This
opportunity is within the policy's $1 million limit of liability and within Sterling's $100,000 self-
insured retention.  Based on: (1) the fact that this matter presented Sterling with a settlement
opportunity between $20,000 (defense counsel's estimation) to $30,000 (claimants' pre-
mediation settlement demand) at mediation in early January 2007 and defense fees could have
been capped; (2) the results of the profit and loss analyses performed on the accounts (out-of-
pocket losses are approximately $37,000); (3) the fact that claimants now want to amend their
claims to name additional parties, which will increase the cost of defense; and (4) the fact that
it's unclear how a panel will view the strength of claimants' claims against Sterling, we invoke
the above-referenced provisions of the policy. [3]

We are advised, moreover, that Sterling has not paid defense counsel for any of the
services rendered to date and $61,136.48 in (unaudited) fees and costs remain outstanding.
These Defense Costs remain within Sterling's $100,000 self-insured retention and, as we
previously advised you, should be paid promptly to Sutherland Asbill. There have been serious
adverse consequences to the handling of the *Frank* matter based on Sterling's failure to pay these
Defense Costs, including Sutherland Asbill's withdrawal as counsel for Sterling.

We have advised you on numerous occasions that Sterling is responsible for the payment
of any Defense Costs that are incurred within the $100,000 self-insured retention.  Underwriters
are "only liable for the amount of Loss arising from a Claim which is in excess of the applicable
Retention Amount..., such Retention Amount to be borne by the Insureds and shall remain
uninsured with regard to all Loss arising from any Claim." *Section 6.*  Loss is defined by the
subject policy to include Defense Costs.  *Section 2.(i).*  In view of the foregoing policy
provisions, Sterling's failure to pay Sutherland Asbill & Brennan's fees in connection with this
matter is unacceptable and a violation of it's obligations under the policy and at law.

If Sterling pays Sutherland Asbill's outstanding balance and settles the *Frank* matter (for
$30,000 or less) within the next thirty (30) days, we will retract our client's withdrawal position.
Please be aware that we intend to bring this matter to the attention of the mediator that has been
selected to mediate the claim we instituted against Sterling and Mr. Garcia before the AAA's
International Centre for Dispute Resolution (case no. 50 174 V 00416 06).  We are amending our
AAA claim formally to include the *Frank* matter as part of that proceeding.

Please note that nothing in this letter is intended to amend or replace the coverage
positions taken in previous correspondence and we hereby continue to fully reserve all of
Underwriters' rights under the policy and applicable law.  We note that by referring to certain

---

[3] The Retention provisions of the policy provide that Sterling's insurers are only liable for the amount of Loss
arising from a Claim which is in excess of the applicable Retention Amount.

KISSEL PESCE HIRSCH & WILMER LLP

Cristina Avila
March 9, 2007
Page 4

provisions of the policy, Underwriters do not intend to waive or limit any of their rights. To the contrary, we expressly reserve all of Underwriters' rights under applicable law and under the policy, including but not limited to, the right to raise all policy terms, conditions and exclusions as defenses to coverage where appropriate.

We invite you to contact us with any questions you may have regarding the contents of this letter

Very truly yours,

Jeffrey Hirsch

JH/mda

cc:    Charles Garcia (*Via* E-mail Only)

Peter Tictin, Esq. (*Via* E-mail Only)

Aon (U.S., *Via* E-Mail Only)

Panagiota Ainalakis-Barone, Esq.

AAA WebFile                file:///V:/DATA/USERS/AINAPE/BRIT%20FILES%20-40117/401...

Case 1:07-cv-07396-GBD    Document 1-4    Filed 08/20/2007    Page 34 of 59

# Online Filing Demand For Arbitration/Mediation Form

**This concludes your filing.**
**Thank you for submitting your claim to the AAA.**
**Your claim confirmation number is: 002-TOZ-GFV**

To institute proceedings, please send a copy of this form and the Arbitration Agreement to the opposing party.

**Your dispute has been filed in accordance with:** Commercial Dispute Resolution Procedures

**This Claim has Been Filed For:** Arbitration

**Filing Fee:** $2,750.00

## Additional Claim Information

**Claim Amount:** $180,000.00

**Claim Description:** To enforce a policyholder's obligation to pay the self-insured retention in connection with claims submitted for coverage under it's insurance policies, and other relief. **see uploaded document**

**Arbitration Clause:** see uploaded documents

**Hearing Locale Requested:** New York, NY

**Contract Date:** 05/09/2004

**Number of Neutrals:** 3

| Claimant | Representatives |
|---|---|

**Insurers subscribing to policies FD0504362 & SF403040X**

**Type of Business:** Insurer

| | |
|---|---|
| **Name:** | **Name:** Jeffrey Hirsch |
| **Company Name:** Insurers subscribing to policies FD0504362 & SF403040X | **Company Name:** Kissel & Pesce LLP |
| **Address:** C/O Kissel & Pesce 555 White Plains Road Tarrytown, NY 10591 | **Address:** 555 White Plains Road Tarrytown, NY 10591 |
| **Tel#:** 914 750-5933 | **Tel#:** 914 750-5933 |
| **Fax#:** 914 750-5922 | **Fax#:** 914 750-5922 |
| **Email:** jhirsch@kplaw.net | **Email:** jhirsch@kplaw.net |
| **Include in Caption:** Company | |

| Respondent # 1 | Representatives |
|---|---|

**Charles Garcia-Sterling Financial Investment Group, Inc.**

**Type of Business:** Insured

| | |
|---|---|
| **Name:** Charles Garcia | **Name:** Peter Tictin |
| **Company Name:** Sterling Financial Investment Group, Inc. | **Company Name:** Tictin & Rodriguez, P.A. |
| **Address:** 1200 N. Federal Highway Suite 400 Boca Raton, FL 33432 | **Address:** P.O. Box 811554 Boca Raton, FL 33481 - 1554 |
| **Tel#:** 561 886-2256 | **Tel#:** 561 392-6933 |
| **Fax#:** 561 886-2333 | **Fax#:** 561 392-5158 |
| **Email:** | **Email:** pt@trlawoffice.com |
| **Include in Caption:** Both | |

To institute proceedings, please send a copy of this form and the Arbitration Agreement to the opposing party.
Your demand/submission for arbitration/mediation was received by the American Arbitration Association on 09/28/2006 at 18:09 Eastern (US) time.

THE NATURE OF THE DISPUTE (continued)

    This dispute arises from Sterling Financial Investment Group, Inc.'s and Charles Garcia's (the "Respondents") breach of insurance policies that were issued by the Insurers subscribing to policies SF403040X and FD0504362 ("Claimants" in this proceeding). The Arbitration clause in the policies is contained at Section 16 (the policy materials are attached to this Demand).

    The Claimants provided the Respondents with claims-made professional liability insurance for periods effective from (1) May 9, 2004 to May 24, 2005, and (2) May 24, 2005 to May 24, 2006, respectively. The policies that the Respondents purchased set forth what the limits of liability are for covered Claims and state in clear and conspicuous terms that a $100,000 self-insured retention ("Retention Amount") applies to each Claim. In purchasing the policies, the Respondents agreed that the Insurers are "only liable for amounts … excess of the applicable Retention Amount" and that "such Retention Amount [is] **to be borne by the Insureds**…(emphasis added)." The policies define the term "Loss" to include Defense Costs.[1]

    Sterling tendered one claim to the insurers under policy SF403040X and three claims to the insurers under policy FD0504362 that are the subject of this dispute. With Sterling's consent, the Claimants assigned the law firm of Marshall, Dennehey, Warner, Coleman & Goggin ("Marshall Dennehey") as defense counsel for the Insureds in connection with the Claim tendered under policy SF403040X and two of the Claims tendered under policy FD0504362. Sterling also consented to Claimants' assignment of the law firm of Sutherland Asbill & Brennan as defense counsel for the third Claim tendered under policy FD0504362. The Claimants notified Sterling and defense counsel that Sterling must satisfy the Retention Amount before the Claimants had any obligations to pay under the insurance policies. The Claimants accepted coverage for each matter subject to the terms, conditions and exclusions of the policies and various reservations of rights under the policies and at law.

    Despite the clear and unambiguous terms of the policies, the Respondents have, without providing any credible reason or excuse, failed and refused to satisfy their obligation to pay Defense Costs and other amounts within the Retention Amount in connection with any of the Claims that were submitted for coverage.

    Claimants have adjusted the three Claims being handled by Marshall Dennehey and, with Respondents' knowledge, defense counsel has engaged in good faith settlement discussions with the claimants in each of the three Claims they are defending. The Claimants have promptly advised the Respondents and its counsel that "Settlement Opportunities" (a defined term in the policy) had become available in each Claim. The "Settlement Opportunities" in each matter, when added to the Defense Costs that Marshall Dennehey had incurred, total less than the Retention Amount that would apply for each Claim. Marshall Dennehey advised the Respondents that the claimants' negotiated demands in each matter were reasonable.

---

[1] The polices define "Defense Costs" as "reasonable and necessary fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of a Claim against an Insured(s), but excluding salaries of any Insured." *Section 2.(d) "Defense Costs."*

Section 1.C.2. of each of the insurance policies provides, in pertinent part, that the Respondents must consent to a "Settlement Opportunity"[2] within thirty (30) days. If the Respondents do not consent to the "Settlement Opportunity" then the Claimants' "liability for the Claim shall not exceed the amount for which [they] could have settled the Claim plus Defense Costs incurred up to the date of the refusal to settle." Moreover, in the event the Respondents do not timely consent to the "Settlement Opportunity," the Claimants have the right to withdraw coverage for the Claim, and no longer have any responsibility to defend and/or indemnify the Respondents.

Here, the parties could have settled each Claim for an amount, including Defense Costs, below the Retention Amount. The Claimants provided valid notice to the Respondents under Section 1.C.2. more than thirty days ago. Upon information and belief, the Respondents have not resolved any of the three Claims in compliance with Section 1.C.2. Consequently, the Claimants have issued correspondence to the Respondents and Marshall Dennehey advising that they were withdrawing coverage for each of the Claims.

Claimants request that the Panel in this Arbitration render an Award in their favor:

(1)    Declaring that it is the Respondents' (and any other party or entity claiming "Insured" status under the policies) obligation under the policies to satisfy the full $100,000 per Claim Retention Amount before the Claimants are required to pay under the policies;

(2)    Requiring the Respondents (and any other party or entity claiming "Insured" status under the policies) to indemnify and reimburse the Claimants for any amounts they pay or have paid with respect to any of the Claims, including any loss payments and "Defense Costs," that are within the per Claim Retention Amount;

(3)    Declaring that the Claimants properly invoked Section 1.C.2. in each policy, and that as a result, the Claimants are not required to defend and/or indemnify the Respondents (and any other party or entity claiming "Insured" status under the policies) with respect to Claims; and

(4)    For such other relief as the Panel deems just and appropriate.

Respectfully submitted,

Jeffrey Hirsch
Kissel & Pesce
A Member of the Firm
Counsel for Claimants
September 28, 2006

---

[2] According to each policy, a "Settlement Opportunity" exists where the "Insurer recommends a settlement that does not exceed the policy's applicable Limit of Liability and which is acceptable to the claimant." *Section 1.C.2.*

Exhibit L



KISSEL PESCE HIRSCH & WILMER

A Limited Liability Partnership

580 White Plains Rd – 5th Floor
Tarrytown, New York 10591
Main Tel: 914.750.5933
Facsimile: 914.750.5922

Direct Dial: 914.733.7770
E-Mail: jhirsch@kphwlaw.com

March 26, 2007

**CONFIDENTIAL**

<u>**VIA E-MAIL ONLY**</u>

Miroslava Schierholz
International Centre for Dispute Resolution
The International Division of the American Arbitration Association
1633 Broadway, 10th Fl.
New York, NY 10019

> Re:    In the matter of *Brit Syndicates 2987 (the Lead Subscriber on policy FD0504362)(50% participation) and Lexington Insurance Company (50% participation) and Brit Syndicates 2987 (the Lead subscriber on policy SF403040X)(30% participation); Lexington Insurance Company (30% participation); ACE Syndicate 2488 (20% participation); and Wurtt (20% participation)*
> *vs. Charles Garcia and Sterling Financial Investment Group, Inc.*
> <u>(Case no. 50 174 V 00416 06)</u>

Dear Ms. Schierholz:

This will serve as Claimants' Amended Demand for Arbitration. As we stated in our Demand for Arbitration, this dispute arises from Sterling Financial Investment Group, Inc.'s and Charles Garcia's (the "Respondents") breach of insurance policies that were issued by the Insurers subscribing to policies SF403040X and FD0504362 ("Claimants" in this proceeding). The Arbitration clause in the policies is contained at Section 16 (the policy materials are attached to the original Demand for Arbitration).

The Claimants provided the Respondents with claims-made professional liability insurance for periods effective from (1) May 9, 2004 to May 24, 2005, and (2) May 24, 2005 to May 24, 2006, respectively. The policies that the Respondents purchased set forth what the limits of liability are for covered Claims and state in clear and conspicuous terms that a $100,000 self-insured retention ("Retention Amount") applies to each Claim. In purchasing the policies, the Respondents agreed that the Insurers are "only liable for amounts ... excess of the applicable Retention Amount" and that "such Retention Amount [is] **to be borne by the Insureds**...(emphasis added)." The policies define the term "Loss" to include Defense Costs.[1]

---

[1] The polices define "Defense Costs" as "reasonable and necessary fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to

KISSEL PESCE HIRSCH & WILMER LLP

Ms. Schierholz
March 26, 2007
Page 2

Sterling tendered one claim to the insurers under policy SF403040X (the "Wheeler" claim) and three claims to the insurers under policy FD0504362 (the "Donnino," "Camilleri," and "Frank" claims) that are the subject of this dispute. With Sterling's consent, the Claimants assigned the law firm of Marshall, Dennehey, Warner, Coleman & Goggin as defense counsel for the Insureds in connection with the Wheeler, Donnino and Camilleri claims, and the law firm of Sutherland Asbill & Brennan in connection with the Frank claim. The Claimants notified Sterling and defense counsel that Sterling must satisfy the Retention Amount before the Claimants had any obligations to pay under the insurance policies, and the attached correspondence appointing defense counsel re-affirm Sterling's retention obligation. *See Exhibits A-D.* The Claimants accepted coverage for each matter subject to the terms, conditions and exclusions of the policies and various reservations of rights under the policies and at law.

Despite the clear and unambiguous terms of the policies, the Respondents have, without providing any credible reason or excuse, failed and refused to satisfy their obligation to pay Defense Costs and other amounts within the Retention Amount in connection with any of the Claims that were submitted for coverage.

Respondents' refusal to acknowledge (and pay) the Retention amount is contradicted by its conduct in connection with other claims tendered for coverage. For example, Respondents never objected or questioned their obligations in the past when they paid the defense firms of Lewis, Brisbois, Bisgaard and Smith LLP and Steel Hector & Davis LLP in connection with the defense of these same Respondents in four other claims that had been tendered and accepted for coverage under earlier policies, of which the subject policies are renewals. In each of those four matters, the sum of the settlement and Defense Costs did not exceed Respondents' self-insured retention. Like the Claims that are the subject of this proceeding, the original amounts sought by the underlying claimants in the earlier claims exceeded the Retention Amount. Notably, the language of those earlier policies is the same as the policies at issue here.

Notwithstanding that Respondents have historically acknowledged their Retention obligations without objection in connection with similar customer complaint proceedings under the earlier-issued policies, they now refuse to acknowledge and fulfill those obligations in connection with the Claims submitted under the same policies (but for the policy periods) that are the subject of this proceeding. This wrongful refusal to pay the Retention Amount has caused pecuniary harm to Claimants and the defense counsel retained to defend the Claims. Despite Respondents' actions, but without waiving any of their rights, Claimants made a good faith accommodation and have paid certain Defense Costs in connection with the defense of these Claims as follows:

---

apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of a Claim against an Insured(s), but excluding salaries of any Insured." *Section 2.(d) "Defense Costs."*

KISSEL PESCE HIRSCH & WILMER LLP

Ms. Schierholz
March 26, 2007
Page 3

|  | INCURRED | PAID | OUTSTANDING |
|---|---|---|---|
| Wheeler: | $26, 720.55 | $26,494.84 | $225.71 |
| Donnino: | $28,290.58 | $27,857.20 | $483.39 |
| Camilleri: | $57,842.40 | $55,778.60 | $2,036.66 |
| Frank: | $61,136.48 | $0.00 | $61,136.48 |
| **TOTALS:** | **$173,990.01** | **$110,130.64** | **$63,882.24** |

Claimants have adjusted the four Claims and, with Respondents' knowledge, defense counsel has engaged in good faith settlement discussions with the claimants in each of the four Claims they were defending. During that process, the insurers and Sterling agreed that it was reasonable to determine whether (and for what amount) each of the Claims could settle.

Once defense counsel obtained settlement demands and then began to negotiate lower demands, we promptly advised the Respondents and their counsel that "Settlement Opportunities" (a defined term in the policy) had become available in each Claim. The "Settlement Opportunities" in each matter, when added to the Defense Costs that defense counsel had incurred, totaled less than the Retention Amount that applies to each Claim. Defense counsel advised the Respondents that the claimants' negotiated demands in each matter were "reasonable."

Section 1.C.2. of each of the insurance policies provides, in pertinent part, that the Respondents must consent to a "Settlement Opportunity"[2] within thirty (30) days. If the Respondents do not consent to the "Settlement Opportunity" then the Claimants' "liability for the Claim shall not exceed the amount for which [they] could have settled the Claim plus Defense Costs incurred up to the date of the refusal to settle." Moreover, in the event the Respondents do not timely consent to the "Settlement Opportunity," the Claimants have the right to withdraw coverage for the Claim, and no longer have any responsibility to defend and/or indemnify the Respondents.

Here, each Claim could have been settled for an amount, below the Retention Amount, even including the Defense Costs that had been incurred. The Claimants provided valid notice to the Respondents under Section 1.C.2. and more than thirty days has passed. Upon information and belief, the Respondents have not resolved any of the four Claims in compliance with Section 1.C.2. Consequently, the Claimants have issued correspondence to the Respondents and defense counsel advising that they were withdrawing coverage for each of the four Claims.

Claimants request that the Panel in this Arbitration render an Award in their favor:

---

[2] According to each policy, a "Settlement Opportunity" exists where the "Insurer recommends a settlement that does not exceed the policy's applicable Limit of Liability and which is acceptable to the claimant." *Section 1.C.2.*

KISSEL PESCE HIRSCH & WILMER LLP

Ms. Schierholz
March 26, 2007
Page 4

(1)     Declaring that it is the Respondents' (and any other party or entity claiming "Insured" status under the policies) obligation under the policies to satisfy the full $100,000 per Claim Retention Amount before the Claimants are required to pay under the policies;

(2)     Requiring the Respondents (and any other party or entity claiming "Insured" status under the policies) to indemnify and reimburse the Claimants for any amounts they pay or have paid with respect to any of the Claims, including any loss payments and "Defense Costs," that are within the per Claim Retention Amount;

(3)     Declaring that the Claimants properly invoked Section 1.C.2. in each policy, and that as a result, the Claimants are not required to defend and/or indemnify the Respondents (and any other party or entity claiming "Insured" status under the policies) with respect to Claims;

(4)     Declaring that Claimants are released of any further obligations under the subject policies; and

(5)     For such other relief as the Panel deems just and appropriate.

Respectfully submitted,

Jeffrey Hirsch
Kissel Pesce Hirsch & Wilmer LLP
A Member of the Firm
Counsel for Claimants

JH/mda

cc:    Peter Ticktin, Esq.
       Ejola Cook, Esq.
       Harry Mazadoorian, Esq.

# EXHIBIT A

40117.34
_corr_

# Kissel & Pesce LLP

Attorneys at Law

555 White Plains Road
Tarrytown, New York 10591

Telephone (914) 750-5933
Facsimile (914) 750-5922

July 21, 2005

CONFIDENTIAL

VIA FACSIMILE AND CERTIFIED MAIL

Sterling Financial Investment Group, Inc.
1200 North Federal Highway, Suite 400
Boca Raton, Florida 33432

Attention:   G. Robert Abrams, Esq.
             General Counsel & Chief Compliance Officer

Re:   Security Broker/Dealers Errors and Omissions Insurance
      Insured:       Sterling Financial Investment Group, Inc.
      Policy No.:    SF403040X
      Policy Period: May 9, 2004-2005
      Policy limits: $1 million each loss, including Defense Costs/$2 million in the
                     aggregate, including Defense Costs
      Retention:     $100,000 in the aggregate
      Subject:       *Roger Wheeler and Paul Wheeler under the power of attorney for*
                     *Roger Wheeler; Roger Wheeler and Mary Wheeler as Joint*
                     *Tenants; Mary Wheeler v. Sterling Financial Investment Group,*
                     *Inc., et al.*
      Our File No.:  40117.00033

Dear Mr. Abrams:

As you are aware, this firm represents the interests of certain Underwriters at Lloyd's
("Underwriters") who issued the referenced claims made Securities Broker/Dealer Professional
Liability Insurance Policy ("Policy") to Sterling Financial Investment Group, Inc. ("Sterling
Financial") for the period May 9, 2004 to May 9, 2005. Further to our telephone conversation
last month, this will acknowledge receipt of your letter and accompanying materials to Jude
Donato of Aon Risk Services, in which you provided notice of the above referenced action
instituted against Sterling Financial and other individuals and entities by the Wheeler family.

**New York City**
60 East 42nd Street, Suite 817
New York, New York 10165
Telephone (212) 557-7927
Facsimile (212) 557-7950

**London**
81 Gracechurch Street
London EC3V 0AU, England
Telephone +44 (0) 20 7398-4350
Facsimile +44 (0) 20 7398-4351

**New Jersey**
111 Dunnell Road
Maplewood, New Jersey 07040-2689
Telephone (973) 275-1588
Facsimile (973) 275-7808

## Kissel & Pesce LLP

G. Robert Abrams, Esq.
July 21, 2005
Page No.: 2

This action is presently pending before the National Association for Securities Sealers ("NASD"), Case No. 05-01877.

We appreciate your taking the time to speak to us regarding the facts of this matter. From our review of the Statement of Claim, we understand that Roger Wheeler opened several accounts with various brokerage firms, including two accounts with Sterling Financial. Allegedly, Mr. Wheeler suffers from "Alzheimer's and adult on-set attention deficit disorder [ADD]." His wife, Mary Wheeler, and his son, Paul Wheeler (hereinafter "Claimants") allege that the individual respondents knew or should have known of Mr. Wheeler's "impaired and diminished mental state" and used this to their advantage in soliciting Mr. Wheeler to open accounts with various brokerage companies. Further, Claimants attempt to paint a pattern of fraudulent and/or deceptive activity, wherein a number of the individual respondents, who are or were registered representatives in several of the named brokerage firms, knew one another, knew of Mr. Wheeler's "mental health," and contacted one another to take advantage of Mr. Wheeler's "suggestive mindset" to increase his or her commissions. We do not mean to imply that any of these allegations have merit.

Specifically, Claimants alleges 14 causes of action, as follows: (1) negligence; (2) suitability; (3) misrepresentation and fraud; (4) failure of the brokerage firms to supervise Claimant's accounts; (5) failure of the brokerage firms to supervise each of its registered representatives; (6) breach of fiduciary duties; (7) churning; (8) violation of federal securities laws; (9) violation of state securities laws; (10) violation of NASD Rules of Fair Practice; (11) breach of contract; (12) loss of investment opportunity; (13) elder abuse; and (14) unfair or deceptive practices against senior citizens. Claimants seek compensatory damages, including out-of-pocket losses, in the sum of $3 million; disgorgement of commissions; reasonable return on investments; rescission; interest; punitive damages; costs of arbitration; and reasonable attorneys' fees.

The Securities Broker/Dealer Professional Liability Insurance Policy provides a limit of liability of $1 million any one loss under Insuring Agreement A, Broker/Dealer, and $2 million in the aggregate, for claims first made and reported during the policy period or Discovery Period (if applicable). In addition, the Policy provides a limit of liability of $1 million each loss under Insuring Agreement B, Registered Representative, and $2 million in the aggregate. The Policy provides for a $100,000 retention each and every Claim, and in the aggregate, respectively. Approved defense costs are part of, and reduce, the limit of liability available to pay covered Loss.

Please be advised that, at this time, we are investigating serious coverage issues with respect to this matter. One issue concerns whether Sterling Financial properly and timely provided notice of the *Wheeler* claim. Under the notice provision of the subject policy, Sterling Financial shall, as a condition precedent to the obligations of Underwriters under the policy, give written notice to Frank Crystal & Co. of a Claim made against an Insured as soon as practicable during the Policy Period or during the Discovery Period (if applicable) as long as such Claim(s) is reported no later than 30 days after the date such Claim was first made against an Insured. We

## Kissel & Pesce LLP

G. Robert Abrams, Esq.
July 21, 2005
Page No.: 3

note that the Statement of Claim is dated March 15, 2005 although the NASD West Regional Office received it on April 18, 2005. However, Sterling Financial forwarded notice of this matter on May 12, 2005 to Aon Risk Services and not Frank Crystal & Co., the authorized representative to receive notice under the subject policy.

Please be advised that Sterling Financial is obligated to notify Frank Crystal of all claims. The danger of late reporting of a claim is a potential denial of coverage. In the future, all such matters should be timely reported. At this time, we are reserving Underwriters' rights as to this issue pending our completed investigation.

Second, you advised us that Wexford Clearing Services Corp. ("Wexford") and Bear Stearns Securities Corp. ("Bear Stearns"), both named respondents in the NASD matter, tendered their defense and indemnity to Sterling Financial pursuant to clearance agreements your company separately executed with each. You advised that Sterling Financial denied the tenders but arrived at an interim resolution, whereby the tender issue is on hold pending the arbitration panel's decision on motions to dismiss filed by the clearing companies and Sterling Financial. At this time, we reserve Underwriters' rights as to this issue pending the panel's decision on the motions to dismiss.

Third, under the subject policy, Sterling Financial has the right to select its own legal defense counsel (including in-house counsel) subject to Underwriters' approval. You advised us that Sterling Financial intends to handle this matter in-house. Please be advised that Underwriters have agreed to Sterling Financial self-defending at this time. As we discussed, if developments warrant the need to retain counsel, we would be pleased to recommend several California attorneys to assist Sterling Financial in this matter.

Lastly, a $100,000 self-insured retention applies to this matter. Sterling Financial is obligated to satisfy the retention before Underwriters have any obligations under the subject policy. Thus, all invoices should be forwarded to Sterling Financial (with a copy to us) until the retention is exhausted.

We understand that Sterling Financial's motion to dismiss is pending before the NASD. Please advise us of any developments that arise, including issues relating to Bear Stearns and Wexford. In the meantime, we ask that you forward a copy of Mr. Wheeler's account information, including his customer agreement, tickets, and any and all correspondence between Mr. Wheeler and Sterling Financial. In addition, please forward copies of the clearance agreement with Bear Stearns and Wexford. Upon our receipt of the above materials, we will review the documents and endeavor to forward a supplemental letter addressing coverage issues raised in this matter.

Our investigation into these matters is without prejudice to Underwriters' rights under the subject policy and applicable law. By referring to certain provisions of the Policy Underwriters do not intend to waive or limit any of their rights. To the contrary, we expressly reserve all of Underwriters' rights under applicable law and under the Policy, including, but not limited to, the

**Kissel & Pesce** LLP
G. Robert Abrams, Esq.
July 21, 2005
Page No.: 4

right to raise all Policy terms, conditions and exclusions as defenses to coverage where appropriate.

Please do not hesitate to contact us should you have any questions regarding the contents of this letter. We look forward to receiving the requested information and documentation in the very near future.

Yours faithfully,

*Jeffrey Hirsch*

Jeffrey H. Hirsch.

Confirmation Report — Memory Send

Date & Time: 07-21-2005   12:44pm
Tel line    : 9147505922
Machine ID : KISSEL PESCE

| | | |
|---|---|---|
| Job number | : | 161 |
| Date & Time | : | 07-21  12:43pm |
| To | : | 15618862325 |
| Number of pages | : | 005 |
| Start time | : | 07-21  12:43pm |
| End time | : | 07-21  12:44pm |
| Pages sent | : | 005 |
| Status | : | OK |

Job number      : 161          *** SEND SUCCESSFUL ***

## Kissel & Pesce LLP

| Fax Transmittal Form |
|---|

555 WHITE PLAINS ROAD
TARRYTOWN, NY 10591
PHONE (914) 750-5933
FAX (914) 750-5922

- - -

OFFICES IN

NEW YORK CITY
NEW JERSEY
LONDON

<u>CONFIDENTIALITY NOTICE</u>

THE INFORMATION CONTAINED IN THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THIS MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AT 914 750-5933

**To:**  C. Robert Abrams, Esq.
General Counsel &
Chief Compliance
Officer
STERLING FINANCIAL
INVESTMENT GROUP,
INC.

Fax: (561) 886-2325
Phone: (561) 886-2200

* * * CONFIDENTIAL * * *

**From:**  Claudia Oliveri

Fax:   (914) 750-5922
Phone:  (914) 750-5933

E-mail:  COliveri@kplaw.net

Date sent: July 21, 2005

No. of Pages w/Cover Sheet: 5

**Re:**  Security Broker/Dealers Errors and Omissions Insurance
Insured:          Sterling Financial Investment Group, Inc.
Policy No.:       SF403040X
Policy Period:    May 9, 2004-2005
Policy limits:    $1 million each loss, including Defense
Costs/$2 million in the aggregate, including
Defense Costs
Retention:        $100,000 in the aggregate
Subject:          *Roger Wheeler and Paul Wheeler under the
power of attorney for Roger Wheeler; Roger
Wheeler and Mary Wheeler as Joint Tenants;
Mary Wheeler v. Sterling Financial
Investment Group, Inc., et al.*

Our File No.:     40117.00033

Please see attached.

# *Kissel & Pesce* LLP

| Fax Transmittal Form |
| --- |

555 WHITE PLAINS ROAD
TARRYTOWN, NY 10591
PHONE (914) 750-5933
FAX (914) 750-5922

- - -

OFFICES IN

NEW YORK CITY
NEW JERSEY
LONDON

- - -

CONFIDENTIALITY
NOTICE

THE INFORMATION
CONTAINED IN THIS
MESSAGE IS INTENDED
ONLY FOR THE USE OF THE
INDIVIDUAL OR ENTITY TO
WHICH IT IS ADDRESSED,
AND MAY CONTAIN
INFORMATION THAT IS
CONFIDENTIAL. IF THE
READER OF THIS MESSAGE
IS NOT THE INTENDED
RECIPIENT, OR THE
EMPLOYEE OR AGENT
RESPONSIBLE FOR
DELIVERING THIS
MESSAGE TO THE
INTENDED RECIPIENT, YOU
ARE HEREBY NOTIFIED
THAT ANY
DISSEMINATION,
DISTRIBUTION OR
COPYING OF THIS
COMMUNICATION IS
STRICTLY PROHIBITED. IF
YOU HAVE RECEIVED THIS
COMMUNICATION IN
ERROR, PLEASE NOTIFY US
IMMEDIATELY BY
TELEPHONE AT
914-750-5933

**To:**  C. Robert Abrams, Esq.
General Counsel &
Chief Compliance
Officer
STERLING FINANCIAL
INVESTMENT GROUP,
INC.

Fax: (561) 886-2325
Phone: (561) 886-2200

* * * **CONFIDENTIAL** * * *

**From: Claudia Oliveri**

Fax:  (914) 750-5922
Phone:  (914) 750-5933

E-mail:  COliveri@kplaw.net

Date sent:  July 21, 2005

No. of Pages w/Cover Sheet:  5

---

Re:   Security Broker/Dealers Errors and Omissions Insurance
Insured:          Sterling Financial Investment Group, Inc.
Policy No.:       SF403040X
Policy Period:    May 9, 2004-2005
Policy limits:    $1 million each loss, including Defense
                  Costs/$2 million in the aggregate, including
                  Defense Costs
Retention:        $100,000 in the aggregate
Subject:          *Roger Wheeler and Paul Wheeler under the
                  power of attorney for Roger Wheeler; Roger
                  Wheeler and Mary Wheeler as Joint Tenants;
                  Mary Wheeler v. Sterling Financial
                  Investment Group, Inc., et al.*
Our File No.:     40117.00033

Please see attached

# Kissel & Pesce LLP

Attorneys at Law

555 White Plains Road
Tarrytown, New York  10591

Telephone (914) 750-5933
Facsimile (914) 750-5922

October 12, 2005

**VIA E-MAIL ONLY**

Andy Davitt
Marshall, Dennehey, Warner, Coleman & Goggin
1845 Walnut Street
Philadelphia, Pennsylvania 19103-4797

|  |  |
|---|---|
| Re: | Securities Broker/Dealer Professional Liability Insurance |
| Insured: | Sterling Financial Investment Group, Inc. |
| Policy Ref.: | SF403040X |
| Policy Period: | May 9, 2004-2005 |
| Policy Limits: | $1 million any one Loss and $2 million in the aggregate excess of a $100,000 each and every Claim retention (includes Defense Costs) |
| Subject: | *Roger Wheeler and Paul Wheeler under the power of attorney for Roger Wheeler; Roger Wheeler and Mary Wheeler as Joint Tenants; Mary Wheeler v. Sterling Financial Investment Group, Inc., et al.* |
| Our File No.: | 40117.00034 |

Dear Andy:

As you are aware, Kissel & Pesce represents the interests of certain London Underwriters ("Underwriters") who provide Sterling Financial Investment Group, Inc. ("Sterling") with Securities Broker/Dealer Professional Liability Insurance for the above-referenced period. Further to our e-mail correspondence of August 29, 2005, we have recommended to Sterling that they retain the services of your firm to defend the company in connection to an arbitration proceeding instituted by the Wheelers against Sterling, et al. The proceeding is pending before the National Association of Securities Dealers ("NASD") and is presently venued in California.

It is our understanding that Marshall Dennehey is working with California local counsel in arranging for Marshall Dennehey's representation in this California case. Based on my discussions with your partner Gerry Kowalski, once California local counsel enters his

| **New York City** | **London** | **New Jersey** |
|---|---|---|
| 60 East 42nd Street, Suite 817 | 81 Gracechurch Street | 111 Dunnell Road |
| New York, New York  10165 | London EC3V 0AU, England | Maplewood, New Jersey  07040-2689 |
| Telephone (212) 557-7927 | Telephone  +44 (0) 20 7398-4350 | Telephone (973) 275-1588 |
| Facsimile  (212) 557-7950 | Facsimile  +44 (0) 20 7398-4351 | Facsimile  (973) 275-7808 |

## Kissel & Pesce LLP

Mr. Davitt
October 12, 2005
Page No.: 2

appearance in the arbitration, Marshall Dennehey only needs to file a certification form with California State Bar.

On or about April 18, 2005, the Wheelers filed a Statement of Claim alleging twelve (12) causes of action: (1) negligence; (2) fraud, deceit and omission of material fact; (3) suitability; (4) breach of fiduciary duty and (5) breach of trust; (6) churning; (7) violation of the Securities and Exchange Act of 1934; (8) violation of state securities laws; (9) failure to supervise; (10) violation of NASD Rules and Regulations; (11) breach of contract; (12) breach of implied covenant of good faith and fair dealing; (13) elder abuse; (14) unfair or deceptive practices against senior citizens. They seek compensatory damages in the amount of $3 million, disgorgement of commissions, damages associated with the lost opportunity or reasonable return on the sums invested; rescission; interest; punitive damages; costs and fees.

It is our understanding that the motion to dismiss previously filed by Marc Abramson, former in-house counsel to Sterling, is still pending. Once the NASD rules on the motion, please advise. Your partner Gerry Kowalski has recently advised us that the initial pre-hearing conference is scheduled for November 1, 2005.

Enclosed, please find defense counsel guidelines. Please review, sign and return the signature page of the guidelines to us at your earliest convenience. As noted in the guidelines, we ask that this office be kept apprised of all communications concerning settlement or other significant developments with claimant and/or her representative(s). Furthermore, please note that Underwriters have agreed to your representation of Sterling in this matter at the blended rate of $250 per hour.

Please be advised that the subject policy provides for a $100,000 self-insured retention, which Sterling must satisfy. Please be aware that while Underwriters' obligations to pay costs and fees are not triggered until the retention is exhausted, we reserve Underwriters' right to audit and adjust costs and fees incurred within the retention. Therefore, we request that you direct all invoices to Sterling (with a copy to us) until the retention is exhausted.

Finally, please provide us with an estimated defense costs budget through the arbitration hearing and a summary of all defense costs expended to date.

We look forward to working with you on this matter. Please do not hesitate to contact us with any questions or comments that you may have.

Very truly yours,

Panagiota Ainalakis, Esq.

cc:    Gerry Kowalski, Esq.
       Jeffrey Hirsch, Esq.

# EXHIBIT B

# Kissel & Pesce LLP

Attorneys at Law

555 White Plains Road
Tarrytown, New York 10591

Telephone (914) 750-5933
Facsimile (914) 750-5922

September 13, 2005

VIA E-MAIL AND
FIRST CLASS MAIL

Andy Davitt
Marshall, Dennehey, Warner, Coleman & Goggin
1845 Walnut Street
Philadelphia, Pennsylvania 19103-4797

      Re:     Securities Broker/Dealer Professional Liability Insurance
      Insured:     Sterling Financial Investment Group, Inc.
      Policy Ref.:  FD0504362
      Policy Period: May 24, 2005-2006
      Policy Limits: $1 million any one Loss and $2 million in the aggregate
                  excess of a $100,000 each and every Claim retention
                  (includes Defense Costs)
      Claimant:   Carmella Donnino
      Our File No.:  40117.00035

Dear Andy:

As you are aware, Kissel & Pesce represents the interests of certain London Underwriters ("Underwriters") who provide Sterling Financial Investment Group, Inc. ("Sterling") with Securities Broker/Dealer Professional Liability Insurance for the above-referenced period. We have recommended to Sterling that they retain the services of your firm to defend the company in connection to an arbitration proceeding instituted by Carmella Donnino ("Donnino") against Sterling and Newbridge Securities Corp. The proceeding is pending before the National Association of Securities Dealers ("NASD") and is presently venued in Florida.

On or about July 18, 2005, Donnino filed a Statement of Claim as Trustee of the Antonio Donnino and Carmella Donnino Family Trust and Marital Trust alleging three (3) causes of action: (1) breach of fiduciary duty; (2) negligence; and (3) negligent supervision. She seeks damages in the range of $100,000 to $500,000, plus punitive damages; a reasonable return on her retirement capital; interest; attorney's fees and costs.

New York City
60 East 42nd Street, Suite 817
New York, New York 10165
Telephone (212) 557-7927
Facsimile (212) 557-7950

London
81 Gracechurch Street
London EC3V 0AU, England
Telephone +44 (0) 20 7398-4350
Facsimile +44 (0) 20 7398-4351

New Jersey
111 Dunnell Road
Maplewood, New Jersey 07040-2689
Telephone (973) 275-1588
Facsimile (973) 275-7808

# Kissel & Pesce LLP

Mr. Davitt
September 13, 2005
Page No.: 2

It is our understanding that your firm recently received an extension of time for Sterling to file its answer to the Donnino Statement until September 23, 2005. Please provide us with a draft of your prepared answer before filing.

Enclosed, please find defense counsel guidelines. Please review, sign and return the signature page of the guidelines to us at your earliest convenience. As noted in the guidelines, we ask that this office be kept apprised of all communications concerning settlement or other significant developments with claimant and/or her representative(s). Furthermore, please note that Underwriters have agreed to your representation of Sterling in this matter at the blended rate of $250 per hour.

Please be advised that the subject policy provides for a $100,000 self-insured retention, which Sterlingl must satisfy. Please be aware that while Underwriters' obligations to pay costs and fees are not triggered until the retention is exhausted, we reserve Underwriters' right to audit and adjust costs and fees incurred within the retention. Therefore, we request that you direct all invoices to Sterling (with a copy to us) until the retention is exhausted.

Finally, please provide us with an estimated defense costs budget through the arbitration hearing and a summary of all defense costs expended to date.

We look forward to working with you on this matter. Please do not hesitate to contact us with any questions or comments that you may have.

Very truly yours,

Panagiota Ainalakis, Esq.

cc:    Gerry Kowalski, Esq.
       Patricia Keenan (Sterling)
       Jeffrey Hirsch, Esq.

# EXHIBIT C

# Kissel & Pesce LLP

Attorneys at Law

555 White Plains Road
Tarrytown, New York 10591

---

Telephone (914) 750-5933
Facsimile (914) 750-5922

March 20, 2006

**VIA E-MAIL AND REGULAR MAIL**
Andy Davitt
Marshall, Dennehey, Warner, Coleman & Goggin
1845 Walnut Street
Philadelphia, Pennsylvania 19103-4797

<div>

Re:   Securities Broker/Dealer Professional Liability Insurance
      Assured:    Sterling Financial Investment Group, Inc.
      Policy Ref.:   FD0504362
      Policy Period: May 24, 2005-2006
      Policy Limits: $1 million any one Loss/$2 million in the aggregate,
                   xs of a $100,000 each and every Claim retention
                   (including Defense Costs)
      Claimants:   Charles P. and Frances Camilleri
      Our File No.:  40117.00042

</div>

Dear Andy:

As you are aware, Kissel & Pesce represents the interests of certain London Underwriters ("Underwriters") who provide Sterling Financial Investment Group, Inc. ("Sterling") with claims made and reported Securities Broker/Dealer Professional Liability Insurance for the above-referenced period. We have recommended to Sterling that they retain the services of your firm to defend the company in connection to an arbitration proceeding instituted by Charles P. and Frances Camilleri (the "Camilleris") against Sterling and a former registered representative, Marc Levy. The proceeding is pending before the National Association of Securities Dealers ("NASD") and is presently venued in Florida.

On or about October 31, 2005, the Camilleri's filed a Statement of Claim alleging (1) mismanagement of their accounts in viol of NASD Rule 2310 and NYSE Rule 405 [Unsuitability]; (2) breach of fiduciary duty; (3) professional negligence; (4) fraud (against all respondents) and failure to supervise (as against Sterling only); and (5) arbitral adjustment. The Camilleris seek an unspecified amount of compensatory damages, including disgorgement of all unjust enrichment; lost profits; punitive or exemplary damages; arbitral or equitable adjustment;

| **New York City** | **London** | **New Jersey** |
|---|---|---|
| 60 East 42nd Street, Suite 817 | 81 Gracechurch Street | 111 Dunnell Road |
| New York, New York 10165 | London EC3V 0AU, England | Maplewood, New Jersey 07040-2689 |
| Telephone (212) 557-7927 | Telephone  +44 (0) 20 7398-4350 | Telephone (973) 275-1588 |
| Facsimile  (212) 557-7950 | Facsimile  +44 (0) 20 7398-4351 | Facsimile  (973) 275-7808 |

# Kissel & Pesce LLP

Andy Davitt, Esq.
March 20, 2006
Page No.: 2

costs and expenses.   Marshall Dennehey timely filed an answer on behalf of Sterling on or about January 25, 2006.

Enclosed, please find defense counsel guidelines.   Please review, sign and return the signature page of the guidelines to us at your earliest convenience.   As noted in the guidelines, we ask that this office be kept apprised of all communications concerning settlement or other significant developments with Claimants and/or their representative(s).   Furthermore, please note that Underwriters have agreed to your representation of Sterling in this matter at the blended rate of $275 per hour.

The subject policy provides for a $100,000 self-insured retention, which Sterling must satisfy.   Please be aware that while Underwriters' obligations to pay costs and fees are not triggered until the retention is exhausted, we reserve Underwriters' right to audit and adjust costs and fees incurred within the retention.   Therefore, we request that you direct all invoices to Sterling (with a copy to us) until the retention is exhausted.

Finally, please provide us with an estimated defense costs budget through the arbitration hearing and a summary of all defense costs expended to date.

We look forward to working with you on this matter.   Please do not hesitate to contact us with any questions or comments that you may have.

Very truly yours,

Panagiota Ainalakis

cc:    Gerry Kowalski, Esq. (*via* e-mail only, w/o enclosures)
       Cristina Avila (*via* e-mail only, w/o enclosures)
       Jeffrey Hirsch, Esq.

# EXHIBIT D

# Kissel & Pesce LLP

Attorneys at Law

555 White Plains Road
Tarrytown, New York 10591

Telephone (914) 750-5933
Facsimile (914) 750-5922

March 27, 2006

**VIA E-MAIL AND
FIRST CLASS MAIL**

Alan Wolper
Sutherland Asbill & Brennan
999 Peachtree Street, NE
Atlanta, GA 30309-3996

> Re:  Securities Broker/Dealer Professional Liability Insurance
> Insured:      Sterling Financial Investment Group, Inc.
> Policy Ref.:  FD0504362
> Policy Period: May 24, 2005-2006
> Policy Limits: $1 million any one Loss and $2 million in the aggregate
>                     excess of a $100,000 each and every Claim retention
>                     (includes Defense Costs)
> Claimant:    Howard and Diana Frank
> Our File No.:  40117.00045

Dear Mr. Wolper:

Kissel & Pesce represents the interests of certain London Underwriters ("Underwriters") who provide Sterling Financial Investment Group, Inc. ("Sterling") with claims made and reported Securities Broker/Dealer Professional Liability Insurance for the above-referenced period. We have recommended that Sterling retain the services of your firm to defend the arbitration proceeding instituted by Howard and Diana Frank ("Frank") against Sterling filed with the National Association of Securities Dealers in Florida.

On or about January 4, 2006, the Franks filed a Statement of Claim alleging three (3) causes of action: (1) breach of fiduciary duty; (2) negligence; and (3) negligent supervision. The Franks seeks damages in the range of $100,000 to $500,000, plus punitive damages; a reasonable return on their retirement capital; interest; attorney's fees and costs.

New York City
60 East 42ⁿᵈ Street, Suite 817
New York, New York 10165
Telephone (212) 557-7927
Facsimile (212) 557-7950

London
81 Gracechurch Street
London EC3V 0AU, England
Telephone +44 (0) 20 7398-4350
Facsimile +44 (0) 20 7398-4351

New Jersey
111 Dunnell Road
Maplewood, New Jersey 07040-2689
Telephone (973) 275-1588
Facsimile (973) 275-7808

**Kissel & Pesce** LL₁

Mr. Alan Wolper, Esq.
March 27, 2006
Page No.: 2

It is our understanding that Sterling's answer is currently due on March 30, 2006 and that your firm may secure an extension of time. Please advise if you have received an extension of time. In any event, please provide us with a draft of your prepared answer before filing.

Enclosed, please find defense counsel guidelines. Please review, sign and return the signature page of the guidelines to us at your earliest convenience. As noted in the guidelines, we ask that this office be kept apprised of all communications concerning settlement or other significant developments with claimants and/or their representative(s). Furthermore, please note that Underwriters have agreed to your representation of Sterling in this matter at the rate of $375 per hour for partners, and $250-$275 per hour for associates.

Please be advised that the subject policy provides for a $100,000 self-insured retention, which Sterling must satisfy. Please be aware that while Underwriters' obligations to pay costs and fees are not triggered until the retention is exhausted, we reserve Underwriters' right to audit and adjust costs and fees incurred within the retention. Therefore, we request that you direct all invoices to Sterling (with a copy to us) until the retention is exhausted. However, should you encounter any problems collecting payment of your bills from Sterling, or should Sterling advise you that they are unable to pay your fees, please contact us. Please be aware that these instructions are not intended to constitute a waiver of or otherwise prejudice Underwriters' rights under the policy, applicable law or in equity.

Finally, please provide us with an estimated defense costs budget through the arbitration hearing.

We look forward to working with you on this matter. Please do not hesitate to contact us with any questions or comments that you may have.

Very truly yours,

Panagiota Ainalakis

cc:    Cristina Avila (Sterling, *via* e-mail only, w/o enclosures)
       Jeffrey Hirsch, Esq.