Exhibit M

**Penny Ainalakis-Barone**

---

| | |
|---|---|
| **From:** | pt@trlawoffice.com |
| **Sent:** | Sunday, May 21, 2006 4:53 PM |
| **To:** | jhirsch@kplaw.net; painalakis@kplaw.net |
| **Subject:** | Sterling Financial coverage |
| **Attachments:** | Attorneys'letter and SFIG response.pdf; Acknowledgement of debt and Suspension letter.pdf |

Dear Jeff and Penny,

As we are getting to the end of Sterling Financial Investment Group, Inc.'s coverage with Underwriters at Lloyds, I wish to advise of circumstances of which Sterling is now aware which may reasonably be expected to give rise to claims being made against Sterling, pursuant to Paragraph 7(c) of the Policy.

The potential claims allegedly result from unauthorized trading by Thomas Karidas, a former broker of Sterlings in Greece. I am attaching a letter from the law firm of Bochetto & Lentz, and a document titled "Acknowledgement of Debt," which is self explanatory.

Also, there is one other matter regarding Jonathan Pappas, another client of Mr. Karidas, who is apparently owed $133,640. Mr. Pappas closed his account, and on March 23, 2006, Sterling wired his remaining balance of $23,797 to his Citibank account in Athens, Greece. Mr. Pappas' account shows a loss of $87,751. Apparently, Mr. Karidas had no authority to make purchases or sales.

I hope that this is to your satisfaction, and that Sterling will receive the benefit of coverage for these potential claims, should they ever materialize.

Yours,

Peter Ticktin



**Peter Ticktin**
Legal Strategist and Trial Lawyer

P.O. Box 811554
Boca Raton, FL 33481-1554
Ph (561) 392-6933
Fx (561) 392-5158
pt@trlawofice.com

TICKTIN & RODRIGUEZ, P.A.
Results through Creative Thinking

www.iPrint.com © 1996-2006 iPrint, inc.

# BOCHETTO & LENTZ
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1524 LOCUST STREET
PHILADELPHIA, PA 19102

GEORGE BOCHETTO†
GAVIN P. LENTZ*
JEFFREY W. OGREN*
STEPHEN E. SKOVRON*
CYNTHIA A. CLARK
DAVID P. HEIM*
VINCENT van LAAR*
SCOTT F. SIGMAN*
TODD S. McGARVEY*

DAVID J. PERLMAN*
OF COUNSEL

CORA I. O'DONNELL, J.D.
KIMBERLY R. ENOCH
LYNNE NUCCI
TRICIA DESMARAIS
BRIAN GILBOY
    PARALEGALS

PRACTICE DEDICATED TO LITIGATION MATTERS

TELEPHONE: (215) 735-3900
TELECOPIER: (215) 735-2455

E-MAIL ADDRESS:
gbochetto@bochettoandlentz.com

FIRM WEB SITE:
www. bochettoandlentz.com

NEW JERSEY OFFICE

1230 BRACE ROAD
CHERRY HILL, NEW JERSEY 08034
TELEPHONE NUMBERS:
(856) 722-9595
(856) 427-0631
TELECOPIER: (856) 722-5511

†ALSO ADMITTED TO NEW YORK AND DC BARS
*ALSO ADMITTED TO NEW JERSEY BAR

November 22, 2005

**VIA OVERNIGHT MAIL**
Charles Garcia
Chief Executive Officer
Sterling Financial Investment Group
1200 N. Federal Hwy., Suite 400
Boca Raton, Florida 33432

COMPLIANCE

NOV 2 8 2005

RECEIVED

11/28/05

    *Re:*    *Agisilaos Kofinas, Acct No. nr.11436438*
          *Alagianni Sofia and Alagiannis Ioannis, Acct No. nr. 10121107*
          *Vlahaki Athanasia and Nikolaidis Lazaros, Acct. No. nr. 85714588*
          *Global Ocean International Investment Ltd, Acct. No. nr. 37670985*
          *Fernando Paulo Canotilho De Sousa, Acct. No. nr. 66025293*
          *Fordhill Services Ltd., Acct. No. nr. 30726899*

Dear Mr. Garcia:

    Please be advised that this firm has been retained to represent the interest of the above-referenced account holders, all of whom have suffered substantial monetary losses as a result of unauthorized trading by your agent/broker Thomas Karidas.

    Mr. Karidas is an agent of Sterling Financial Investment Group ("Sterling"), who worked out of Sterling's branch offices in Athens, Greece. In a signed, under oath statement, Mr. Karidas has admitted to engaging in unauthorized trading in the above accounts, amounting to a total of **$5,232,730** in losses. A copy of the English interpretation of Mr. Karidas' statement in this regard is enclosed herewith.

    On behalf of the above account holders, I am writing to place you on notice of these potential claims, and request your immediate cooperation in disclosing relevant documents concerning this issue. In this regard, we request you provide the following documents immediately:

    1.    All monthly account statements for the above listed accounts from
        their inception to the present;

    2.    All agreements, memorandum of understanding, authorizations, or
        any other documents signed by the account owners;

**BOCHETTO & LENTZ, P.C.**

Charles Garcia
November 22, 2005
page 2


3.    Any agreements which purport to bind the above account owners
      to arbitration of disputes;

4.    All agreements, memorandum of understanding, or any other similar
      type documents signed by Thomas Karidas;

5.    All correspondence, memoranda, emails, or any other similar documents
      evidencing communication between Mr. Karidas and any other agents or
      employees of Sterling; and

6.    All complaints, statements of claim, or any other documents concerning
      similar client allegations with respect to Mr. Karidas' unauthorized trading.

      Further, we have recently learned that Sterling is currently in discussions to merge with, or be
acquired by, another company.  In this regard, you should immediately make these claims part of the
disclosures during the due diligence process, as well as take efforts to ensure a sufficient amount
remains available after any merger or acquisition to satisfy these claims.

      I am requesting these documents in a good faith attempt to come to a resolution of this dispute
short of formal legal action, which would likely involve reporting these claims to the NASAD and
other government agencies.  If we do not hear back from you within ten (10) days concerning your
intentions in this regard, we will be forced to take any and all legal action necessary to protect our
clients' interest, including filing formal suit.

      I look forward to your anticipated cooperation in this matter.


                                    Sincerely,

                                    BOCHETTO & LENTZ, P.C.


                              By:   _____
                                    George Bochetto, Esquire


cc:    Robert Mateicka, Head of Private Client Services (w/encl.)
       Jennifer Ghaly, Director of Compliance (w/encl.)

November 28, 2005

George Bochetto, Esquire
1524 Locust Street
Philadelphia, PA 19102

**Re:**  **Kofinas acct Number 1143-6438**
       **Sofia & Ioannis acct number 1012-1107**
       **Athanasia & Lazaros acct number 8571-4588**
       **Global Ocean acct number 3767-0985**
       **De Sousa acct number 6602-5293**
       **Fordhill Services acct number 3072-6899**

Dear Mr. Bochetto,

Sterling Financial Investment Group, Inc. ("SFIG") is in receipt of your letter dated November 22, 2005, regarding the above-referenced clients. My office received your request today, November 28, 2005

Unfortunately, Sterling's privacy policy requires a letter signed by all the owners of the accounts in order to forward you copies of their statements and the documents they signed. You may forward their authorizations directly to me at the above address. The broker, Thomas Kardias, is no longer affiliated with SFIG. Therefore, we cannot rely on his authentication.

Should you require any further information, please feel free to contact me at your convenience. I can be reached directly at 561.886.2313.

Sincerely,

**Sterling Financial Investment Group, Inc.**
By:

Robert C. Mateicka
Director of Compliance

ACKNOWLEDGMENT OF DEBT

In Kifissia, Attica, this 15th of September 2005, in the prem-
ises where the registered offices of the American securities
Company "STERLING FINANCIAL INVESTMETN GROUP" are situated
through 16 September 2005, between:


. Mr.THOMAS KARYDAS of GEORGE, American stock broker, member
of NASD, CRD Nr.1468680, legal representative of the said Com-
pany through 8 August 2005 (hereinafter referred to as the
"Debtor-Guarantor").


. Mr.PANAGIOTIS NIKOLAOU of STEFANOS, American stock broker,
member of NASD, CRD Nr.4503826, (hereinafter referred to as
the "Representative A" of the accounts operated and managed by
the "Debtor-Guarantor", that is the account nr.85714588
jointly owned by Ms.VLAHAKI ATHANASIA of NIKOLAOS and
Mr.NIKOLAIDIS LAZAROS of ANDRONIKOS, the account nr.10121107
jointly owned by Ms.ALAGIANNI SOFIA and Mr.ALAGIANNIS IOANNIS,
the account nr.11436438 owned by Mr.AGISILAOS KOFINAS, the ac-
count nr.37670985 owned by the company GLOBAL OCEAN INTERNA-
TIONAL INVESTMENT LTD, the account nr.66025293 owned by
Mr.FERNANDO PAULO CANOTILHO DE SOUSA, and the account
nr.30726999 owned by the company FORDHILL SERVICES LTD.


. Mr.IOANNIS LAGKADIANOS of ANTONIOS, American stock broker,
member of NASD, CRD Nr.4777388, (hereinafter referred to as
the "Representative B" of the accounts operated and managed by
the "Debtor-Guarantor", that is the account nr.89402548 owned
by Mr.UMBERTO MILESI, and the account nr.38672377 owned by
Mr.STANISLAV HENRIK.

Μεταφραστικό Γραφείο Υπουργείου Εξωτερικών, Αθήνα.

Bureau des Traductions du Ministère des Affaires Etrangères
de la République Hellénique, Athènes.

Hellenic Republic - Ministry of Foreign Affairs
Translations Office, Athens.

Mr.THOMAS KARYDAS of GEORGE hereby acknowledges and accepts that, due to irregular transactions not authorized by the beneficiaries of the said accounts, contrary to the applicable international regulations of the Capital Market Committees, he caused a loss of funds as follows:

1. From the account nr.85714588 a total loss of five hundred seventy seven thousand seven hundred thirty (577,730.00) U.S. dollars.

2. From the account nr.10121107 a total loss of two hundred thirty thousand (230,000.00) U.S. dollars.

3. From the account nr.11436438 a total loss of four hundred ninety four thousand (494,000.00) U.S. dollars.

4. From the account nr.37670985 a total loss of five hundred thirty thousand (530,000.00) U.S. dollars.

5. From the account nr.66025293 a total loss of one million two hundred and one thousand (1,201,000.00) U.S. dollars.

6. From the account nr.30726899 a total loss of two million two hundred thousand (2,200,000.00) U.S. dollars.

7. From the account nr.89402548 a total loss of fifty thousand (50,000.00) U.S. dollars.

8. From the account nr.38672377 a total loss of fifty thousand (50,000.00) U.S. dollars.

By virtue of the present agreement, Mr.THOMAS KARYDAS of GEORGE hereby acknowledges that he is liable to reparation of damages caused to the beneficiaries of the said accounts through the irregular and unauthorized management of the funds by him. Specifically, he undertakes the obligation to cover from his own funds the deficit of each account, as detailed above, by 31st of December 2005.

Μεταφραστικό Γραφείο Υπουργείου Εξωτερικών, Αθήνα.

Bureau des Traductions du Ministère des Affaires Etrangères de la République Hellénique, Athènes.

Hellenic Republic - Ministry of Foreign Affairs
Translations Office, Athens.

dertaken hereunder, he endorses to the bearer and delivers this day:

1. To Mr.IOANNIS LAGKADIANOS of ANTONIOS, the cheque nr.00000169-4 dated 05.01.2006 for the amount of Eur.80,000 issued to his order for his convenience by his wife VLAHAKI ZAFIRIA of NIKOLAOS from her account nr.017 051 505100994360 1 kept in PIRAEUS BANK.

2. To Mr.PANAGIOTIS NIKOLAOU of STEFANOS, the cheque nr.00000167-8 dated 10.01.2006 for the amount of Eur.650,000 issued to his order for his convenience by his wife VLAHAKI ZAFIRIA of NIKOLAOS from her account nr.017 051 505100994360 1 kept in PIRAEUS BANK.

3. To Mr.PANAGIOTIS NIKOLAOU of STEFANOS, the cheque nr.00000169-4 dated 17.01.2006 for the amount of Eur.3,560,000 issued to his order for his convenience by his wife VLAHAKI ZAFIRIA of NIKOLAOS from her account nr.017 051 505100994360 1 kept in PIRAEUS BANK.

The parties hereby expressly agree that if Mr.THOMAS KARYDAS of GEORGE covers the loss of each particular account by 31.12.2005, as detailed above, Mr.PANAGIOTIS NIKOLAOU of STE-FANOS and Mr.IOANNIS LAGKADIANOS of ANTONIOS shall return the above cheques to Mr.THOMAS KARYDAS of GEORGE.

If, however, Mr.THOMAS KARYDAS of GEORGE fails to cover the loss of each particular account by that date, Mr.PANAGIOTIS NIKOLAOU of STEFANOS and Mr.IOANNIS LAGKADIANOS of ANTONIOS shall be entitled to collect the said cheques and pay to the beneficiary of each particular account the amount correspond-ing to the outstanding deficit of the account by the time of collection of the said cheques; the remaining balance, if any, shall be refunded by  the said PANAGIOTIS NIKOLAOU and IOANNIS

Μεταφραστικό Γραφείο Υπουργείου Εξωτερικών, Αθήνα.

Bureau des Traductions du Ministère des Affaires Etrangères de la République Hellénique, Athènes.

Hellenic Republic - Ministry of Foreign Affairs
Translations Office, Athens.

Athens, 16.09.2005.

The contracting parties

THOMAS KARYDAS of GEORGE (signature)

PANAGIOTIS NIKOLAOU of STEFANOS (signature)

IOANNIS LAGKADIANOS of ANTONIOS (signature)

Attested by: Argyris D.Georgakopoulos, Attorney-at-Law

(signed) (sealed)

True translation of the attached original document in Greek.

Athens, 22.9.2005.

The Translator

K.Makropoulos

Μεταφραστικό Γραφείο Υπουργείου Εξωτερικών, Αθήνα.

Bureau des Traductions du Ministère des Affaires Etrangères
de la République Hellénique, Athènes.

Hellenic Republic - Ministry of Foreign Affairs
Translations Office, Athens.

Athens, 16.09.2005.

The contracting parties

THOMAS KARYDAS of GEORGE (signature)

PANAGIOTIS NIKOLAOU of STEFANOS (signature)

IOANNIS LAGKADIANOS of ANTONIOS (signature)

Attested by: Argyris D.Georgakopoulos, Attorney-at-Law

(signed) (sealed)

True translation of the attached original document in Greek.

Athens, 22.9.2005.

The Translator

                    K.Makropoulos

Μεταφραστικό Γραφείο Υπουργείου Εξωτερικών, Αθήνα.

Bureau des Traductions du Ministère des Affaires Etrangères
de la République Hellénique, Athènes.

Hellenic Republic - Ministry of Foreign Affairs
Translations Office, Athens.

RÉPUBLIQUE HELLÉNIQUE
MINISTERE DES AFFAIRES ETRANGERES
Vu pour legalisation de la signature ci-dessus
du Traducteur du Ministère des Affaires
Etrangères ayant traduit le texte ci-annexé.

Athènes le,   2 6 ZEN. 2005

## MEMORANDUM

TO:        TOM KARIDAS

FROM:      ROBERT MATEICKA

SUBJECT:   SUSPENSION

DATE:      11/29/2005

Enclosed please find the document that we have already sent you via
this morning, but which you state has not been received on your offic
this memo, please call me directly at 561.886.2313 to discuss this docu
know the origins of its creation, and how many other clients (other th
with Agisilaos (Paul) Cofinas) are receiving documents of this nature.

Furthermore, as we discussed in our conference call this morning w
and Jennifer Ghaly, we are reviewing your handling of customer ac
hereby suspended pending our completion of this review.  Your sus
you will be prohibited from communicating with customers except
they must contact the customer service department in Florida (by ca
in order to execute transactions in their accounts.  No other brokers
in your office may execute transactions on behalf of your customer:

Should you have any questions regarding your suspension, please c
hear from you regarding the enclosed documents.

Exhibit N

Law Office of

# DAVID GOUREVITCH, P.C.

228 EAST 45TH STREET
17TH FLOOR
NEW YORK, NY 10017

212-355-1300
FAX 212-355-1531
DAVID@GOUREVITCHLAW.COM

May 17, 2007

# RECEIVED

**MAY 1 8 2007**

KISSEL PESCE HIRSCH & WILMER LLP

Answered                                FILE

**VIA Facsimile and Federal Express**
(914) 750-5922
Richard Kissel, Esq.
Kissel Pesce Hirsch & Wilmer, LLP
580 White Plains Road – 5th Floor
Tarrytown, New York  10591

Re:     *Cofinas, et al v. Sterling Financial Investment Group and Thomas*
        *Karidas,*
        NASD-DR No. 06-065218
        Insured:        Sterling Financial Investment Group
        Insurer:        Certain Underwriters at Lloyd's
                        Lexington Insurance Company
        Policy No.    FD0504362

Dear Mr. Kissel:

I represent Thomas Karidas, a former registered representative of Sterling Financial
Investment Group ("Sterling Financial") for which Certain Underwriters of Lloyd's and
Lexington Insurance Company (collectively the "Insurance Carriers") provided coverage.  This
is to notify the Insurance Carriers of recent developments arising out of customers complaints
and demands for financial relief submitted to Sterling Financial in or about November 2005.  On
December 7, 2006, the customers filed the above-reference Statement of Claim (which is
attached for your convenience) in an arbitration brought before NASD-Dispute Resolution
against Sterling Financial and Mr. Karidas.   The complaints and Statement of Claim constitute
Claims as that term "Claim" is defined in ¶2(c) (1) (2), respectively, of the Policy.  Sterling
Financial Investment Group and Mr. Karidas are insureds as the term "Insured" is defined in ¶
2(f)(3).  It is further my understanding that the Insurance Carriers received notice pursuant to ¶ 7
of the Policy regarding the Claim in or about November 2005.

DAVID GOUREVITCH, P.C.

This letter serves as a request for coverage and for defense costs under the policy.

Very truly yours,

David U. Gourevitch

Cc: Thomas Karidas

Exhibit O



KISSEL PESCE HIRSCH & WILMER

A Limited Liability Partnership

580 White Plains Rd - 5th Floor
Tarrytown, New York 10591
Main Tel: 914.750.5933
Facsimile: 914.750.5922

Direct Dial: 914.733.7770
E-Mail: jhirsch@kphwlaw.com

June 8, 2007

**CONFIDENTIAL**

**VIA FACSIMILE AND CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Mr. Thomas Karidas, care of
David Gourevitch
Law Office of David Gourevitch, P.C.
150 East 58th Street, 34th Floor
New York, NY 10155

Re:     Securities Broker/Dealer Professional Liability Insurance
        Named Assured:    Sterling Financial Investment Group, Inc.
        Policy ref.:      FD0504362
        Policy period:    May 24, 2005-2006
        Policy limits:    $1 million, $2 million in the aggregate (includes
                          costs of defense), excess of a $100,000 retention
                          (includes costs of defense)
        Subject:          *Cofinas v. Sterling Financial Investment Group,*
                          *Inc. and Thomas Karidas*
        Claimants:        Agisilaos Cofinas; Fordhill Services Ltd.; Global
                          Ocean Int'l Investments, Ltd.; Ioannis and Sofia
                          Allagiannis; Fernando Paulo Canotilho; Athanassia
                          Vlahaki and Nikolaidis Lazaros.
        Our file no.:     40117.00090

Dear Mr. Gourevitch:

    As you know, we represent the Underwriters that issued the referenced policy to Sterling Financial Investment Group, Inc. ("Sterling"). Further to our telephone conversation on May 22, 2007 and my e-mail of May 25, 2007, this will acknowledge receipt of your letter of May 17, 2007 seeking coverage for your client, Thomas Karidas, under the subject policy. Since all communications on behalf of Mr. Karidas have come from your office, we presume that you are authorized to accept insurance-related correspondence on his behalf. If this is incorrect, or if your authority to receive such communications changes, please let us know immediately.

    Your letter of May 17th suggests that Underwriters have a duty to defend Mr. Karidas in connection with an NASD arbitration proceeding which has been instituted against him and

KISSEL PESCE HIRSCH & WILMER LLP

Mr. Gourevitch
June 8, 2007
Page 2

Sterling by the referenced claimants[1]. However, based on our review of the claimants' Statement of Claim ("SOC"), the terms and conditions of the referenced policy, and other materials that we may refer to below, our clients have authorized us to advise you that they are not obligated to provide a defense (or any other coverage) to Mr. Karidas under the policy. The reasons for this determination are set forth below.

**Background.** Claimants Agisilaos Cofinas, Fordhill Services Ltd., Global Ocean Int'l Investments, Ltd., Ioannis and Sofia Allagiannis, Fernando Paulo Canotilho, Athanassia Vlahaki and Nikolaidis Lazaros (collectively, "claimants"), filed a SOC with the NASD on or about December 7, 2006, claiming that they opened various accounts at Sterling's Athens, Greece branch through Mr. Karidas. They claim that all of their accounts were non-discretionary accounts. In or about the summer of 2005, claimants allegedly discovered that Mr. Karidas was trading in the account without their prior consent or authorization. Claimants further alleged that Mr. Karidas admitted, in a written statement, that he made such unauthorized trades. Claimants apparently suffered over $5 million in losses as a result of Mr. Karidas' allegedly, but perhaps admittedly, unauthorized trading.

Claimants' assert the following four causes of action in their SOC: (1) Negligence/Negligent Supervision, Training, Hiring (against Sterling only); (2) Breach of Contract (against Sterling only); (3) Conversion (**against Karidas**, directly, and against Sterling, vicariously); and (4) Breach of Fiduciary Duty (**against Karidas** and Sterling directly, and against Sterling, vicariously). They seek an arbitration award that "fully compensates them for all of their losses," interest, costs, and such further relief that the arbitration panel deems equitable and just. The NASD Dispute Resolution office that will hear the claim is New York, but we understand that claimants' counsel have made efforts to change the venue to Philadelphia.

Your May 17th letter states that the nature of claimants' dispute in the December 7, 2006 SOC first arose from "complaints and demands for financial relief" that claimants submitted to Sterling in November 2005. You suggest that because Sterling notified us of that matter during the policy period, there should be coverage for claimants' SOC. We have, indeed, addressed these types of issues with Sterling in the past, and we assume you do not have the benefit of that prior history. We are happy to provide you here with the relevant exchanges in order to provide the context for a significant part of our clients' coverage position. However, your assertion appears to ignore some of the pertinent history of Sterling's notification of those November 2005

It seems that Sterling was first made aware that certain foreign customers of theirs (including, apparently, clients of Mr. Karidas) were asserting "complaints and demands for financial relief" in *November, 2005*. It was not until the subject policy was expiring in May 2006 that Sterling, through counsel, notified us of a letter its CEO received from claimants' counsel, Bochetto & Lentz. That letter is dated November 22, 2005.

That letter stated that Mr. Karidas, as an agent of Sterling, caused claimants to suffer substantial monetary losses as a result of unauthorized trading in their accounts. Such losses

---

[1] You advised that Mr. Karidas' response to the SOC must be filed with the NASD by June 12, 2007.

KISSEL PESCE HIRSCH & WILMER LLP

Mr. Gourevitch
June 8, 2007
Page 3

allegedly amounted to more than $5.2 million. Bochetto & Lentz asked Sterling to produce various documents and information "in a good faith attempt to come to a resolution of this dispute short of formal legal action, which would likely involve reporting these claims to the NASAD [sic] and other government agencies." Bochetto & Lentz also produced what appears to be a written statement from Mr. Karidas (translated from Greek to English) acknowledging that he is liable to claimants for "the irregular and unauthorized management of the funds by him."[2]

After reviewing these facts for less than thirty (30) days, we advised Sterling in June 2006 that their notification of the November 22, 2005 letter violated a condition precedent to coverage because it was untimely and in breach of the policy's reporting requirements. That coverage position also applies to Mr. Karidas; he is, for the first time in May 2007, providing the insurers with notice of his involvement in the November 2005 customer complaints, a claim that was being made against him and Sterling eighteen (18) months earlier.

**Policy & Coverage Position.** In the policy, assuming compliance with all conditions to coverage, including those discussed in this letter, the insurers agree to pay "Loss" arising from a "Claim" first made during the Policy Period or the Discovery Period (if applicable) and reported in writing to the Insurers pursuant to the terms of this policy. *See Preface and Section 1. Insuring Agreements A. and B.* "Claim" is defined in the policy to include a "written demand for monetary relief" and an "arbitration proceeding for monetary or non-monetary relief which is commenced by: ...(ii) receipt or filing of an arbitration demand or statement of claim." *See Section 2. Definitions.*

In claiming coverage under the policy, Sterling (and your client) are obligated to comply with the conditions set forth at Section 7. The relevant part of Section 7 provides that:

> (a) The Broker/Dealer or the Insured[3], shall as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of a Claim made against an Insured as soon as practicable during the Policy Period or during the Discovery Period (if applicable) as long as such Claim(s) is reported no later than 30 days after the date such Claim was first made against an Insured.
>
> (b) If written notice of a Claim has been given to the Insurer pursuant to Clause 7 [sic] (a) above, then a Claim which is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to the facts alleged in the Claim for which such notice has been given, or

---

[2] This written statement may raise significant coverage issues apart from those addressed in this letter and we reserve the right to investigate what implications it may have on any coverage that might be available under the policy.
[3] You are claiming that Mr. Karidas is seeking insured status under the referenced policy as a former registered representative of Sterling.

KISSEL PESCE HIRSCH & WILMER LLP

Mr. Gourevitch
June 8, 2007
Page 4

alleging any Wrongful Act which it the same or related to any Wrongful Act alleged in the Claim of which such notice has been given, shall be considered made at the time such notice was given.

Mr. Karidas did not timely tender the November 2005 complaints – of which he was indisputably aware - for coverage in accordance with Section 7.

Alternatively, we assume you would want us to determine whether coverage is available for the Statement of Claim dated December 7, 2006. On its own (if it were not for the earlier complaint in November 2005), the SOC is not a Claim that was "made" during the policy period. It was filed well after the policy's expiry date and therefore would not be afforded coverage under the referenced claims-made and reported policy.

What is the effect of tying the December 7, 2006 SOC to the previously made claim, i.e. the complaints set forth in the November, 2005 attorney letter? If we agree that the 2006 SOC arises from an earlier Claim that Sterling reported to us prior to the expiry of the policy, you could say that it (the SOC) should be deemed a Claim "made" during the policy period.

However, as set forth above, under Section 7 any subsequent, related Claim must arise from an earlier Claim *that was reported pursuant to the reporting conditions of the policy.* Neither Sterling nor Mr. Karidas reported the Bochetto & Lentz November 22, 2005 letter in accordance with the notice condition set forth at Section 7. The timely notice provision was breached. As such, claimants' subsequent, related Claim cannot be deemed "made" during the policy period vis-à-vis Section 7(b).

In addition, even looking at the tender of the SOC on its own, Mr. Karidas breached the condition requiring timely notice because it seems that he waited for months to report the SOC to the insurer.

Based on the foregoing, no coverage is available to Mr. Karidas (or Sterling). If you or Mr. Karidas believe that we have not evaluated all relevant documents and information that might have a bearing on this coverage position, please bring this to our attention immediately.

*        *        *

We previously suggested that Mr. Karidas place any other insurance providers on notice of this matter. We reviewed your letter of May 29, 2007 and its attachments and note that you have tendered claimants' December 7, 2006 SOC for coverage under Sterling's prior policy, bearing reference SF403040X. We have not received formal notice of your tender apart from learning of it through your May 29th letter. However, please be aware that the language in Sterling's policy, bearing reference FD0504362 and the policy bearing reference SF403040X are virtually identical and that policy SF403040X also limits coverage to Claims that are made during the policy period and reported in accordance with its notice conditions. We reserve the right to perform an independent coverage investigation under policy SF403040X at the direction of our client. In the meantime, all of their rights remain fully reserved.

KISSEL PESCE HIRSCH & WILMER LLP

Mr. Gourevitch
June 8, 2007
Page 5


     Please be aware that our investigation of coverage on Underwriters' behalf is subject to a full and complete reservation of their rights.  We note that by referring to certain terms, conditions or other provisions of the policy, Underwriters do not intend to waive or limit any of their rights.  To the contrary, we expressly reserve all of Underwriters' rights under applicable law and under the policy, including but not limited to, the right to raise all policy terms, conditions and exclusions as defenses to coverage where appropriate.

                                    Very truly yours,

                                      Jeffrey Hirsch

cc:    Panagiota Ainalakis-Barone

Exhibit P

Law Office of
# DAVID GOUREVITCH, P.C.

150 EAST 58TH STREET
34TH FLOOR
NEW YORK, NY 10155

212-355-1300
FAX 212-355-1531
DAVID@GOUREVITCHLAW.COM

June 18, 2007

**VIA ELECTRONIC MAIL AND FEDERAL EXPRESS**
jhirsch@kphwlaw.com

Jeffrey Hirsch, Esq.
Kissel Pesce Hirsch & Wilmer, LLP
580 White Plains Road – 5th Floor
Tarrytown, New York  10591

Re:     Securities Broker/Dealer Professional Liability Insurance
Named Assured:     Sterling Financial Investment Group, Inc.
Policy ref.:     FD0504362 & SF403040X
Policy period:     May 24, 2005-2006
Policy limits:     $1 million, $2 million in the aggregate (includes costs of defense), excess of a $100,000 retention (includes costs of defense)
Subject:     *Cofinas, et al v. Sterling Financial Investment Group and Thomas Karidas*
Claimants:     Agisilaos Cofinas; Fordhill Services Ltd.; Global Ocean Int'l Investments, Ltd.; Ioannis and Sofia Allagiannis; Fernando Paulo Canotilho; Athanassia Vlahaki and  Nikolaidis Lazaros.
Your File No.  40117.00090

Dear Mr. Hirsch:

In your June 8, 2007 letter, you indicated that Sterling Financial maintained a second insurance policy with Lloyds of London, that the second policy bore SF403040X as a reference number and that the language in the second policy was virtually identical to that in the first.  As I understand your position, you have treated our notice regarding the first policy as notice regarding the second, because the two are virtually identical in language.  Please advise if you request further notice.  I would be grateful if you could

Jeffrey Hirsch, Esq.
Counsel for Insurers
June 18, 2007
Page 2 of 2

provide me full and complete copies of both policies, and I would welcome an
opportunity to discuss coverage at a mutually convenient time.

Sincerely,

David Gourevitch

Cc:    Tom Karidis

Exhibit Q



KISSEL PESCE HIRSCH & WILMER

A Limited Liability Partnership

580 White Plains Rd - 5th Floor
Tarrytown, New York 10591
Main Tel: 914.750.5933
Facsimile: 914.750.5922

Direct Dial: 914.733.7770
E-Mail: jhirsch@kphwlaw.com

**CONFIDENTIAL**

July 18, 2007

**VIA FACSIMILE & CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Mr. Thomas Karidas, care of
David Gourevitch
Law Office of David Gourevitch, P.C.
150 East 58th Street, 34th Floor
New York, NY 10155

|  |  |  |
|---|---|---|
| Re: | Securities Broker/Dealer Professional Liability Insurance | |
| | Named Assured: | Sterling Financial Investment Group, Inc. |
| | Policy ref.: | SF403040X |
| | Policy period: | May 9, 2004 – May 24, 2005 |
| | Policy limits: | $1 million, $2 million in the aggregate (includes costs of defense), excess of a $100,000 retention (includes costs of defense) |
| | Subject: | *Cofinas v. Sterling Financial Investment Group, Inc. and Thomas Karidas* |
| | Claimants: | Agisilaos Cofinas; Fordhill Services Ltd.; Global Ocean Int'l Investments, Ltd.; Ioannis and Sofia Allagiannis; Fernando Paulo Canotilho; Athanassia Vlahaki and Nikolaidis Lazaros. |
| | Our file no.: | 40117.00090 |

Dear Mr. Gourevitch:

As you know, we represent the Underwriters that issued the referenced "claims-made" policy to Sterling Financial Investment Group, Inc. ("Sterling"). Further to our e-mail of June 28, 2007 and subsequent telephone conversations, this will acknowledge receipt of your letter of June 18, 2007 requesting that we also treat your notification of the referenced Cofinas matter under Sterling's May 24, 2005-2006 policy as notice under Sterling's policy providing coverage for the period of May 9, 2004-May 24, 2005. The following is intended to convey our clients' coverage position for the Cofinas matter under the 2004-2005 claims-made policy.

Our clients have authorized us to advise you that they are not obligated to provide a defense (or any other coverage) to Mr. Karidas under the referenced policy because – unless you have not tendered all pertinent documentation – our records reflect that there was no claim made by the Cofinas during that policy period. This coverage determination is explained further below.

NEW YORK          LONDON          NEW JERSEY

KISSEL PESCE HIRSCH & WILMER LLP

Mr. Gourevitch, Esq.
July 18, 2007
Page 2

**The Documents Tendered for a Coverage Determination Under the 2004-2005 claims-made policy.** Claimants Agisilaos Cofinas, Fordhill Services Ltd., Global Ocean Int'l Investments, Ltd., Ioannis and Sofia Allagiannis, Fernando Paulo Canotilho, Athanassia Vlahaki and Nikolaidis Lazaros (collectively, "claimants"), filed a Statement of Claim ("SOC") with the NASD on or about December 7, 2006, claiming that they opened various accounts at Sterling's Athens, Greece branch through Mr. Karidas in his capacity as a registered representative of Sterling. They claim that all of their accounts were non-discretionary accounts. In or about the summer of 2005, claimants allegedly discovered that Mr. Karidas was trading in the account without their prior consent or authorization. Claimants further allege that Mr. Karidas admitted, in a written statement, that he made such unauthorized trades. Claimants apparently suffered over $5 million in losses as a result of Mr. Karidas' allegedly, but perhaps admittedly, unauthorized trading.

Claimants assert the following four causes of action in their SOC: (1) Negligence/Negligent Supervision, Training, Hiring (against Sterling only); (2) Breach of Contract (against Sterling only); (3) Conversion (**against Karidas**, directly, and against Sterling, vicariously); and (4) Breach of Fiduciary Duty (**against Karidas** and Sterling directly, and against Sterling, vicariously). They seek an arbitration award that "fully compensates them for all of their losses," interest, costs, and such further relief that the arbitration panel deems equitable and just. We understand that the hearing will be held in New York at the NASD Dispute Resolution office's directive.

In your May 17, 2007 letter, you state that the nature of claimants' dispute in the December 7, 2006 SOC first arose from "complaints and demands for financial relief" that claimants submitted to Sterling's CEO in November 2005 in the form of a letter from claimants' counsel, Bochetto & Lentz.[1] Even if that letter was considered the tendered Claim, it was "made" well after the 2004-2005 claims-made policy expired.

**Policy & Coverage Position.** In the policy, assuming compliance with all conditions to coverage, including those discussed in this letter, the insurers agree to pay "Loss" arising from a

---

[1] It seems that Sterling was first made aware that certain foreign customers of theirs (including, apparently, clients of Mr. Karidas) were asserting "complaints and demands for financial relief" in November, 2005. However, it was not until the policy for the period of May 24, 2005-2006 was expiring in May 2006 that Sterling, through counsel, notified us of a letter its CEO received from claimants' counsel, Bochetto & Lentz. That letter is dated November 22, 2005.

In our letter, dated June 8, 2007, we advised you that our clients are not obligated to provide a defense (or any other coverage) to your client, Thomas Karidas, under Sterling's Securities Broker/Dealer Professional Liability Insurance for the policy period of May 24, 2005-2006, bearing reference FD0504362.

In that letter, we also noted that you tendered claimants' December 7, 2006 SOC for coverage under the subject policy, which bears reference SF403040X. We further advised you that we did not receive formal notice of your tender apart from learning of it through your May 29, 2007 letter. Furthermore, we reserved the right to perform an independent coverage investigation under the subject policy at the direction of our client.

KISSEL PESCE HIRSCH & WILMER LLP

Mr. Gourevitch, Esq.
July 18, 2007
Page 3

"Claim" first made during the Policy Period[2] or the Discovery Period (if applicable)[3] and reported in writing to the Insurers pursuant to the terms of this policy. *See Preface and Section 1. Insuring Agreements A. and B.* "Claim" is defined in the policy to include a "written demand for monetary relief" and an "arbitration proceeding for monetary or non-monetary relief which is commenced by: ...(ii) receipt or filing of an arbitration demand or statement of claim." *See Section 2. Definitions.*

We have not received any evidence of a "Claim" being made by the Cofinas claimants during the 2004-2005 policy period. If we assume for the purpose of this discussion that Bochetto & Lentz's November 2005 letter and the Cofinas' December 7, 2006 SOC constitute "Claims", neither triggers the policy as they were not "Claims" made during the May 9, 2004-May 24, 2005 policy period. As such, no coverage is available to Mr. Karidas (or Sterling) for the Cofinas matter under the referenced policy.

If you or Mr. Karidas believe that we have not evaluated all relevant documents and information that might have a bearing on this coverage position, please bring them to our attention immediately.

Please be aware that our investigation of coverage on Underwriters' behalf is subject to a full and complete reservation of their rights. We note that by referring to certain terms, conditions or other provisions of the policy, Underwriters do not intend to waive or limit any of their rights. To the contrary, we expressly reserve all of Underwriters' rights under applicable law and under the policy, including but not limited to, the right to raise all policy terms, conditions and exclusions as defenses to coverage where appropriate.

Very truly yours,

Jeffrey Hirsch

cc:     Panagiota Ainalakis-Barone, Esq.

---

[2] Policy Period is defined by the policy as "the period from the inception date of this policy as shown in Item 2 of the Declarations to the earlier of the expiration date shown in Item 2 of the Declarations or the effective date of the cancellation of the policy." *See Section 2. Definitions.*
[3] The Discovery Period is not applicable.