# EXHIBIT A

# NYS Department of State

## Division of Corporations

## Entity Information

Selected Entity Name: STERLING FINANCIAL INVESTMENT GROUP, INC.

Selected Entity Status Information

**Current Entity Name:** STERLING FINANCIAL INVESTMENT GROUP, INC.
**Initial DOS Filing Date:** APRIL 27, 2001
**County:** NEW YORK
**Jurisdiction:** FLORIDA
**Entity Type:** FOREIGN BUSINESS CORPORATION
**Current Entity Status:** ACTIVE

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
C/O C T CORPORATION SYSTEM
111 EIGHTH AVENUE
NEW YORK, NEW YORK, 10011

**Registered Agent**

C T CORPORATION SYSTEM
111 EIGHTH AVENUE
NEW YORK, NEW YORK, 10011

NOTE: New York State does not issue organizational identification numbers.

Search Results    New Search

Division of Corporations, State Records and UCC Home Page     NYS Department of State Home Page

# EXHIBIT B

# South Florida CEO
### THE BUSINESS MAGAZINE OF MIAMI-DADE, BROWARD AND THE PALM BEACHES

Search [ ] **Go**   **Advanced Search**    :: HOME   :: CURRENT ISSUE   :: ADVERTISE/RATES   :: SUBSCRIBE   :: ABOUT US

March 2006 :: Inside This Issue :: Strategies :: Middle Men

- HOME
- **INSIDE THIS ISSUE**
- Cover Story
- Feature Articles
- Up Front
- **Strategies**
- South Florida Life
- ABOUT US
- ADVERTISE/RATES
- ARCHIVE
- CAREERS
- CONTACT US
- LINKS
- SUBSCRIBE

**COMING UP IN NEXT ISSUE**

**EXECUTIVES' GUIDE TO ART BASEL**
The November issue of South Florida CEO will include a feature-length Executives' Guide to Art Basel Miami Beach — the world-famous contemporary art fair that is a definitive draw for tourists and locals alike. The feature serves as a guide to the galleries, artists and exhibitions that will be a part of the show. Showcasing your brand in the hands of South Florida business leaders, the November South Florida CEO also will be viewed throughout the month as a reference guide to Art Basel by local and foreign executives and is a great opportunity to reach your target audience. **TRAVEL & TOURISM INDUSTRY** Travel & Tourism Industry Companies in South Florida's No. 1 industry have never been content to sit still. With

**STRATEGIES**

Print Version | Email To A Friend

## Middle Men

**Boca Raton-based vFinance Inc. continues to grow after carving a niche with start-up firms and their investors.**



*Web Draw: vFinance's Leonard Sokolow uses his Web site to draw in investment banking and brokerage clients.*

vFinance Inc.'s days as a small matchmaking Web site for financiers and venture capital-hungry entrepreneurs are over.

The Boca Raton-based, publicly traded company has steadily grown to more than $1 billion in assets since its founding in 1997, and into what CEO Leonard J. Sokolow calls a "full-service" financial firm, offering investment banking, brokerage, and stock and commodities trading to clients. In January, Sokolow made a move to strengthen the company's fixed income division and attract more Hispanic and Latin American investors by announcing it would acquire two assets of Boca Raton-based Sterling Financial Investment Group Inc.: Sterling Capital Growth Markets and Sterling Fixed Income Group.

With the addition of the Sterling assets, vFinance's fixed income division gains a unit that sells treasuries and government securities for a large number of United States-based financial institutions. The new division, to be called Sterling Capital Growth Markets, will focus on developing retail investment among high-net-worth US Hispanics and Latin Americans. Along with individual investors, vFinance is targeting corporations whose products address the Hispanic market in the United States, and companies whose shareholders are Hispanic, Sokolow says.

"It was an important part of the deal, just because of the institutional nature of the business," he says of Sterling's fixed-income division. "The types of government securities they trade in and their institutional client base was very attractive to us."

As part of the deal, Sterling CEO and founder Charles Patrick Garcia will join vFinance as president of Sterling Capital Growth Markets. Garcia is a prominent Republican Party fund-raiser who Hispanic Business magazine named to its list of the "100 Most Influential Hispanics."

"He's going to be focusing on business development and bringing his contact base to bear, to hopefully generate business opportunities targeting the Hispanic marketplace," Sokolow says.

The acquisition is vFinance's most significant so far. Sterling holds more than $420 million in brokerage assets and recorded almost $24 million in revenues in 2002, according to the South Florida Sun-Sentinel. That same year, Inc. magazine rated Sterling the No. 8 fastest growing private company in the US. The assets vFinance acquired generated approximately $10 million in revenue during 2005, according to Sokolow.

As with most of the acquisitions vFinance has made over the years, the company will issue 17.5 million new shares of common stock to finance the deal; a closing date has not been set. The company already has 40 million shares of its stock outstanding, trading around 19 cents a share as of mid-February. Those are numbers that raise a red flag for some analysts.

"They have an awful lot of shares [outstanding]," says Philip Remek, a senior


**Get All the Latest News In Business**
SUBSCRIBE NOW!


**LEGAL GUIDE**
Top Lawyers

**TO ADVERTISE OR SUBSCRIBE CALL**
(305) 379-1118


**WANT MORE INFORMATION?**
Stay in touch for the latest news and announcements

competition from other destinations around the world stronger than ever, what does the future hold for the hotels, restaurants, retailers and other hospitality industry companies in the region?

equities analyst with Coral Gables-based investment bank Guzman and Co. "It's a very low priced stock and they're issuing that stock for acquisitions. Those people, after whatever period, will want to sell their stock." He says the risk is that vFinance's stock price will drop further if those shares flood the market.

The company has had consistent growth, with revenues rising to $19.3 million through the first nine months of 2005, up from $18.3 million during the 2004 period. Although it has not yet filed 2005 annual revenue numbers, in July 2005 vFinance cracked SouthFloridaCEO's South Florida 500 list as one of the Top 100 Public Companies in the region, posting $26.3 million in revenue for 2004. That was up slightly from $24.5 million in 2003.

**EDITORIAL CALENDAR** Please review a copy of our Editorial Calendar for upcoming articles that coincide with your advertising. **Download calendar here.**

Profitability, however, has been more elusive. vFinance had a net loss of $356,735 through the three quarters ending Sept. 30, 2005, down from a net income of $1.9 million during the same period in 2004.

Stanley Wunderlich, CEO of New York-based Consulting for Strategic Growth No. 1 Ltd., an investor relations firm that has done business with vFinance, says issuing more stock to make additional acquisitions is a good strategy for vFinance and will ultimately lead to sustained profitability.

"If they have to put up some stock to make this happen, they will make money," Wunderlich says. "If they make money, eventually the stock will go up. When you have companies that are profitable, they're going to get recognized."

Wunderlich adds that a low stock price may make vFinance itself an attractive acquisition target. "If the stock is trading at 10 or 15 cents, in theory, it may become a stock that's in play," he says. "Someone may want to buy vFinance."

When asked about that scenario, Sokolow would only say, "That's a possibility. We don't know. History has proven that that could occur."

Right now, around 70 percent of vFinance's revenues come from commissions generated by its 150-broker retail brokerage division. That division sells securities and commodities to individual investors, and brought in $11.4 million in commissions through Sept. 2005, compared to $10.7 million during the same period in 2004, according to vFinance's quarterly filings. Although the retail brokerage generates most of vFinance's revenues, Sokolow says that "traditionally in the financial services business, for the smaller firms, the retail probably has the tightest margin. Investment banking and trading tend to have the better margins."

Many companies and investors are initially drawn to vFinance via its Web site, vFinance.com, which links investors with entrepreneurs in need of venture capital. Sokolow and his partners bought vFinance.com in 1997, re-branding a trust company they already owned with the vFinance name. Although vFinance does not itself lend money to growth companies and donates all fees from the Web site to a non-profit which it runs, the company uses the site as a marketing tool to reel in financiers interested in investing in start-ups and offer them its other services.

Sokolow says the site gets 8 million hits a month, and vFinance tracks it all: With that data, the company is able to prepare reports on the types of businesses entrepreneurs are interested in, and can in turn steer client investors toward industries that it considers promising. "We [are] data mining the kind of business you have, what stage are you at, how many employees, what are your revenues like, etc.," Sokolow says.

Entrepreneurs who link with investors sometimes return as investors themselves, he adds. Often those companies that find venture capital through vFinance.com turn to the investment banking division when they have later-stage capital needs. It is the focus on and knowledge of smaller companies that sets vFinance apart from its investment banking and institutional trading competitors, Sokolow says. He feels that as a mid-sized financial firm, vFinance has the flexibility to offer investments in major, established public companies as well as in smaller start-ups.

"We may have a client that invests in Microsoft, but we also have other investments that they can see if they want," Sokolow says. "If they're accredited, it could be a private placement. If we're doing an IPO [initial public offering] for a small growth company, our retail brokers can sell that."

Guzman and Co.'s Remek says firms such as vFinance are offering services that bigger brokerages such as Merrill Lynch & Co. Inc. and Citigroup SmithBarney do not bother with as they can underwrite more lucrative investments. But, he adds, because smaller companies are riskier to invest in, vFinance has to be particularly sharp about the deals it recommends.

"It's really a question of the quality of the deals" that vFinance makes, Remek says. "This company is not well known. Can they draw attention of the highest quality potential [stock] issuers with their big national competitors?" – Jaime Hernandez

**Back to Top**

| Home | About Us | Current Issue Table of Currents | Cover Story | Feature Articles | Up Front | Strategies |
| South Florida Life | Archives Advertise/Rates | Editorial Calendar | Careers | Subscribe | Links | Contact Us | Search |

# EXHIBIT C

# Online Filing Demand For Arbitration/Mediation Form

**This concludes your filing.**
**Thank you for submitting your claim to the AAA.**
**Your claim confirmation number is: 002-TOZ-GFV**

To institute proceedings, please send a copy of this form and the Arbitration Agreement to the opposing party.

**Your dispute has been filed in accordance with:** Commercial Dispute Resolution Procedures

**This Claim has Been Filed For:** Arbitration

**Filing Fee:** $2,750.00

## Additional Claim Information

**Claim Amount:** $180,000.00

**Claim Description:** To enforce a policyholder's obligation to pay the self-insured retention in connection with claims submitted for coverage under it's insurance policies, and other relief. **see uploaded document**

**Arbitration Clause:** see uploaded documents

**Hearing Locale Requested:** New York, NY

**Contract Date:** 05/09/2004

**Number of Neutrals:** 3

| Claimant | Representatives |
|---|---|

Insurers subscribing to policies FD0504362 & SF403040X

**Type of Business:** Insurer

| | |
|---|---|
| **Name:** | **Name:** Jeffrey Hirsch |
| **Company Name:** Insurers subscribing to policies FD0504362 & SF403040X | **Company Name:** Kissel & Pesce LLP |
| **Address:** C/O Kissel & Pesce 555 White Plains Road Tarrytown, NY 10591 | **Address:** 555 White Plains Road Tarrytown, NY 10591 |
| **Tel#:** 914 750-5933 | **Tel#:** 914 750-5933 |
| **Fax#:** 914 750-5922 | **Fax#:** 914 750-5922 |
| **Email:** jhirsch@kplaw.net | **Email:** jhirsch@kplaw.net |
| **Include in Caption:** Company | |

| Respondent # 1 | Representatives |
|---|---|

Charles Garcia-Sterling Financial Investment Group, Inc.

**Type of Business:** Insured

| | |
|---|---|
| **Name:** Charles Garcia | **Name:** Peter Tictin |
| **Company Name:** Sterling Financial Investment Group, Inc. | **Company Name:** Tictin & Rodriguez, P.A. |
| **Address:** 1200 N. Federal Highway Suite 400 Boca Raton, FL 33432 | **Address:** P.O. Box 811554 Boca Raton, FL 33481 - 1554 |
| **Tel#:** 561 886-2256 | **Tel#:** 561 392-6933 |
| **Fax#:** 561 886-2333 | **Fax#:** 561 392-5158 |
| **Email:** | **Email:** pt@trlawoffice.com |
| **Include in Caption:** Both | |

To institute proceedings, please send a copy of this form and the Arbitration Agreement to the opposing party.
Your demand/submission for arbitration/mediation was received by the American Arbitration Association on 09/28/2006 at 18:09 Eastern (US) time.

THE NATURE OF THE DISPUTE (continued)

This dispute arises from Sterling Financial Investment Group, Inc.'s and Charles Garcia's (the "Respondents") breach of insurance policies that were issued by the Insurers subscribing to policies SF403040X and FD0504362 ("Claimants" in this proceeding). The Arbitration clause in the policies is contained at Section 16 (the policy materials are attached to this Demand).

The Claimants provided the Respondents with claims-made professional liability insurance for periods effective from (1) May 9, 2004 to May 24, 2005, and (2) May 24, 2005 to May 24, 2006, respectively. The policies that the Respondents purchased set forth what the limits of liability are for covered Claims and state in clear and conspicuous terms that a $100,000 self-insured retention ("Retention Amount") applies to each Claim. In purchasing the policies, the Respondents agreed that the Insurers are "only liable for amounts ... excess of the applicable Retention Amount" and that "such Retention Amount [is] **to be borne by the Insureds**...(emphasis added)." The policies define the term "Loss" to include Defense Costs.[1]

Sterling tendered one claim to the insurers under policy SF403040X and three claims to the insurers under policy FD0504362 that are the subject of this dispute. With Sterling's consent, the Claimants assigned the law firm of Marshall, Dennehey, Warner, Coleman & Goggin ("Marshall Dennehey") as defense counsel for the Insureds in connection with the Claim tendered under policy SF403040X and two of the Claims tendered under policy FD0504362. Sterling also consented to Claimants' assignment of the law firm of Sutherland Asbill & Brennan as defense counsel for the third Claim tendered under policy FD0504362. The Claimants notified Sterling and defense counsel that Sterling must satisfy the Retention Amount before the Claimants had any obligations to pay under the insurance policies. The Claimants accepted coverage for each matter subject to the terms, conditions and exclusions of the policies and various reservations of rights under the policies and at law.

Despite the clear and unambiguous terms of the policies, the Respondents have, without providing any credible reason or excuse, failed and refused to satisfy their obligation to pay Defense Costs and other amounts within the Retention Amount in connection with any of the Claims that were submitted for coverage.

Claimants have adjusted the three Claims being handled by Marshall Dennehey and, with Respondents' knowledge, defense counsel has engaged in good faith settlement discussions with the claimants in each of the three Claims they are defending. The Claimants have promptly advised the Respondents and its counsel that "Settlement Opportunities" (a defined term in the policy) had become available in each Claim. The "Settlement Opportunities" in each matter, when added to the Defense Costs that Marshall Dennehey had incurred, total less than the Retention Amount that would apply for each Claim. Marshall Dennehey advised the Respondents that the claimants' negotiated demands in each matter were reasonable.

---

[1] The polices define "Defense Costs" as "reasonable and necessary fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of a Claim against an Insured(s), but excluding salaries of any Insured." *Section 2.(d) "Defense Costs."*

THE NATURE OF THE DISPUTE (continued)

Section 1.C.2. of each of the insurance policies provides, in pertinent part, that the Respondents must consent to a "Settlement Opportunity"[2] within thirty (30) days. If the Respondents do not consent to the "Settlement Opportunity" then the Claimants' "liability for the Claim shall not exceed the amount for which [they] could have settled the Claim plus Defense Costs incurred up to the date of the refusal to settle." Moreover, in the event the Respondents do not timely consent to the "Settlement Opportunity," the Claimants have the right to withdraw coverage for the Claim, and no longer have any responsibility to defend and/or indemnify the Respondents.

Here, the parties could have settled each Claim for an amount, including Defense Costs, below the Retention Amount. The Claimants provided valid notice to the Respondents under Section 1.C.2. more than thirty days ago. Upon information and belief, the Respondents have not resolved any of the three Claims in compliance with Section 1.C.2. Consequently, the Claimants have issued correspondence to the Respondents and Marshall Dennehey advising that they were withdrawing coverage for each of the Claims.

Claimants request that the Panel in this Arbitration render an Award in their favor:

(1)     Declaring that it is the Respondents' (and any other party or entity claiming "Insured" status under the policies) obligation under the policies to satisfy the full $100,000 per Claim Retention Amount before the Claimants are required to pay under the policies;

(2)     Requiring the Respondents (and any other party or entity claiming "Insured" status under the policies) to indemnify and reimburse the Claimants for any amounts they pay or have paid with respect to any of the Claims, including any loss payments and "Defense Costs," that are within the per Claim Retention Amount;

(3)     Declaring that the Claimants properly invoked Section 1.C.2. in each policy, and that as a result, the Claimants are not required to defend and/or indemnify the Respondents (and any other party or entity claiming "Insured" status under the policies) with respect to Claims; and

(4)     For such other relief as the Panel deems just and appropriate.

Respectfully submitted,

Jeffrey Hirsch
Kissel & Pesce
A Member of the Firm
Counsel for Claimants
September 28, 2006

---

[2] According to each policy, a "Settlement Opportunity" exists where the "Insurer recommends a settlement that does not exceed the policy's applicable Limit of Liability and which is acceptable to the claimant." *Section 1.C.2.*

# EXHIBIT D

KPHW
A Limited Liability Partnership

580 White Plains Rd – 5th Floor
Tarrytown, New York 10591
Main Tel: 914.750.5933
Facsimile: 914.750.5922

Direct Dial: 914.733.7770
E-Mail: jhirsch@kphwlaw.com

March 26, 2007

**CONFIDENTIAL**

**VIA E-MAIL ONLY**

Miroslava Schierholz
International Centre for Dispute Resolution
The International Division of the American Arbitration Association
1633 Broadway, 10th Fl.
New York, NY 10019

> Re:    In the matter of *Brit Syndicates 2987 (the Lead Subscriber on policy FD0504362)(50% participation) and Lexington Insurance Company (50% participation) and Brit Syndicates 2987 (the Lead subscriber on policy SF403040X)(30% participation); Lexington Insurance Company (30% participation); ACE Syndicate 2488 (20% participation); and Wurtt (20% participation)*
> *vs. Charles Garcia and Sterling Financial Investment Group, Inc.*
> (Case no. 50 174 V 00416 06)

Dear Ms. Schierholz:

This will serve as Claimants' Amended Demand for Arbitration. As we stated in our Demand for Arbitration, this dispute arises from Sterling Financial Investment Group, Inc.'s and Charles Garcia's (the "Respondents") breach of insurance policies that were issued by the Insurers subscribing to policies SF403040X and FD0504362 ("Claimants" in this proceeding). The Arbitration clause in the policies is contained at Section 16 (the policy materials are attached to the original Demand for Arbitration).

The Claimants provided the Respondents with claims-made professional liability insurance for periods effective from (1) May 9, 2004 to May 24, 2005, and (2) May 24, 2005 to May 24, 2006, respectively. The policies that the Respondents purchased set forth what the limits of liability are for covered Claims and state in clear and conspicuous terms that a $100,000 self-insured retention ("Retention Amount") applies to each Claim. In purchasing the policies, the Respondents agreed that the Insurers are "only liable for amounts ... excess of the applicable Retention Amount" and that "such Retention Amount [is] **to be borne by the Insureds**...(emphasis added)." The policies define the term "Loss" to include Defense Costs.[1]

---

[1] The polices define "Defense Costs" as "reasonable and necessary fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to

KISSEL PESCE HIRSCH & WILMER LLP

Ms. Schierholz
March 26, 2007
Page 2

Sterling tendered one claim to the insurers under policy SF403040X (the "Wheeler" claim) and three claims to the insurers under policy FD0504362 (the "Donnino," "Camilleri," and "Frank" claims) that are the subject of this dispute. With Sterling's consent, the Claimants assigned the law firm of Marshall, Dennehey, Warner, Coleman & Goggin as defense counsel for the Insureds in connection with the Wheeler, Donnino and Camilleri claims, and the law firm of Sutherland Asbill & Brennan in connection with the Frank claim. The Claimants notified Sterling and defense counsel that Sterling must satisfy the Retention Amount before the Claimants had any obligations to pay under the insurance policies, and the attached correspondence appointing defense counsel re-affirm Sterling's retention obligation. *See Exhibits A-D.* The Claimants accepted coverage for each matter subject to the terms, conditions and exclusions of the policies and various reservations of rights under the policies and at law.

Despite the clear and unambiguous terms of the policies, the Respondents have, without providing any credible reason or excuse, failed and refused to satisfy their obligation to pay Defense Costs and other amounts within the Retention Amount in connection with any of the Claims that were submitted for coverage.

Respondents' refusal to acknowledge (and pay) the Retention amount is contradicted by its conduct in connection with other claims tendered for coverage. For example, Respondents never objected or questioned their obligations in the past when they paid the defense firms of Lewis, Brisbois, Bisgaard and Smith LLP and Steel Hector & Davis LLP in connection with the defense of these same Respondents in four other claims that had been tendered and accepted for coverage under earlier policies, of which the subject policies are renewals. In each of those four matters, the sum of the settlement and Defense Costs did not exceed Respondents' self-insured retention. Like the Claims that are the subject of this proceeding, the original amounts sought by the underlying claimants in the earlier claims exceeded the Retention Amount. Notably, the language of those earlier policies is the same as the policies at issue here.

Notwithstanding that Respondents have historically acknowledged their Retention obligations without objection in connection with similar customer complaint proceedings under the earlier-issued policies, they now refuse to acknowledge and fulfill those obligations in connection with the Claims submitted under the same policies (but for the policy periods) that are the subject of this proceeding. This wrongful refusal to pay the Retention Amount has caused pecuniary harm to Claimants and the defense counsel retained to defend the Claims. Despite Respondents' actions, but without waiving any of their rights, Claimants made a good faith accommodation and have paid certain Defense Costs in connection with the defense of these Claims as follows:

---

apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of a Claim against an Insured(s), but excluding salaries of any Insured." *Section 2.(d) "Defense Costs."*

Ms. Schierholz
March 26, 2007
Page 3

| | INCURRED | PAID | OUTSTANDING |
|---|---|---|---|
| Wheeler: | $26, 720.55 | $26,494.84 | $225.71 |
| Donnino: | $28,290.58 | $27,857.20 | $483.39 |
| Camilleri: | $57,842.40 | $55,778.60 | $2,036.66 |
| Frank: | $61,136.48 | $0.00 | $61,136.48 |
| TOTALS: | $173,990.01 | $110,130.64 | $63,882.24 |

Claimants have adjusted the four Claims and, with Respondents' knowledge, defense counsel has engaged in good faith settlement discussions with the claimants in each of the four Claims they were defending. During that process, the insurers and Sterling agreed that it was reasonable to determine whether (and for what amount) each of the Claims could settle.

Once defense counsel obtained settlement demands and then began to negotiate lower demands, we promptly advised the Respondents and their counsel that "Settlement Opportunities" (a defined term in the policy) had become available in each Claim. The "Settlement Opportunities" in each matter, when added to the Defense Costs that defense counsel had incurred, totaled less than the Retention Amount that applies to each Claim. Defense counsel advised the Respondents that the claimants' negotiated demands in each matter were "reasonable."

Section 1.C.2. of each of the insurance policies provides, in pertinent part, that the Respondents must consent to a "Settlement Opportunity"[2] within thirty (30) days. If the Respondents do not consent to the "Settlement Opportunity" then the Claimants' "liability for the Claim shall not exceed the amount for which [they] could have settled the Claim plus Defense Costs incurred up to the date of the refusal to settle." Moreover, in the event the Respondents do not timely consent to the "Settlement Opportunity," the Claimants have the right to withdraw coverage for the Claim, and no longer have any responsibility to defend and/or indemnify the Respondents.

Here, each Claim could have been settled for an amount, below the Retention Amount, even including the Defense Costs that had been incurred. The Claimants provided valid notice to the Respondents under Section 1.C.2. and more than thirty days has passed. Upon information and belief, the Respondents have not resolved any of the four Claims in compliance with Section 1.C.2. Consequently, the Claimants have issued correspondence to the Respondents and defense counsel advising that they were withdrawing coverage for each of the four Claims.

Claimants request that the Panel in this Arbitration render an Award in their favor:

---

[2] According to each policy, a "Settlement Opportunity" exists where the "Insurer recommends a settlement that does not exceed the policy's applicable Limit of Liability and which is acceptable to the claimant." *Section 1.C.2.*

KISSEL PESCE HIRSCH & WILMER LLP

Ms. Schierholz
March 26, 2007
Page 4

(1)    Declaring that it is the Respondents' (and any other party or entity claiming "Insured" status under the policies) obligation under the policies to satisfy the full $100,000 per Claim Retention Amount before the Claimants are required to pay under the policies;

(2)    Requiring the Respondents (and any other party or entity claiming "Insured" status under the policies) to indemnify and reimburse the Claimants for any amounts they pay or have paid with respect to any of the Claims, including any loss payments and "Defense Costs," that are within the per Claim Retention Amount;

(3)    Declaring that the Claimants properly invoked Section 1.C.2. in each policy, and that as a result, the Claimants are not required to defend and/or indemnify the Respondents (and any other party or entity claiming "Insured" status under the policies) with respect to Claims;

(4)    Declaring that Claimants are released of any further obligations under the subject policies; and

(5)    For such other relief as the Panel deems just and appropriate.

Respectfully submitted,

Jeffrey Hirsch
Kissel Pesce Hirsch & Wilmer LLP
A Member of the Firm
Counsel for Claimants

JH/mda

cc:    Peter Ticktin, Esq.
       Ejola Cook, Esq.
       Harry Mazadoorian, Esq.

# EXHIBIT E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION



2007 AUG 30  PM 2: 58

CLA...
CLERK U.S. D S T CT.
S.D. OF FL.-MIAMI

STERLING FINANCIAL INVESTMENT
GROUP, INC., a Florida corporation
(and CHARLES GARCIA individually),

        Plaintiff,

v.

AON LIMITED, a foreign corporation,
and SWINGLEHURST LIMITED,
BRIT SYNDICATES, a foreign corporation,
LEXINGTON INSURANCE COMPANY,
a foreign corporation, ACE SYNDICATES,
a foreign corporation, and WURTT,
a foreign corporation,

        Defendants.

Case No.: **07-80788**
**CIV-RYSKAMP**
MAGISTRATE JUDGE
VITUNAC

## NOTICE OF REMOVAL

Defendants, Lexington Insurance Company ("Lexington"), Württembergische Versicherung AG ("Württ") and Certain Underwriters at Lloyd's, London ("Lloyd's), by their undersigned counsel, hereby present this Notice of Removal of this action from the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County. In support of their Notice of Removal, Defendants state as follows:

1.      Defendants file this Notice of Removal pursuant to 28 U.S.C. §§ 1441 and 1446.

2.      Plaintiff, identified in its pleadings as Sterling Financial Investment Group, Inc., a Florida corporation (and Charles Garcia, individually) ("Sterling"), commenced this action against the Defendants in the Circuit Court by filing an amended complaint on August 3, 2007,

case No.: 502007CA011997XXXX MB AB. A true and correct copy of the amended complaint naming Defendants is attached as Group Exhibit "A."

3.      Sterling had originally filed a complaint in the Circuit Court naming only Aon Limited ("Aon") and Swinglehurst Limited ("Swinglehurst") as defendants.

4.      Sterling has agreed to dismiss Aon and Swinglehurst as party defendants for all purposes in this action. *See* Plaintiff's Notice of Voluntary Dismissal without Prejudice attached as part of Group Exhibit "A."

5.      Defendants, through their counsel, have agreed to accept service of the amended complaint as of August 22, 2007, and to file a responsive pleading on or before September 21, 2007. *See* August 23, 2007 letter, attached as Exhibit "B."

6.      The action purports to be a "Complaint for Damages and Declaratory Relief," and includes counts for "Declaratory Relief" and "Breach of Contract." *See* Exhibit "A."

7.      According to the amended complaint, Sterling is a Florida corporation. *See id.* at ¶2.

8.      Sterling did not allege a place of incorporation or principal place of business for any of the Defendants.

9.      Defendant Lloyd's, signified by Sterling as "Brit Syndicates" and "ACE Syndicates," are members of underwriting syndicate numbers 2987 and 2488, managed respectively by Brit Syndicates Limited and ACE Underwriting Agencies Limited, business entities organized and existing under the laws of the United Kingdom with their principal places of business in London, England.

10.     Defendant Lexington is an insurance company organized and existing under the laws of the State of Delaware, with its principal place of business in Boston, Massachusetts.

11.     Defendant Württ is an insurance company organized and existing under the laws of Germany. It is a branch of Württembergische UK Ltd., an entity with its principal place of business in the United Kingdom.

12.     Based on the allegations in the complaint, the amount in controversy in this matter exceeds $75,000, exclusive of interest and costs. *See id.* at ¶¶ 15, 16, 18, 22 and 33.

13.     In light of the foregoing, this Court has original jurisdiction over this action pursuant to 28 U.S.C. §1332(a).

14.     Given the complete diversity of citizenship between the parties and the amount in controversy, this action may be removed by Defendants from the state court to this Federal Court pursuant to 28 U.S.C. §1441(a).

15.     In compliance with its obligations under 28 U.S.C. §1446 (a), (b) and (d), Defendants hereby inform the court as follows:

    a.     that this Notice of Removal is signed pursuant to Fed. R. Civ. P. 11;

    b.     that Defendants have attached hereto a copy of all process and pleadings served upon it (*See* Exhibit "A");

    c.     that this Notice of Removal has been filed within 30 days of Defendants' receipt of the complaint; and

    d.     that this Notice of Removal has been served on Sterling today by U.S. Mail and will thereafter be filed with the clerk of the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida.

3

Case No._____

WHEREFORE, Defendants remove the above captioned case to the United States District

Court for the Southern District of Florida.

Respectfully submitted:

**MARLOW, CONNELL, VALERIUS, ABRAMS,
ADLER, NEWMAN & LEWIS**
4000 Ponce de Leon Boulevard, Suite 570
Coral Gables, FL 33146
Telephone: (305) 446-0500
Facsimile:(305) 446-3667

BY: _____
Jennifer Anderson Hoffman
janderson@marlowconnell.com
Fla. Bar No.: 981605

**Certificate of Service**

WE HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this

___ day of August, 2007, to Ejola Christlieb Cook, Esq., Ticktin & Rodriguez, P.A., Attorneys

for Plaintiffs, 3700 Coconut Creek Parkway, Suite 160, Coconut Creek, FL 33066.

_____
Jennifer Anderson Hoffman

4

IN THE CIRCUIT COURT OF THE 15TH
JUDICIAL CIRCUIT IN AND FOR PALM
BEACH COUNTY, FLORIDA

CASE NO.: 50 2007 CA011997 XXXXMB

STERLING FINANCIAL INVESTMENT
GROUP, INC., a Florida corporation,
(and CHARLES GARCIA, individually),

      Plaintiff,

v.

AON LIMITED, a foreign corporation,
and SWINGLEHURST LIMITED,
BRIT SYNDICATES, a foreign corporation,
LEXINGTON INSURANCE COMPANY,
a foreign corporation, ACE SYNDICATES,
a foreign corporation, and WURTT,
a foreign corporation,

      Defendants.

_____/

### NOTICE OF REMOVAL

      Defendants, Lexington Insurance Company ("Lexington"), Württembergische

Versicherung AG ("Württ") and Certain Underwriters at Lloyd's, London ("Lloyd's"), by

and through their undersigned counsel, file this Notice of Removal of the instant cause

to the United States District Court, Middle District of Florida, pursuant to the applicable

Florida Rules of Civil Procedure.

### Certificate of Service

      WE HEREBY CERTIFY that a true and correct copy of the foregoing was mailed

this _____ day of August, 2007, to Ejola Christlieb Cook, Esq., Ticktin & Rodriguez,

CASE NO.:  50 2007 CA011997 XXXXMB

P.A., Attorneys for Plaintiffs, 3700 Coconut Creek Parkway, Suite 160, Coconut Creek,

FL 33066.

**MARLOW, CONNELL, VALERIUS, ABRAMS,
ADLER, NEWMAN & LEWIS**
4000 Ponce de Leon Boulevard, Suite 570
Coral Gables, FL 33146
Telephone: (305) 446-0500
Facsimile:(305) 446-3667

BY: _____
Jennifer Anderson Hoffman
Fla. Bar No.: 981605

# EXHIBIT F



thereof, and the Broker/Dealer and the Insureds shall execute all papers required and shall do everything that may be necessary to secure such rights including the execution of such documents necessary to enable the Insurer effectively to bring suit in the name of the Broker/Dealer and/or the Insureds. In no event, however, shall the Insurer exercise its rights to subrogation against an Insured under this policy unless such Insured has been convicted of a criminal act, or been judicially determined to have committed a deliberate fraudulent act, or obtained any profit or advantage to which such Insured was not legally entitled, or arising out of an act other than a covered Professional Service or Broker/Dealer service by such other Insured.

### 12.    OTHER INSURANCE

Such insurance as is provided by this policy shall apply only as excess over any other valid and collectible insurance.

### 13.    NOTICE AND AUTHORITY

It is agreed that the Broker/Dealer first named in the Schedule shall act on behalf of Insureds with respect to the giving of notice of Claim or giving and receiving notice of cancellation, the payment of premiums and the receiving of any return premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy and the exercising or declining to exercise any right to a Discovery Period. Notice to any agent or knowledge possessed by any agent or any other person shall not effect a waiver or a change in any part of this policy or stop the Insurer from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed except by endorsement issued to form a part of this policy and signed by an authorized representative of the Insurer.

### 14.    TERRITORY

This policy applies to Claims which are bought anywhere in the World.

### 15.    ASSIGNMENT

This policy and any and all rights hereunder are not assignable without the written consent of the Insurer.

### 16.    ALTERNATIVE DISPUTE RESOLUTION PROCESS

It is hereby understood and agreed that all disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of Loss, shall be subject to the alternative dispute resolution process ("ADR") set forth in this clause.

Either the Insurer or the Insured(s) may elect the type of ADR discussed below; provided, however, that the Insureds shall have the right to reject the Insurer's choice of ADR at any time prior to its commencement, in which case the Insureds' choice of ADR shall control.

The Insurer and Insured(s) agree that there shall be two choices of ADR: (1) non-binding mediation administered by the America Arbitration Association, in which the Insurer and Insureds shall try in good faith to settle the dispute by mediation under or in accordance with its then-prevailing Commercial Mediation Rules; or (2) arbitration submitted to the America Arbitration Association under or in accordance with its then-prevailing commercial arbitration rules, in which the arbitration panel shall be composed of three disinterested individuals. In either mediation or arbitration, the mediator(s) or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. The mediator(s) or arbitrators



shall also give due consideration to the general principles of the law of the state where the Broker/Dealer is incorporated in the construction or interpretation of the provisions of this policy; provided, however, that the terms, conditions, provisions and exclusions of this policy are to be construed in an even-handed fashion in the manner most consistent with the relevant terms, conditions, provisions or exclusions of the policy. In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the arbitrators' award shall not include attorneys fees or other costs. In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least 120 days shall have elapsed from the date of the termination of the mediation. In all events, each party shall share equally the expenses of the ADR.

Either choice of ADR may be commenced in either New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state indicated in the Schedule page as the mailing address for the Broker/Dealer. The Broker/Dealer shall act on behalf of all Insureds in deciding to proceed with ADR under this clause.

## 17.    ACTION AGAINST INSURER

Except as provided in Clause 18 of this policy, no action shall lie against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the Insureds' obligation to pay shall have been finally determined either by judgment against the Insureds after actual trial or by written agreement of the Insureds, the claimant and the Insurer.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the Insurer as a party to any action against the Insureds nor the Broker/Dealer to determine the Insureds' liability, nor shall the Insurer be impleaded by the Insureds or the Broker/Dealer or their legal representatives Bankruptcy or insolvency of the Broker/Dealer or the Insureds or of their estates shall not relieve the Insurer of any of its obligations hereunder.

## 18.    HEADINGS

The descriptions in the headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

## 19.    SERVICE OF SUIT CLAUSE (U.S.A.)

This Clause is not intended to conflict with or override the parties' obligation to arbitrate their disputes in accordance with Clause 18

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

It is further agreed that service of process in such suit may be made upon Sedgwick, Detert, Moran & Arnold, 125 Broad Street, New York, NY 10004, USA, and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

# EXHIBIT G

Policy Number: FD0504362



| **Supplemental Clauses Continued** | Registered Investment Advisory Endorsement (for Approved Activities). |
| --- | --- |
| | Short Covered Call Options (AIG Language). |
| | Excessive Fees Exclusion. |
| | After Hours Trading Exclusion. |
| | Laddering Exclusion. |
| | Extended Reporting Period. |

**Conditions**

Wording is based on AIG Securities Broker/Dealer Professional Liability Insurance (3/97).

**Several Liability**

The subscribing insurers' obligations under contracts of insurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions. The subscribing insurers are not responsible for the subscription of any co-subscribing insurer who for any reason does not satisfy all or part of its obligations.

**Choice of Law and Jurisdiction**

Any dispute concerning the interpretation of the terms, conditions, limitations and/or exclusions contained in this Policy is understood and agreed by both the insured and the insurers to be subject to the law of per Service of Suit.

Each party agrees to submit to the jurisdiction of per Service of Suit to comply with all requirements necessary to give such Court jurisdiction.

In respect of claims brought against the insured and indemnified under this policy, as more fully described herein, the choice of law applicable is New York and the choice of jurisdiction is New York.

**Premium**

USD 245,000

**Payment Terms**

One instalment payable in full due 45 days from inception.

**Taxes payable by Insured and Administered by the Underwriter(s)**

None

**Notice of Claims**

Kissel & Pesche LLP, Attention: Richard Kissel, 555 White Plains Road, Tarrytown, New York, NY 10591, U.S.A.

**Recording, Transmitting and Storage Information**

All documentation and information to be recorded and/or transmitted electronically and stored electronically in Aon Limited repositories.

# EXHIBIT H

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO: **50** 2007 CA 0 1 1 9 9 7 **XXXX MB**

**AB**

STERLING FINANCIAL INVESTMENT
GROUP, INC., a Florida corporation
(and CHARLES GARCIA
individually)

     Plaintiff,

v.

AON LIMITED, a foreign corporation,
and SWINGLEHURST LIMITED,

     Defendants.

_____/



## COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

The Plaintiff, STERLING FINANCIAL INVESTMENT GROUP, INC., a Florida

corporation (hereinafter "STERLING") by and through its undersigned attorneys, hereby

brings suit against AON LIMITED (hereinafter "AON"), a foreign corporation,

SWINGLEHURST LIMITED (hereinafter "SWINGLEHURST"), a foreign corporation, BRIT

SYNDICATES (hereinafter "BRIT"), a foreign corporation, LEXINGTON INSURANCE

COMPANY (hereinafter "LEXINGTON"), a foreign  corporation, ACE SYNDICATES

(hereinafter "ACE"), a foreign corporation, and WURTT, a foreign corporation, (hereinafter

sometimes collectively referred  "INSURER") and states:

     1.     This is an action for damages in excess of $15,000 exclusive of interest,

costs and attorneys' fees.

     2.     At all times material hereto STERLING, a Florida corporation was authorized

to do business and conducted business in Palm Beach County, Florida.

3.    The Defendant, AON is a wholly owned subsidiary of Aon Corporation. Aon Corporation 's an Insurance Firm, is headquartered in Chicago, Illinois and pursuant to the underlying Contract has availed itself to Florida's jurisdiction. AON is the Issuer of Insurance contract FD0504362 attached as Exhibit "A".

4.    The Defendant, SWINGLEHURST, is a London, England based Insurance Company, who has an office in Miami, Florida, and for all matters has availed itself to the Florida Jurisdiction. SWINGLEHURST, is the Issuer of Contract #SF403040X attached as Exhibit "B".

5.    AON contracted with STERLING to insure STERLING regarding Professional Risks. On or about May 24, 2005 STERLING entered into a Professional Risks Policy #FD0504362 (hereinafter "Aon Agreement") with AON.

6.    Pursuant to the AON Agreement, section 1(c)(1), the "Insurer shall have the right and duty to defend, subject to and as part of the limits of Liability, any Claim made against the Insureds during the Policy Period. Exhibit "A"

7.    Furthermore in Section 6 of the AON Agreement clearly states that "[t]he insurer shall **only** be liable for the amount of Loss arising from a Claim which is **in excess** of the applicable Retention Amount"(emphasis added.) Exhibit "A"

8.    SWINGLEHURST contracted with STERLING to insure STERLING regarding Security Brokers/Dealer Errors and Omissions Insurance, Claims Made Basis. On or about May 9, 2004 STERLING entered into a Security Brokers/Dealer Errors and Omissions Insurance, Claims Made Basis Policy # SF403040X (hereinafter "SW Agreement") with SWINGLEHURST.

2

9.    Pursuant to the SW Agreement, section 1(c)(1), the "Insurer shall have the right and duty to defend, subject to and as part of the limits of Liability, any Claim made against the Insureds during the Policy Period. Exhibit "B.""

10.    Furthermore in Section 6 of the SW Agreement clearly states that "[t]he insurer shall **only** be liable for the amount of Loss arising from a Claim which is **in excess** of the applicable Retention Amount"(emphasis added.) Exhibit "B"

11.    On or about April 18, 2005, a Statement of Claim was filed against STERLING by Roger Wheeler et al.(hereinafter "Wheeler Claim"), alleging 14 causes of action and seeking compensatory damages, including out of pocket losses in the sum of $3 million dollar. Pursuant to Policy SF403040X, on May 12, 2005, the Notice was forwarded to AON Risk Services.

12.    On or about July 18, 2005, a Statement of Claim was filed against STERLING by Carmella Donnino alleging 3 causes of action, and sought damages in the range of $100,000.00 to $500,000.00. This Cause of action came under the FD0504362 Policy. Exhibit "A"

13.    On or about October 31, 2005, Charles P. and Francis Camilleri filed a Statement of Claim with the NASD against STERLING. The Claimants' alleged five causes of action, and sought unspecified amounts including disgorgement of all unjust enrichment, lost profits, punitive damages. This Cause of Action came under the FD0504362 Policy.

14.    On or about January 4, 2006 a Statement of Claim was filed against Sterling Financial in the NASD by Howard and Diana Frank. The Claimants' alleged 3 causes of action seeking damages in the range of $100,000.00 to $500,000.00 amounts. This Cause of Action came under the FD0504362 Policy.

3

TICKTIN & RODRIGUEZ, P.A.
3700 COCONUT CREEK PARKWAY, SUITE 160, COCONUT CREEK, FLORIDA 33066
TELEPHONE: (954) 978-8950

15. The amount of the retention was $75,000 in any case where the Defendant required settlement.

16. The Plaintiff has been required to hire counsel to prosecute this matter, and the Plaintiff has agreed to pay a reasonable fee for the legal services rendered by the undersigned counsel.

## COUNT-I DECLARATORY RELIEF AS TO SF403040X

17. The Plaintiff, STERLING, avers each allegation contained in paragraphs 1 through 15, above as through fully set forth herein.

18. An actual controversy has arisen and now exists between STERLING and the Defendant, SWINGLEHURST, concerning their respective rights and duties in that the STERLING contends that the INSURERS are liable for the Loss and for the Defense Costs if the amount of the claim is in excess of the Retention Amount, which under is SF403040X is $100,000.00. Exhibit "B"

19. The SW Agreement does not articulate that the Insurer shall only be liable for the amount of Loss and Defenses Costs above the Retention Amount.

20. Nor does the SW Agreement dictate that it is a requisite that the Retention amount be exhausted as a condition precedent for SWINGLEHURST's obligations to arise.

21. STERLING desires a judicial determination of SWINGLEHURST's rights and duties, and a declaration as to the payment of Loss and Defense Costs in Claims.

22. A Judicial declaration is necessary and appropriate at this time under the circumstances in order that STERLING may ascertain its rights and duties under policy SF403040X.

23. Due to SWINGLEHURST's refusal to fulfill its obligations under policy

4

SF403040X, STERLING is liable for all attorneys' fees and other Losses accrued in the underlying cases and is suffering by the unsettled state of affairs.

24.    STERLING was forced to seek its own counsel to defend its position when SWINGLEHURST ordered the original defense attorneys to withdraw from the underlying cases.

25.    STERLING was forced to pay its own settlement claims.

26.    STERLING has exhausted its administrative remedies.

27.    The requirement of payment of attorneys' fees is inappropriately being required of STERLING, as the Defendants had a duty to Defend, although it is agreed that if the amount that was ultimately awarded to any of the claimants would have been in excess of the policy limits, that the amount of the fees would have been added to the amount of the recovery to ascertain the amount payable for the insured amount.

WHEREFORE, the Plaintiff asks this Honorable Court for a judgment asks this Honorable Court to enter judgment against the Defendant, SWINGLEHURST, for a declaration that the INSURER is liable for all Attorneys' fees expended to defend the underlying claims, for attorneys' fees pursuant to § 627.428, Florida Statutes, its costs, and such further and other relief as this Honorable Court may deem just and proper.

## COUNT-II DECLARATORY RELIEF AS TO FD0504362

28.    The Plaintiff, STERLING, avers each allegation contained in paragraphs 1 through 16, above as through fully set forth herein.

29.    An actual controversy has arisen and now exists between STERLING and the Defendant, AON, concerning their respective rights and duties in that the STERLING contends that the INSURERS are liable for the Loss and for the Defense Costs if the

5

amount of the claim is in excess of the Retention Amount, which under is FD0504362 is $100,000.00. Exhibit "A"

30.    The Aon Agreement does not articulate that the Insurer shall only be liable for the amount of Loss and Defenses Costs above the Retention Amount.

31.    Nor does the Aon Agreement dictate that it is a requisite that the Retention amount be exhausted as a condition precedent for AON's obligations to arise

32.    STERLING desires a judicial determination of AON's rights and duties, and a declaration as to the payment of Loss and Defense Costs in Claims.

33.    A Judicial declaration is necessary and appropriate at this time under the circumstances in order that STERLING may ascertain its rights and duties under policy FD0504362.

34.    Due to AON's refusal to fulfill its obligations under policy FD0504362, STERLING is allegedly liable for all attorneys' fees required to defend the underlying claims.

35.    STERLING was forced to seek its own counsel to defend its position when AON ordered the original defense attorneys to withdraw from the underlying cases.

36.    STERLING was forced to pay its own settlement claims.

37.    STERLING has exhausted its administrative remedies.

38.    The requirement of payment of attorneys' fees is inappropriately being required of STERLING, as the Defendants had a duty to Defend, although it is agreed that if the amount that was ultimately awarded to any of the claimants would have been in excess of the policy limits, that the amount of the fees would have been added to the amount of the recovery to ascertain the amount payable for the insured amount.

6

WHEREFORE, the Plaintiff asks this Honorable Court for a judgment asks this Honorable Court to enter judgment against the Defendant, SWINGLEHURST, for a declaration that the INSURER is liable for all Attorneys' fees expended to defend the underlying claims, for attorneys' fees pursuant to § 627.428, Florida Statutes, its costs, and such further and other relief as this Honorable Court may deem just and proper.

### COUNT III - BREACH OF CONTRACT BY DEFENDANTS IMPROPERLY ATTEMPTING TO IMPOSE ARBITRATION

39.    The Plaintiff avers and alleges paragraphs 1 through 14 and incorporates the allegations set forth therein by reference as though fully set forth in this count.

40.    The policy of insurance provides that either party may require either arbitration or mediation. The Defendants required Arbitration, but the Insured had the right to convert to Mediation, and then file suit after a period of 120 days. The Insured exercised their right to convert the arbitration to a mediation, and the parties attended a mediation which was fruitless.

41.    Then, with no contractual authority, the Defendants maintained that they had a continuing right to arbitration, and the Insured consistently refused to participate. Presently, the Defendants are moving forward with arbitration, without the Insured.

42.    The Plaintiff was required to pay its attorneys to take action to resist the unauthorized arbitration, and has suffered damage in that regard.

43.    Moreover, the Plaintiff is most concerned that the Defendants will go forward and obtain some award in default from the arbitration, as the Plaintiffs are refusing to participate.

44.    WHEREFORE, the Plaintiffs seek Declaratory relief as to whether there is

7

any right of the Defendants to require that the Plaintiffs be bound by any outcome of the arbitration that the Defendants are pursuing; injunctive relief that the Defendants be enjoined from any further conduct that requires or pretends to require the Plaintiff to participate in arbitration; compensatory damages for the expenses and inconvenience suffered by the Plaintiffs in resisting the unauthorized arbitration, attorneys' fees pursuant to § 627.428, Florida Statute, and such further and other relief as this Honorable Court may deem just.

### COUNT IV - BREACH OF CONTRACT AS TO SF403040X AND FD0504362

45.    The Plaintiff avers and alleges paragraphs 1 through 14 and incorporates the allegations set forth therein by reference as though fully set forth in this count.

46.    Under Policy SF403040X and Policy FD0504362, the Defendants had a duty to defend STERLING.

47.    The Defendant not only failed to properly defend STERLING, but it acted in bad faith in demanding a settlement as soon as it appeared that he negotiations were reduced to an amount below the sum of the deductible or the reserve. In effect, the Defendants forced the Plaintiff to settle at an amount higher than the amount that would have ultimately been payable. The Defendants did this to save itself monies at the expense their insured, and therefore, they acted in bad faith.

WHEREFORE, the Plaintiff, STERLING, asks that this Court enter a Final Judgment for punitive and compensatory damages for the intentional wrongdoing in that the Insurer had a duty to defend an amount that is owed to third Parties in the underlying Causes of Action pursuant to the terms of the policy , exclusive of interest and costs plus, prejudgment interest at the statutory rate, attorneys' fees pursuant to § § 627.428, Florida

8

Statute, costs, and such further and other relief as this Honorable Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

The Plaintiff demands trial by jury on all issues so triable.

Dated this 24th of July  2007.

TICKTIN & RODRIGUEZ, P.A.
Attorneys for the Plaintiffs
3700 Coconut Creek Parkway
Suite 160
Coconut Creek, Florida  33066
Telephone: (954) 978-8950

EJOLA CHRISTLIEB COOK
FLORIDA BAR NO.: 0010327

9

# EXHIBIT I

Brokerage Services provided
by vFinance Investments - *Member NASD/SIPC*

# Sterling Hispanic Capital Markets Group



## Click here to view press releases

Since 1999, vFinance has been helping companies to achieve their goals. vFinance's Sterling Hispanic Capital Markets Group is dedicated to serving companies in the rapidly growing and lucrative U.S. Hispanic market.

The Group was started by Hispanic entrepreneur Charles Patrick Garcia, recognized by Hispanic Business magazine as one of the "100 Most Influential Hispanics" in the United States and by Hispanic magazine in 2004 as "Entrepreneur of the Year" for leading one of the fastest growing businesses in the nation. Based on his commitment to improve educational opportunities for all children, he was appointed by Gov. Jeb Bush to serve two terms on Florida's State Board of Education. He is a Board member of Winn Dixie Stores, Inc., one of the largest chains of grocery stores in America and he serves as Chairman of the Board of Visitors of the U.S. Air Force Academy. Through his experience as a former White House Fellow, advisor to leading businessmen including former Goldman Sachs chairman John C. Whitehead, experience working for three Presidents, and continuing participation in both corporate and public sector Boards he has built an extensive network which he leverages for the benefit of his clients.

vFinance's Sterling Hispanic Capital Markets Group specializes in capital raising and merger & acquisition (M&A) advisory services for U.S. Hispanic companies. vFinance offers a full suite of investment banking services including public fundraising, private fundraising and advisory services. The advisory services include M&A, Recaps, Fairness Opinions, consulting, assistance with business plans, and Valuation Analyses.

The Group focuses on both companies that offer products and services to the Hispanic market and companies that are controlled by Hispanic management teams. By specializing in the U.S. food and beverage, media, financial services and consumer goods sectors, the Group reaches a vast majority of U.S. Hispanic businesses. While we work with Hispanic companies throughout the U.S., our corporate headquarters in South Florida, and our offices in New York and California give us unique access to some of the largest Hispanic markets in the U.S. We possess additional unique capabilities that benefit our clients. Our highly trafficked vFinance web portal provides a window on what business sectors are emerging entrepreneurial areas.

By targeting our efforts, we can expand our existing network in the U.S. Hispanic market, spot emerging companies and attractive investment opportunities, and provide clients with specialized strategic advice. The Group's experienced investment banking professionals provide Hispanic clients with

personalized, creative banking solutions and expert guidance. Through our focus, we are able to better serve this often overlooked, valuable market segment.

**For more information, please contact**:

**Charles P. Garcia**
President
Sterling Hispanic Capital Markets Group
charlie@vfinance.com
561.981.1088

Privacy Statement
Legal Notice & Site Disclaimer

Taken from vFin's website on 10/15/07 by PAB.