EXHIBIT J

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISON

| | |
|---|---|
| STERLING FINANCIAL INVESTMENT GROUP, INC., a Florida corporation (and CHARLES GARCIA individually), | Case No.: 9:07-cv-80788-KLR |
| Plaintiff, | |
| v. | |
| AON LIMITED a foreign corporation, and SWINGLEHURST LIMITED, BRIT SYNDICATES a foreign corporation, LEXINGTON INSURANCE COMPANY, a foreign corporation, ACE SYNDICATES, a foreign corporation and WURTT, a foreign corporation, | |
| Defendants. | |

## DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND THIRD PARTY COMPLAINT

Certain Underwriters at Lloyd's, London subscribing to policies numbered SF403040X and FD0504362 ("Lloyd's"), incorrectly identified by Plaintiff as Brit Syndicates and ACE Syndicates, Lexington Insurance Company ("Lexington"), and Württembergische Versicherung AG ("Württ"), incorrectly identified by Plaintiff as Wurtt, collectively referred to hereinafter as the Defendants, hereby answer the Plaintiff's amended complaint and assert their affirmative defenses, counterclaims and third-party complaint, as follows:

1.      Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1, except admit that the Plaintiff, by its amended complaint, is seeking certain damages from Defendants.

2.      Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2.

3.      To the extent AON Limited has been voluntarily dismissed by Plaintiff from this action, no response to the allegations contained in paragraph 3 is required from Defendants, except to deny that AON is the "issuer" of the insurance policy attached to Plaintiff's amended complaint as Exhibit "A."

4.      Defendants admit the allegations contained in paragraph 4 to the extent that certain members of a Lloyd's underwriting syndicate managed by Brit Syndicates Limited subscribe in their designated percentages to policy number FD0504362, but otherwise deny the allegations contained in paragraph 4.

5.      Defendants admit the allegations contained in paragraph 5 to the extent that Lexington subscribes in its designated percentage to policy number FD0504362, but otherwise deny the allegations contained in paragraph 5.

6.      To the extent Swinglehurst Limited has been voluntarily dismissed by Plaintiff from this action, no response to the allegations contained in paragraph 6 is required from the Defendants, except to deny that Swinglehurst is the "issuer" of the insurance policy attached to Plaintiff's amended complaint as Exhibit "B."

7.      Defendants admit the allegations contained in paragraph 7 to the extent that certain members of a Lloyd's underwriting syndicate managed by ACE Underwriting Agencies Limited subscribe in their designated percentages to policy number SF4030340X, but otherwise deny the allegations contained in paragraph 7.

2

8.      Defendants admit the allegations contained in paragraph 8 to the extent that Württ subscribes in its designated percentage to policy number SF403040X, but Defendants otherwise deny the allegations contained in paragraph 8.

9.      Defendants deny the allegations contained in paragraph 9.

10.     To the extent the allegations contained in paragraph 10 purport to set forth and/or interpret any provision of the referenced policy, Defendants aver that the policy speaks for itself and therefore refer to the policy for its contents; the Defendants otherwise deny the allegations contained in paragraph 10 both generally and to the extent they purport to set forth a legal conclusion as to any duty or obligation under the referenced policy.

11.     To the extent the allegations contained in paragraph 11 purport to set forth and/or interpret any provision of the referenced policy, Defendants aver that the policy speaks for itself and therefore refer to the policy for its contents; the Defendants otherwise deny the allegations contained in paragraph 11 both generally and to the extent they purport to set forth a legal conclusion as to any duty or obligation under the referenced policy, but admit that coverage under the referenced policy is subject to and in excess of a $100,000 "Retention Amount" for each and every claim.

12.     Defendants deny the allegations contained in paragraph 12.

13.     To the extent the allegations contained in paragraph 13 purport to set forth and/or interpret any provision of the referenced policy, Defendants aver that the policy speaks for itself and therefore refer to the policy for its contents; the Defendants otherwise deny the allegations contained in paragraph 13 both generally and to the extent they purport to set forth a legal conclusion as to any duty or obligation under the referenced policy.

3

14.     To the extent the allegations contained in paragraph 14 purport to set forth and/or interpret any provision of the referenced policy, Defendants aver that the policy speaks for itself and therefore refer to the policy for its contents; the Defendants otherwise deny the allegations in paragraph 14 both generally and to the extent they purport to set forth a legal conclusion as to any duty or obligation under the referenced policy, but admit that coverage under the referenced policy is subject to and in excess of a $100,000 "Retention Amount" for each and every claim.

15.     Defendants deny having knowledge or information sufficient to form a belief as to truth of the allegations contained in paragraph 15 regarding the Wheeler Claim; the Defendants otherwise deny the allegations contained in paragraph 15 and aver that the referenced policy speaks for itself and therefore refer to the policy for its contents.

16.     Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16 regarding the referenced Statement of Claim; the Defendants otherwise deny the allegations contained in paragraph 16 and aver that the referenced policy speaks for itself and therefore refer to the policy for its contents.

17.     Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17 regarding the referenced Statement of Claim; the Defendants otherwise deny the allegations contained in paragraph 17 and aver that the referenced policy speaks for itself and therefore refer to the policy for its contents.

18.     Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18 regarding the referenced Statement of Claim; the Defendants otherwise deny the allegations contained in paragraph 18 and aver that the referenced policy speaks for itself and therefore refer to the policy for its contents.

4

19. To the extent the allegations contained in paragraph 19 purport to set forth and/or interpret any provision of the referenced policies, Defendants aver that the policies speak for themselves and therefore refer to the polices for their contents; the Defendants otherwise deny the allegations contained in paragraph 19 both generally and to the extent they purport to set forth a legal conclusion as to any term or condition of coverage thereunder, but admit that coverage under the policies is subject to and in excess of a $100,000 "Retention Amount" for each and every claim.

20. Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20.

<u>COUNT I – DECLARATORY RELIEF AS TO SF403040X</u>

21. Defendants incorporate herein their responses to paragraphs 1-15.

22. Defendants admit that an actual controversy exists between the Plaintiff and them and that coverage under the referenced policy is subject to and in excess of a $100,000 "Retention Amount" for each and every claim, but otherwise deny the allegations contained in paragraph 22.

23. To the extent the allegations contained in paragraph 23 purport to set forth and/or interpret any provision of the referenced policy, Defendants aver that the policy speaks for itself and therefore refer to the policy for its contents; the Defendants otherwise deny the allegations contained in paragraph 23 both generally and to the extent they purport to set forth a legal conclusion as to any duty or obligation under the referenced policy.

24. To the extent the allegations contained in paragraph 24 purport to set forth and/or interpret any provision of the referenced policy, Defendants aver that the policy speaks for itself

and therefore refer to the policy for its contents; the Defendants otherwise deny the allegations contained in paragraph 24 both generally and to the extent they purport to set forth a legal conclusion as to any duty or obligation under the referenced policy.

25.     Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25.

26.     Defendants admit the allegations contained in paragraph 26 to the extent an actual controversy exists between the Plaintiff and them.

27.     Defendants deny the allegations contained in paragraph 27, except admit, based on the terms and conditions of the referenced policy, the specific allegation that Plaintiff "is liable for all attorneys' fees and other Losses accrued in the underlying cases...."

28.     Defendants deny the allegations contained in paragraph 28.

29.     Defendants deny the allegations contained in paragraph 29.

30.     Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 30.

31.     Defendants deny the allegations contained in paragraph 31 and the unnumbered "WHEREFORE" paragraph that follows.

<u>COUNT II – DECLARATORY RELIEF AS TO FD0504362</u>

32.     Defendants incorporate herein their responses to paragraphs 1-16.

33.     Defendants admit that an actual controversy exists between Plaintiff and them and that coverage under the referenced policy is subject to and in excess of a $100,000 "Retention Amount" for each and every claim, but otherwise deny the allegations contained in paragraph 33.

34.     To the extent the allegations contained in paragraph 34 purport to set forth and/or interpret any provision of the referenced policy, Defendants aver that the policy speaks for itself and therefore refer to the policy for its contents; the Defendants otherwise deny the allegations contained in paragraph 34 both generally and to the extent they purport to set forth a legal conclusion as to any duty or obligation under the referenced policy.

35.     To the extent the allegations contained in paragraph 35 purport to set forth and/or interpret any provision of the referenced policy, Defendants aver that the policy speaks for itself and therefore refer to the policy for its contents; the Defendants otherwise deny the allegations contained in paragraph 35 both generally and to the extent they purport to set forth a legal conclusion as to any duty or obligation under the referenced policy.

36.     Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 36.

37.     Defendants admit the allegations contained in paragraph 37 to the extent an actual controversy exits between the Plaintiff and them.

38.     Defendants deny the allegations contained in paragraph 38 except aver, based on the terms and conditions of the referenced policy, that Plaintiff "is liable for all attorneys' fees required to defend the underlying claims."

39.     Defendants deny the allegations contained in paragraph 39.

40.     Defendants deny the allegation contained in paragraph 40.

41.     Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 41.

42.     Defendants deny the allegations contained in paragraph 42 and the unnumbered "WHEREFORE" paragraph that follows.

### COUNT III – BREACH OF CONTRACT BY DFENDANTS IMPROPERLY ATTEMPTING TO IMPOSE ARBITRATION

43.     Defendants incorporate herein their responses to paragraphs 1-14.

44.     To the extent the allegations contained in paragraph 44 purport to set forth and/or interpret any provision of any referenced policy, Defendants aver that the policies speak for themselves and therefore refer to the policies for their contents; the Defendants otherwise deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 44, but admit that the referenced polices each contain an "Alternative Dispute Resolution Process' provision.

45.     Defendants deny the allegations contained in paragraph 45.

46.     Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 46.

47.     Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 47.

48.     Defendants deny the allegations contained in paragraph 48.

### COUNT IV – BREACH OF CONTRACT AS TO SF403040X AND FD0504362

49.     Defendants incorporate herein their responses to paragraphs 1-14.

50.     To the extent the allegations contained in paragraph 50 purport to set forth and/or interpret any provision of the referenced policies, Defendants aver that the policies speak for themselves and therefore refer to the policies for their contents; the Defendants otherwise deny

the allegations contained in paragraph 50 to the extent they imply or infer that the Defendants currently have a duty to defend Plaintiff.

51.     Defendants deny the allegations contained in paragraph 51 and the unnumbered "WHEREFORE" paragraph that follows.

## AFFIRMATIVE DEFENSES

52.     Plaintiff's complaint, in whole or in part, fails to state a claim or claims upon which relief may be granted.

53.     Plaintiff's claims are barred in that it has selected an improper venue for suit.

54.     Plaintiff's claims are barred in that it has failed to join a party or parties necessary for just adjudication.

55.     Plaintiff's claims are barred by and/or subject to the terms, conditions, definitions, exclusions, limits, retention amounts/self-insured retention, endorsements and declarations of the insurance policies at issue.

56.     Plaintiff's claims are barred in that it has failed to satisfy all conditions precedent to coverage under the insurance policies at issue.

57.     Plaintiff's claims are barred by the doctrines of waiver, estoppel and/or unclean hands.

58.     Plaintiff's claims are barred in that it has failed to mitigate, minimize or avoid its claimed injuries and damages.

59.     Plaintiff's claims are barred in that its claimed injuries and damages were caused by its own negligence, gross negligence or other misfeasance and/or malfeasance.

60.    Plaintiff's claims are barred, or should otherwise be reduced or allocated to other parties, in that its claimed injuries and damages were caused by the negligence, gross negligence or other misfeasance and/or malfeasance of other liable parties.

61.    Plaintiff's claims are barred, in whole or in part, in that its claimed injuries and damages involve amounts that were incurred or expended by Plaintiff after the Defendants' alleged coverage obligations terminated.

62.    Plaintiff's claims are barred, in whole or in part, in that they involve claimed loss amounts and related expenses that are not covered and/or are otherwise excluded under the terms, conditions, definitions and exclusions of the insurance policies at issue.

63.    Plaintiff's claims are barred by the applicable statute of limitations and/or the equitable doctrine of laches.

WHEREFORE, the Defendants hereby request the Court enter judgment:

A.    Dismissing Plaintiff's claims with prejudice;

B.    Declaring that the referenced insurance policies impose no duties or obligations upon the Defendants, that Plaintiff has materially breached the relevant terms and conditions of coverage and the Defendants have acted at all times in compliance with the terms and conditions of said policies and the applicable and governing law;

C.    Denying Plaintiff's claims for relief, damages, fees, interest and costs and disbursements;

D.    Denying Plaintiff's claims for punitive damages as violative of the U.S. and applicable state Constitutions; and

E.      Granting the Defendants such other and further relief, including attorney's

fees and costs, as the Court finds just and appropriate.

## DEFENDANTS' COUNTERCLAIMS AND THIRD-PARTY COMPLAINT

Defendants and Third-Party Plaintiffs, Certain Underwriters at Lloyd's, London ("Lloyd's"), Lexington Insurance Company ("Lexington"), and Württembergische Versicherung AG ("Württ") (hereinafter referred to collectively as the "Insurers"), for their Counterclaims and Third-Party Claims against Plaintiff, Sterling Financial Investment Group, Inc. ("Sterling Financial"), and Third-Party Defendants, Charles P. Garcia ("Garcia") and vFinance Investments, Inc. ("vFinance") ("Sterling Financial," "Garcia" and "vFinance" are hereinafter referred to collectively as "Sterling"), allege as follows:

### NATURE OF ACTION AND JURISDICTION

1.      This is a claim for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2002 and breach of contract.

2.      This court has jurisdiction over this matter based on diversity of citizenship pursuant to 28 U.S.C. §1332 (a). The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

### PARTIES

3.      Lloyd's consists of members of underwriting syndicate numbers 2987 and 2488, managed respectively by Brit Syndicates Limited and ACE Underwriting Agencies Limited, business entities organized and existing under the laws of the United Kingdom that are in the business of the sale and insurance of insurance policies for, *inter alia,* professional liability, and have their principal places of business in London, England.

11

Case No.: 9:07-cv-80788-KLR

4.      The participating Lloyd's Syndicates subscribe in their designated percentages to one or both of policy number SF403040X, effective from May 9, 2004 to May 24, 2005, and policy number FD0504362, effective from May 24, 2005 to May 24, 2006, as follows: (1) Syndicate 2987, 30% under policy number SF403040X and 50% under policy number FD0504362; and (2) Syndicate 2488, 20% under policy number SF403040X. Policy number SF403040X and policy number FD0504362 are collectively referred to herein as the "Policies."

5.      Lexington is an insurance company incorporated under the laws of the state of Delaware, with its principal place of business in Boston, Massachusetts. Lexington subscribes to the Policies in its designated percentage of 30% under policy number SF0403040X and 50% under policy number FD0504362.

6.      Württ is an insurance company incorporated under the laws of Germany. It is a branch of Württembergische UK Limited, doing business in the United Kingdom. Württ subscribes in its designated percentage of 20% under policy number SF0403040X.

7.      Sterling Financial is a financial services corporation incorporated under the laws of the state of Florida, with its principal place of business at 638 High Street, Boca Raton, Florida 33432. Sterling Financial, at all times relevant to this action, was a registered broker-dealer with the National Association of Securities Dealers ("NASD," now known as the Financial Industry Regulatory Authority), a non-governmental regulatory organization for the trading and exchange of securities based in New York, New York.

8.      Garcia is the Chief Executive Officer of Sterling Financial. Upon information and belief, Garcia maintains residences at 2358 N.W. 23rd Road, Boca Raton, Florida 33432, and at 234 S. Halifax Drive, Ormond Beach, Florida and/or 638 High Street, Boca Raton, FL 33432.

9.      vFinance is a corporation incorporated under the laws of the state of Florida, with its principal place of business at 3010 North Military Trail, Suite #300, Boca Raton, Florida, 33431.

10.     Upon information and belief, vFinance is a successor-in-interest to Sterling Financial.

## FACTS

### A.    THE POLICIES

11.     The Polices provide Sterling with claims made and reported Securities Broker/Dealer Professional Liability Insurance, subject to their stated terms, conditions, exclusions and endorsements.

12.     The Policies are each subject to a $1 million limit of liability for any one Loss, and a $2 million limit of liability in the aggregate.  Each policy's limit of liability is in excess of a $100,000 retention (hereinafter referred to as "Retention Amount") for each and every claim.

13.     Sterling falls within the definition of "Insured" under Definition (f) and endorsements to the Policies.

14.     Section 1.C.1 of the Policies provides:

> The Insurer shall have the right and duty to defend, subject to and as part of the Limits of Liability, any Claim made against an Insured during the Policy Period or Discovery Period (if applicable) and reported in writing to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act for which coverage if afforded by this policy, even if any of the allegations of the Claim are groundless, false or fraudulent.

15.     The Policies define "Loss" in relevant part, as "damages, judgments, settlements and Defense Costs. . . ."

16.     The Policies define "Defense Costs" in relevant part, as "reasonable and necessary fees, costs and expenses consented to by the Insurer . . . resulting solely from the investigation, adjustment, defense and appeal of a Claim against an Insured(s). . . ."

17.     Under Section 1.C.2 of the Policies, a "Settlement Opportunity" exists when the "Insurer recommends a settlement that does not exceed the policy's applicable Limit of Liability and which is acceptable to the claimant."

18.     Section 1.C.2 of the Policies provides, in pertinent part, that if Sterling does not consent to a "Settlement Opportunity" within thirty (30) days, then the Insurers' "liability for the Claim shall not exceed the amount for which [they] could have settled the Claim plus Defense Costs incurred up to the date of the refusal to settle."

19.     Section 1.C.2 of the Policies also provides:

> In the event the Insured(s) refuse to refuse to consent to a Settlement Opportunity, the Insurer shall have the right but not the obligation to continue the defense of the Claim after the date of the refusal to settle and may in such a case, at any time after the date of the refusal to settle, withdraw from the further defense of the Claim by tendering control of the defense to the Insured.

20.     Section 5, "Limits of Liability," of the Policies provides that "Defense Costs are not payable by the Insurer in addition to the Limit of Liability.  Defense Costs are part of Loss and as such are subject to the Limit of Liability for Loss."

21.     Section 6, "Retention," of the Policies provides:

> The Insurer shall only be liable for the amount of Loss arising from a Claim which is in excess of the applicable Retention Amount . . .

14

such Retention Amount **to be borne by the Insureds** and shall remain uninsured with regard to all Loss arising from any Claim (emphasis added).

22.     Sections 8 and 7, "Notice/Claim Provisions," of the Policies provide, in relevant part:

> (a) The Broker/Dealer or the Insured, shall as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of a Claim made against an Insured as soon as practicable during the Policy Period or during the Discovery Period (if applicable) as long as such Claim(s) is reported no later than 30 days after the date such Claim was first made against an Insured.

**B.      THE INSURERS ACCEPTED COVERAGE FOR FOUR CLAIMS TENDERED BY STERLING**

23.     *Roger Wheeler, et al. v. Cardinal Capital Management, Inc., et al.*, NASD Case No. 05-01877 (the "Wheeler Claim") is a claim against, *inter alia*, Sterling that was filed with the NASD in California on or about April 18, 2005 and, upon information and belief, remains pending.

24.     At least three other claims are pending against, *inter alia*, Sterling: (1) *Carmella Donnino, et al v. Sterling Financial Investment Group, Inc., et al.*, NASD Case No. 05-03710 (the " Donnino Claim"); (2) *Charles P. Camilleri and Frances Camilleri v. Sterling Financial Investment Group, Inc., et al.*, NASD Case No. 05-05582 (the "Camilleri Claim"); and (3) *Howard Frank and Diana Frank v. JW Genesis, Inc. n/k/a Wachovia Securities Financial Network, LLC, et al.*, NASD Case No. 05-06709 (the "Frank Claim").

25.     The Donnino Claim was filed with the NASD in Florida on July 18, 2005.  The Camilleri Claim was filed with the NASD in Florida on October 31, 2005.  The Frank Claim was filed with the NASD in Florida on January 4, 2006.

26.     Sterling tendered the Wheeler Claim to the Insurers subscribing to policy number SF403040X.

27.     Sterling tendered the Donnino, Camilleri and Frank Claims to the Insurers subscribing to policy number FD0504362.

28.     With the consent of Sterling, the Insurers assigned the law firm of Marshall, Dennehey, Warner, Coleman & Goggin as defense counsel to defend the Wheeler Claim.

29.     With the consent of Sterling, the Insurers assigned the law firm of Marshall, Dennehey, Warner, Coleman & Goggin as defense counsel to defend the Donnino and Camilleri claims, and the law firm of Sutherland Asbill & Brennan to defend the Frank Claim.

30.     The Insurers accepted coverage for each claim subject to the terms, conditions, and exclusions of the Policies and their rights under the Policies and at law.

31.     The Insurers have notified Sterling that the "Insureds" under the Policies must satisfy the Retention Amount for each claim before the Insurers had any obligation to pay Loss under the Policies.

## C.     STERLING BREACHED CONTRACTUAL OBLIGATIONS UNDER THE POLICIES

32.     Sterling has, without valid reason or excuse, failed and refused to satisfy their obligations under Section 6 of the Policies to pay the Retention Amount.

33.     Sterling breached its obligations under Section 6 of the Policies by failing and refusing to make Loss payments in connection with the Wheeler, Donnino, Camilleri and Frank Claims, including payments for Defense Costs within the Retention Amount.

34.     As a result of the breaches by Sterling, the Insurers have paid or will pay Defense Costs in connection with the Wheeler, Donnino, and Camilleri Claims totaling $113,947.49.

35.     Each of the payments the Insurers have made or will make for each Claim are for Loss amounts comprised of Defense Costs within the Retention Amount ($27,814.51 for the Wheeler Claim, $28,290.58 for the Donnino Claim and $57,842.40 for the Camilleri Claim).

36.     With the knowledge and consent of Sterling, defense counsel engaged in settlement discussions with the claimants in each of the four Claims.  During that process, the Insurers and Sterling agreed that it was reasonable to determine whether and for what amount each of the Claims could be settled.

37.     Once defense counsel obtained settlement demands and began to negotiate lower demands, the Insurers promptly advised Sterling and its counsel that "Settlement Opportunities" under Section 1.C.2 of the Policies had become available in each Claim. Copies of these letters are attached hereto as Exhibits "A," "B," "C," and "D."

38.     In each case, the "Settlement Opportunity" was, alone or when added to the incurred Defense Costs, less than the $100,000 Retention Amount applicable to each Claim.

39.     Defense counsel advised the Insurers and Sterling that, in their opinion, the settlement demands in each Claim were reasonable.

40.     Upon information and belief, each Claim could have been settled for a Loss amount that is within the Retention Amount, including the Defense Costs that had been incurred.

41.     Upon information and belief, Sterling has not resolved any of the four Claims in compliance with Section 1.C.2.

42.     Consequently, pursuant to Section 1.C.2 of the Policies, the Insurers advised Sterling and defense counsel that they were withdrawing coverage for each of the four Claims. Copies of these letters are attached hereto as Exhibits "E," "F," "G," and "H."

43.     Because of the failure and refusal of Sterling to pay the Defense Costs incurred by defense counsel, the Insurers have paid or will pay amounts that Sterling is required to pay.

44.     The Insurers have demanded that Sterling repay the Defense Costs the Insurers have paid or will pay to the respective defense counsel.

45.     Sterling has failed and refused to repay the Defense Costs the Insurers have paid or will pay and that defense counsel have incurred.

46.     As a result, and pursuant to the Alternative Dispute Resolution Provision in Sections 18 and 16 of the Policies (the "ADR Provision"), the Insurers filed a demand for arbitration against Sterling with the American Arbitration Association ("AAA") on September 26, 2006.  Copies of the original and amended arbitration demands are attached hereto as Exhibits "I" and "J."

47.     Sterling rejected the Insurers' arbitration demand and elected non-binding mediation administered by the AAA.

48.     A mediation session between the parties took place on March 26, 2007; the mediation terminated without the parties reaching a resolution because Sterling refused to meaningfully participate.

49.     Pursuant to the ADR provisions of the Policies, more than 120 days after the termination of the mediation has elapsed.

## COUNT I
## DECLARATORY JUDGMENT

### DEFENDANTS ARE LIABLE FOR THE RETENTION
### AMOUNT APPLICABLE TO EACH CLAIM

50.     The Insurers repeat and reallege the allegations contained in paragraphs 1-49 as if fully set forth herein.

51.     The Policies' limits of liability are subject to and in excess of the Retention Amount applicable for each and every claim.

52.     Section 6 of the Policies provides that "[t]he Insurer shall only be liable for the amount of Loss arising from a Claim which is in excess of the applicable Retention Amount…" and that the Retention Amount is to be borne by the Insureds.

53.     Under Section 6 the Policies, Sterling bears the responsibility of paying all Loss, including Defense Costs within the Retention Amount of the Policies, for the Wheeler, Donnino, Camilleri, and Frank Claims.

54.     Under Section 6 of the Policies, the Insurers have no obligation to pay Loss, including Defense Costs, until the Retention Amount has been exhausted for each Claim.

55.     To date, Sterling has refused to acknowledge the Retention Amount, its sole responsibility for the Retention Amount and that the Insurers are only liable for Loss, including Defense Costs, that exceeds the Retention Amount.

56.     An actual dispute exists between the Insurers and Sterling regarding their rights and obligations under the Policies with respect to the Retention Amount.

57.     Accordingly, the Insurers seek a declaration from this Court that: (1) the Wheeler, Donnino, Camilleri and Frank Claims are subject to a separate Retention Amount for

19

each Claim; (2) Sterling bears the sole responsibility of paying all Loss, including Defense Costs, within the Retention Amount for each Claim; and (3) the Insurers have no obligation to pay Loss, including Defense Costs, until the Retention Amount has been exhausted or exceeded for each Claim.

## COUNT II
## DECLARATORY JUDGMENT

### THE INSURERS PROPERLY INVOKED SECTION 1.C.2 OF EACH POLICY

58.     The Insurers repeat and reallege the allegations contained in paragraphs 1-49 as if fully set forth herein.

59.     Pursuant to Section 1.C.2 of each policy, if Sterling does not consent to a "Settlement Opportunity" within thirty (30) days, then the Insurers' "liability for the Claim shall not exceed the amount for which [they] could have settled the Claim plus Defense Costs incurred up to the date of the refusal to settle."

60.     In the event Sterling refuses to consent to a Settlement Opportunity, pursuant to Section 1.C.2, the Insurers may "at any time after the date of the refusal to settle, withdraw from the further defense of the Claim by tendering control of the defense to the Insured."

61.     The claimants in the Wheeler, Donnino, Camilleri and Frank Claims have demanded $30,000, between $32,000 and $35,000, $46,000 and $30,000, respectively.

62.     Sterling has refused to consent to "Settlement Opportunities" in the Wheeler, Donnino, Camilleri and Frank Claims.

63.     Because the total Loss for each Claim based on the settlement demands were within the Retention Amount for each Claim, the Insurers withdrew from the defense of those Claims.

64.     An actual dispute exists between the Insurers and Sterling regarding their rights and obligations under the Policies for the Claims.

65.     Accordingly, the Insurers seek a declaration from this Court that they are not obligated to provide a defense to or indemnify Sterling for the Wheeler, Donnino, Camilleri and Frank Claims.

## COUNT III
## BREACH OF CONTRACT AGAINST
## STERLING FINANCIAL, GARCIA AND VFINANCE

66.     The Insurers repeat and reallege the allegations contained in paragraphs 1-49 as if fully set forth herein.

67.     Section 6 of the Policies provides that "[t]he Insurer shall only be liable for the amount of Loss arising from a Claim which is in excess of the applicable Retention Amount..." and that such Retention Amount is to be borne by the Insureds.

68.     Under Section 6 of the Policies, Sterling bears the responsibility of paying all Loss, including, Defense Costs, within the Retention Amounts of the Policies for the Wheeler, Donnino, Camilleri and Frank Claims.

69.     Sterling has breached its obligations under the Policies by refusing to pay Loss within the Retention Amounts, for the Wheeler, Donnino, Camilleri and Frank Claims.

70.     As a result of Sterling's breach of its obligations under Section 6 of the Policies, the Insurers have paid or will pay $113,947.49 to the respective defense counsel for the Wheeler, Donnino and Camilleri Claims.

71.  The amounts that the Insurers have paid or will pay, all of which are within the Retention Amount for each Claim, total $27,814.51 for the Wheeler Claim, $28,290.58 for the Donnino Claim and $57,842.40 for the Camilleri Claim.

72.     vFinance, as Sterling Financial's successor-in-interest, and Garcia are liable to the Insurers for any damages caused by Sterling.

73.     The Insurers have suffered damages in the amount of $113,947.49, plus interest and costs, as a result of the breach of contract by Sterling.

WHEREFORE, the Insurers respectfully request that this Court grant them the following relief:

a)      a Judgment declaring that the coverage under the Policies is subject to the Retention Amount; that Sterling is liable for paying all Loss, including Defense Costs, within the Retention Amount; and the Insurers have no obligation to pay any Loss, including Defense Costs, until the Retention Amount has been exhausted or exceeded for each Claim.

b)      a Judgment declaring that the Insurers have no obligation to further defend or indemnity Sterling in connection with the Wheeler, Donnino, Camilleri, and Frank Claims;

Case No.: 9:07-cv-80788-KLR

c)    an Order requiring Sterling Financial, Garcia, vFinance, and each of them, to

pay to the Insurers an amount no less than $113,947.49, plus interest and costs,

as a result of the breach of contract by Sterling; and

d)    such other, further or different relief as appears just and proper to this Court.

Respectfully submitted,

/s/ Jennifer Anderson Hoffman
Jennifer Anderson Hoffman (FBN: 981605)
email: janderson@marlowconnell.com
Marlow, Connell, Valerius, Abrams
 Adler, Newman & Lewis
4000 Ponce de Leon Boulevard, Suite 570
Coral Gables, FL 33146
Phone: (305) 446-0500
Fax: (305) 446-3667
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day September, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document was served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing

By:    /s/ Jennifer Anderson Hoffman
            Jennifer Anderson Hoffman

23

**SERVICE LIST**
Sterling Financial Investment Group, etc. v. AON Limited, et al.
Case No. 9:07-cv-80788 KLR
United States District Court, Southern District of Florida

Ejola Christlieb Cook, Esquire
Ticktin & Rodriguez, P.A.
Suite 160
3700 Coconut Creek Parkway
Coconut Creek, FL 33066
Phone: (954) 978-8950
Fax: (954) 978-9513
Counsel for Plaintiff
*Served via U.S. Mail*

# EXHIBIT K

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 907-CV-80788-KLR

STERLING FINANCIAL INVESTMENT
GROUP, INC., a Florida corporation
(and CHARLES GARCIA
individually)

       Plaintiffs/Counter-Defendants,

v.

AON LIMITED, a foreign corporation,
and SWINGLEHURST LIMITED,
BRIT SYNDICATES, a foreign corporation,
LEXINGTON INSURANCE COMPANY,
a foreign corporation, ACE SYNDICATES,
a foreign corporation, and WURTT,
a foreign corporation,

       Defendants/Counter-Plaintiffs,

v.

VFINANCE INVESTMENTS, INC.,

       Third Party Defendant.

_____/

## PLAINTIFFS' REPLY TO AFFIRMATIVE DEFENSES AND ANSWER TO COUNTERCLAIMS AND THIRD PARTY COMPLAINT

The Plaintiff-Counter Defendants, STERLING FINANCIAL INVESTMENT GROUP,

INC., a Florida corporation (hereinafter "STERLING"), CHARLES GARCIA, (hereinafter

"GARCIA") (STERLING and GARCIA hereinafter sometimes collectively referred to as

"PLAINTIFFS"), and Third-Party Defendant VFINANCE INVESTMENT, INC., (hereinafter

"VFINANCE"), (STERLING, GARCIA, and VFINANCE, hereinafter sometimes collectively

referred to as "COUNTER-DEFENDANTS") by and through their undersigned attorneys,

CASE NO: 907-CV-80788-KLR

hereby responds as follows:

### Reply to Affirmative Defenses

1.    The Defendants' first Affirmative Defense is denied as the Complaint speaks for itself, and Defendants admit in their response in paragraph 22, of their Answer and Affirmative Defenses, that "an actual controversy exists between the Plaintiff and them."

2.    The Defendants' second Affirmative Defense is denied as the Defendants have filed Pleadings, including a Counterclaim and Third Party Complaint in this venue, thus effectively waiving any claim for improper venue.

3.    The Defendants' third Affirmative Defense is denied as the Defendants brought a Counterclaim and included a third party defendant, and fail to indicate in their pleadings with any specificity who the necessary party is, and why they are necessacity defeats this cause of action.

4.    The Defendants' fourth Affirmative Defense is denied as the Defendants admit in their response in paragraph 22, of their Answer and Affirmative Defenses, that "an actual controversy exists between the Plaintiff and them," and the obligations and rights pursuant to terms and conditions of the underlying POLICIES constitute the crux of this suit.

5.    The Defendants' fifth Affirmative Defense is denied as the Defendants admit in their response in paragraph 22, of their Answer and Affirmative Defenses, that "an actual controversy exists between the Plaintiff and them," and the obligations and rights pursuant to terms and conditions of the underlying POLICIES constitute the crux of this suit.

2

CASE NO: 907-CV-80788-KLR

6.    The Defendants' sixth Affirmative Defense is denied as the Defendants fail to support their allegations in the Affirmative Defense with sufficient facts as such it is vague and ambiguous.

7.    The Defendants' seventh Affirmative Defense is denied as the Defendants fail to support the allegations in the Affirmative Defense with sufficient facts as such it is vague and ambiguous.

8.    The Defendants' eighth Affirmative Defense is denied as the Defendants fail to support the allegations in the Affirmative Defense with sufficient facts as such it is vague and ambiguous.

9.    The Defendants' ninth Affirmative Defense is denied as the Defendants fail to support the allegations in the Affirmative Defense with sufficient facts as such it is vague and ambiguous.

10.    The Defendants' tenth Affirmative Defense is denied as the terms and conditions of the Defendants' obligations to the Plaintiffs are the primary basis for this suit.

11.    The Defendants' eleventh Affirmative Defense is denied in that the claims alleged in the Complaint pertaining to the underlying arbitrations and the Defendants' obligations pursuant to the POLICIES are concurrent and therefore fall squarely within the time of the coverage.

12.    The Defendants' twelfth Affirmative Defense is denied as this suit was initiated in a timely manner pursuant to the underlying POLICIES, mediation between the parties failed, and the suit was commenced on August 6, 2006 just after the 120 day waiting period was exhausted.

3

CASE NO: 907-CV-80788-KLR

### Answer to Counter Plaintiffs' Counterclaim and Third Party Complaint

13.    The COUNTER-DEFENDANTS admit the averments alleged in paragraphs 1 through 7, 9, 11,12, 13, 14, 15, 16,17,18,19,20,22, 25, 26,27,28,29,30, 42,44, 46, 47, 49, 52, 56, 59, 60, and 64 of the COUNTER-PLAINTIFFS' Counterclaim and Third Party Complaint.

14.    The COUNTER-DEFENDANTS are without sufficient information to admit or deny and must therefore deny paragraphs 31, 36, 38, 39, 40, 57, 61, 63, 65, 71, and 73 of the Counter-Plaintiff's Counterclaim, and Third Party Complaint, and demands strict proof thereof.

15.    The COUNTER-DEFENDANTS deny paragraphs 10, 24, 32, 33, 34, 41, 43, 45, 51, 53,54,55, 62,68, 69, 70, and 72 of the COUNTER-PLAINTIFFS' Counterclaim and Third Party Complaint.

16.    No response is required for paragraphs 50, 58, and 66 of the COUNTER-PLAINTIFFS' Counterclaim and Third party Complaint.

17.    As to paragraph 8 of Counter-Plaintiffs' Counter-Claim, admit as to Charles Garcia's address at 638 High Street, Boca Raton, Florida 33432, deny as to all other alleged addresses stated herein.

18.    As to paragraph 21 of Counter-Plaintiffs' Counter-Claim, admit the quote from Section 6 of the policy, deny the emphasis added by the Counter-Plaintiffs.

19.    As to paragraph 23 of Counter-Plaintiffs' Counter-Claim, admit Roger *Wheeler, et. al v. Cardinal Capital Management, Inc., et al.*, was a NASD case against *inter alia*, Sterling which was filed in California on or about April 18, 2005, denied as to still

4

CASE NO: 907-CV-80788-KLR

pending.

20.    As to paragraph 37 of Counter-Plaintiffs' Counter-Claim, admits that the letters attached to Counter Claim as exhibits "A," "B," "C" regarding settlement issues, however, deny that exhibit "D" is a settlement letter as detailed in paragraph 37, and deny defense counsel began to negotiate lower demands.

21.    As to paragraph 48 of Counter-Plaintiffs' Counter-Claim, admit that a mediation session took place on March 26,2007 and no resolution was reached, deny that Sterling refused to meaningfully participate.

22.    As to paragraph 67 of Counter-Plaintiffs' Counter-Claim, admit the quote is from Section 6 of the polices, however deny Counter-Plaintiff's interpretation of the aforementioned quote.

23.    Any and all allegations in the Counterclaim and Third Party Complaint which are not specifically admitted, herein are hereby denied.

### Affirmative Defenses to Counter-Plaintiffs' Counterclaim and Third Party Complaint

24.    As COUNTER-DEFENDANTS first Affirmative Defense fails to state a cause of action against GARCIA and VFINANCE.

25.    As a second Affirmative Defense the Counter-Plaintiffs interfered with the business relationship between STERLING and any third party defense counsel regarding possible settlement resolutions and payment of attorneys fees.

26.    As a third Affirmative Defense, Counter-Plaintiffs' own contentious conduct, and their refusal to abide by established policies and mediate the underlying issues in good faith bars any claim for damages by the doctrine of unclean hands.

5

CASE NO: 907-CV-80788-KLR

27.    As a fourth Affirmative Defense, any damages suffered by the Counter-Plaintiffs are attributable solely to their own conduct.

WHEREFORE, the COUNTER- DEFENDANTS ask that the Counterclaim and Third Party Complaint against them be dismissed and that the COUNTER-DEFENDANTS be awarded its costs and attorneys' fees and any other relief that this Honorable Court may deem to be just. Furthermore, the COUNTER-DEFENDANTS demands a trial by jury on all issues so triable in regard to the Counterclaim and Third Party Complaint.

Dated this 10th day of October, 2007.

Respectfully Submitted

By:__/s/ Ejola Cook ,Esq.
PETER TICKTIN
FLORID BAR NO. 887935
EJOLA CHRISTLIEB COOK
FLORIDA BAR NO. 0010327

TICKTIN RODRIGUEZ, P.A.
3700 COCONUT CREEK PARKWAY, SUITE 160, COCONUT CREEK, FLORIDA 33066
TELEPHONE: (954) 978-8950

CASE NO: 907-CV-80788-KLR

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed this **10th day of October, 2007** with the Clerk of Court using CM/ECF. I also certify that the foregoing is being served this day upon all counsel of record Identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

> **TICKTIN RODRIGUEZ, P.A.**
> Attorneys for the Plaintiff
> Coconut Creek Parkway, Suite 160
> Coconut Creek, Florida 33066
> Telephone Number: (561) 392-6933
> Fax Number:        (561) 392-5158
> Pticktin@trlawoffice.com
> Ecook@trlawoffice.com

> By:__/s/ Ejola Cook ,Esq.
>     PETER TICKTIN
>     FLORID BAR NO. 887935
>     EJOLA CHRISTLIEB COOK
>     FLORIDA BAR NO. 0010327

7

CASE NO: 907-CV-80788-KLR

## SERVICE LIST

Peter Ticktin, Esquire
Ticktin Rodriguez, P.A.

**Counsel for Plaintiff/Counter Defendants**
3700 Coconut Creek Parkway
Suite 160
Coconut Creek, Florida 33066
Tel: (954) 978-8950
Fax:(954) 978-9513
Email: pt@trlawoffice.com

Jennifer Anderson Hoffman, Esquire
Marlow, Connell, Valerius, Abrams Adler,
Newman & Lewis
**Counsel for Defendants/Counter Plaintiffs**
4000 Ponce de Leon Boulevard,
Suite 570
Coral Gables, Florida 33146
Tel: (305) 446-0500
Fax: (305) 446-3667
Email: janderson@marlowconnell.com

8

# EXHIBIT L



Policy No. SF4030Y0X

(f)   "Insured" means:

   (1)   the Broker/Dealer

   (2)   any past, present or future director, officer, partner or employee of the Broker/Dealer, and

   (3)   any past, present or future Registered Representatives of the Broker/Dealer.

(g)   "Interrelated Wrongful Act(s)" means Wrongful Acts which are the same, related or continuous, or Wrongful Acts which arise from the same, related or common nexus of facts regardless of whether such Claims involve the same or different claimants, Insureds or legal causes of action. Further, and without limiting the aforementioned, the following Claims shall automatically be deemed to allege Interrelated Wrongful Acts:

   1.   Claims in connection with securities of any entity (or affiliated entities) which become(s) the subject of any bankruptcy, insolvency, receivership, liquidation or reorganization proceeding, or

   2.   Claims in connection with securities purchased in connection with an offering (or series of offerings) of securities issued by the same entity or affiliated entities;

(h)   "Investment Banking Activity" means, but is not limited to, the underwriting, syndicating or promotion of any security or partnership interest in connection with any of the following: any actual, alleged or threatened merger, acquisition, divestiture, tender offer, proxy contest, leveraged buy-out, going private transaction, reorganization (voluntary or involuntary), capital restructuring, recapitalization, spin-offs, primary or secondary offerings of securities (regardless of whether the offering is a public offering or private placement), dissolution or sale of all or substantially all of the assets or stock of a business entity, or effort to raise or furnish capital or financing for any enterprise or entity, or any acquisition or sale of securities by the Broker/Dealer for its own account, or any activity by any Insured as a specialist or market maker (including the failure to make a market) for any securities, or any disclosure requirements in connection with any of the foregoing. Investment Banking also includes the rendering of advice or recommendations or the rendering of a written opinion in connection with any of the foregoing.

(i)   "Loss" means damages, judgements, settlements and Defense Costs; however, Loss shall not include:

   (1)   salaries of any Insured;

   (2)   the cost of complying with any settlement for or award of non-monetary relief;

   (3)   civil or criminal fines or penalties imposed by law, punitive or exemplary damages, the multiplied portion of multiplied damages, taxes, any amounts for which the Insureds are not financially liable or which are without legal recourse to the Insureds, or matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed; not withstanding the foregoing, Loss shall include awards of punitive or exemplary damages



retention amount (inclusive of Defense Costs), then the Insured's consent to such disposition shall not be required for such Claims.

2.    **DEFINITIONS**

(a)    "Approved Activity" means a service or activity performed by the Registered Representative on behalf of the Broker/Dealer which:

(1)    has been approved by the Broker/Dealer to be performed by the Registered Representative, and is

(2)    in connection with the purchase or sale of a specific security, annuity or insurance product which has been approved by the Broker/Dealer to be transacted through the Registered Representative, and for which

(3)    the Registered Representative has obtained all licenses required by the Broker/Dealer or applicable law or regulation

(b)    "Broker/Dealer" means the Broker/Dealer designated in the Schedule and any Subsidiary thereof.

(c)    "Claim" means the following brought by an Insured's customer or client in such capacity:

(1)    a written demand for monetary relief; or

(2)    a civil or arbitration proceeding for monetary or non-monetary relief

which is commenced by:

(i)    service of a complaint or similar pleading; or

(ii)    receipt or filing of an arbitration demand or statement of claim.

(d)    "Defense Costs" means reasonable and necessary fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of a Claim against an Insured(s), but excluding salaries of any Insured.

(e)    "Failing to Supervise" means the failure to create, implement, enact or enforce any applicable supervisory procedures required by law, common or statutory, regulation, governmental authority or regulation authority or self-regulatory authority, including but not limited to the procedures established by the National Association of Securities Dealers as outlined in Section 3010 of the NASD, Inc. Manual, and any amendments thereto.

(f)    "Insured" means:

(1)    the Broker/Dealer

(2)    any past, present or future director, officer, partner or employee of the Broker/Dealer, and

(3)    any past, present or future Registered Representatives of the Broker/Dealer.

EXHIBIT M

 **AIG** American International Companies®

Name Of Insurance Company To Which Application Is Made:
(herein called the Company)

## SECURITIES BROKER/DEALER'S
## ERRORS AND OMISSIONS LIABILITY INSURANCE RENEWAL APPLICATION

### IF A POLICY IS ISSUED, IT WILL BE ON A CLAIMS-MADE BASIS

**NOTICE: THE POLICY PROVIDES THAT THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGEMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. FURTHER NOTE THAT AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE DEDUCTIBLE AMOUNT.**

PLEASE ATTACH COPIES OF THE FOLLOWING:

*Securities Broker/Dealer's latest audited annual report, as well as latest 10-K filed with the SEC (if publicly traded); *See attached.*
*Latest quarterly Focus part II reports as filed with regulatory bodies; *See attached Focus*
*Copy of the most current BD form filed with the SEC; *See attached*
*List of approved investment vehicles for sale by Securities Broker/Dealer's Registered Representatives, including *See BID* approved life insurance companies and their products, as well as adherence guidelines;
*Securities Broker/Dealer's "due diligence" guidelines for approving investment vehicles to be sold; *See BID*
*Comments and recommendations made by the SEC, NASD, state securities regulatory authority, state insurance department or any other regulatory body including any self regulatory organization following its latest exam of the Securities Broker/Dealer. Also, please attach the firm's response letter.

1.  (a)  Name and Mailing Address of Securities Broker/Dealer:

Sterling Financial Investment Group, Inc.
1200 N. Federal Highway, Suite 400
Boca Raton, FL 33432

(b)  State of Incorporation (if applicable): Florida

(c)  Year Securities Broker/Dealer established: 1996

(d)  Number of offices in USA and Canada: 36

(e)  Number of offices elsewhere: 9

(f)  Name of Parent(s) (list both immediate and ultimate parents):

Sterling Financial Group of Companies, Inc.

2.    (a)    Limit of Liability requested:

           $*1,000,000* Each Wrongful Act or series of continuous, repeated of interrelated Wrongful Acts.

           $*2,000,000* in the Aggregate

   (b)    Deductible requested: $ *25,000*

3.    (a)    Has the Securities Broker/Dealer been the subject of any mergers and/or acquisitions during the past year? Yes____ No *✓* (if "yes", attach full details)

   (b)    Has the Securities broker/Dealer revealed publicly that it is the subject of any pending merger and/or acquisitions? Yes____ No *✓* (if "yes", attach full details)

4.    Number of Registered Representatives:

   (a)    Producers: *114*

   (b)    Non-Producing Executive/Management: *4*

   (c)    Other (back office): *21*

   (d)    Total: *167*

5.    (a)    Do all Registered Representatives enter into a standard contract with the Securities Broker/Dealer? Yes *✓* No____

   (b)    Does the Securities Broker/Dealer's contract with its Registered Representatives provide for indemnification of the Securities Broker/Dealer? Yes *✓* No____

   (c)    Does the Securities Broker/Dealer's contract with its Registered Representatives contain an arbitration clause? Yes *✓* No____

5.    State percent of revenues derived from the following service areas:

   (a)    Full service securities brokerage       *95%*

   (b)    Discount securities brokerage       _____

   (c)    Financial planning       _____

   (d)    Market timing services       _____

   (e)    Private placements       _____

   (f)    market making/specialist activities       _____

   (g)    Underwriting activities       _____

   (h)    Other (please describe)       *5%*
            *Investment Banking*

           TOTAL             100%

7.  (a)  Total annual commission revenues for all products, including life insurance and annuities sales $ *26,004,668.05*

    (b)  State percent of commission revenues which are derived from the following:

| | | |
|---|---|---|
| Listed Stocks | *38.9%* | Commodities |
| Unlisted Stocks | *1%* | Commodity Futures |
| Penny Stocks (unlisted securities trading for less than $ 5) | | Mutual Funds *5.65%* |
| | | Other Limited or Limited Liability Partnerships |
| Proprietary Partnerships | | |
| | | Variable Annuities |
| Listed Bonds | *53.18%* | |
| | | Other Annuities |
| Unregistered Stocks or Bonds | | |
| | | Life Insurance |
| Commercial Paper | | Other (please specify) |
| Option Contracts | *1.27%* | |

    TOTAL                                                                                100%

    (c)  Average daily trading volume *$1,600,000*

    (d)  Total number of securities trades executed: *6400* per month/year (circle one)

    (e)  Average dollar value per securities trade: *5,000*

    (f)  What percent of all brokerage accounts are margin accounts: *15%*

    (g)  What percent are discretionary accounts: *0*

    (h)  What percent are individual: *95%* Institutional: *5%*

8.  Does the Securities Broker/Dealer clear its own accounts? Yes _____ No *✓* If "No", indicate name of clearing agent used. _____ Is there a hold harmless clause in the contract with the clearing agent to protect the Securities Broker/Dealer for improperly executed trades? Yes _____ No _____
    *→ All clearing business goes through Fidelity, Fortis + Legent.*

9.  (a)  Do all customers or clients sign a standard contract?
        Yes _____ No _____

    (b)  Who approves of modifications to the Securities Broker/Dealer's standard client contract?
        *Both - Introducing + Clearing B/D.*

    (c)  What percentage of client agreements contain arbitration clauses? *100%*

    (d)  Is the arbitration clause mentioned in (c) above ever deleted from the client agreement?
        Yes _____ No *✓* (If "Yes", what percentage of agreements is it deleted from? _____ %)

(e)    Does the Securities Broker/Dealer's compliance department review all client contracts?
Yes __✓__ No_____

(f)    Describe the Securities Broker/Dealer's procedures for reviewing new accounts:

_Branch manager reviews the new accounts &_
_must sign off._

10.    (a)    Give number of notices, letters, and complaints received in the past three years by the Compliance
Department: _43_

(b)    How many were unsettled after 60 days? _15_

10.    Please provide the following information regarding other insurance carried by the Securities Broker/Dealer:

|  | INSURER | LIMIT | TERM |
|---|---|---|---|
| Current Directors and Officers Insurance Policy | Houston Casualty Co. | 2,000,000/5,000,000 | 5/25/04 - 5/25/05 |
| Current Fidelity Bond | Chubb Group of Ins. Co. | 1,000,000 | 11/1/04 - 11/1/05 |
| Other similar insurance (describe) | Property + Casualty- Valley Forge Ins.Co. | 50,000 | 11/3/04-11/5/05 |

IT IS AGREED THAT THIS RENEWAL APPLICATION IS A SUPPLEMENT TO THE APPLICATIONS(S) WHICH ARE PART OF THE EXPIRING POLICY, AND THAT THOSE APPLICATIONS(S) TOGETHER WITH THIS RENEWAL APPLICATION CONSTITUTE THE COMPLETE APPLICATION THATSHALL BE THE BASIS OF THE CONTRACT AND SHALL FORM PART OF THE POLICY SHOULD A POLICY BE ISSUED.

THE UNDERSIGNED AUTHORIZED OFFICERS OF THE SECURITIES BROKER/DEALER DECLEARE THAT THE SATEMENTS SET FORTH HEREIN ARE TRUE. THE UNDERSIGNED AUTORIZED OFFICERS AGREE THAT IF THE INFORMATION SUPPLIED ON THIS APPLICATION CHANGES BETWEEN THE DATE OF THIS APPLICATION AND THEEFFECTIVE DATE OF THE INSURANCE, THEY (UNDERSIGNED) WILL IMMEDIATELY NOTIFY THE COMPANY OF SUCH CHANGES, AND THE COMPANY MAY WITHDRAW OR MODIFY ANY OUTSTANDING QUOTATIONS AND/OR AUTORIZATION OR AGREEMENT TO BIND THE INSURANCE.

SIGNING OF THIS APPLICATION DOES NOT BIND THE COMPANY TO ISSUE OR THE BROKER/DEALER TO BY THE INSURANCE, BUT IT IS AGREED THAT THIS FORM SHALL BE THE BASIS OF THE CONTRACT SHOULD A POLICY BE ISSUED AND IT WILL BE ATTACHED TO AND MADE PART OF THE POLICY.

ALL WRITTEN STATEMENTS AND MATERIALS FURNISHED TO THE COMPANY IN CONJUNCTION WITH THIS APPLICATION ARE HEREBY INCORPORATED BY REFERENCE INTO THIS APPLICATION AND MADE PART HEREOF.

NOTICE TO ARKANSAS APPLICANTS: "ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT, OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON."

**NOTICE TO COLORADO APPLICANTS:** "IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE COMPANY.  PENALTIES MAY INCLUDE IMPRISONMENT, FINES, DENIAL OF INSURANCE, AND CIVIL DAMAGES.  ANY INSURANCE COMPANY OR AGENT OF AN INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO A POLICYHOLDER OR CLAIMANT FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICYHOLDER OR CLAIMANT WITH REGARD TO A SETTLEMENT OR AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN THE DEPARTMENT OF REGULATORY AUTHORITIES."

**NOTICE TO FLORIDA APPLICANTS:** "ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY IN THE THIRD DEGREE."

**NOTICE TO KENTUCKY APPLICANTS:** "ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME."

**NOTICE TO MAINE APPLICANTS:** "IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES OR A DENIAL OF INSURANCE BENEFITS."

**NOTICE TO NEW JERSEY APPLICANTS:** "ANY PERSON WHO INCLUDES ANY FALSE OR MISLEADING INFORMATION ON AN APPLICATION FOR AN INSURANCE POLICY IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES."

**NOTICE TO NEW MEXICO APPLICANTS:**  "ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES."

**NOTICE TO NEW YORK APPLICANTS:** "ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATED VALUE OF THE CLAIM FOR EACH SUCH VIOLATION."

**NOTICE TO OHIO APPLICANTS:** "ANY PERSON WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT HE IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT IS GUILTY OF INSURANCE FRAUD."

**NOTICE TO PENNSYLVANIA APPLICANTS:** "ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION OR CLAIM CONTAINING ANY FALSE INCOMPLETE OR MISLEADING INFORMATION SHALL UPON CONVICTION BE SUBJECT TO IMPRISONMENT FOR UP TO SEVEN YEARS AND PAYMENT OF A FINE OF UP TO $15,000."

Signed: _____

Date: __4/13/05__

Title: _Chief Executive Officer_

(Must be Signed By the President, if a Corporation, a General
Partner if a Partnership)

Signed: _____

Date: _____

Title: _Chief Compliance Officer_

(Must be Signed by the Chief Compliance Officer)

Insurance Broker: _____

Address: _____

_____

IF A POLICY IS ISSUED THE APPLICATION IS ATTACHED TO AND MADE A PART OF THE POLICY SO IT IS
NECESSARY THAT ALL QUESTIONS BE ANSWERED IN DETAIL.

PLEASE READ THE FOLLOWING STATEMENT CAREFULLY AND SIGN BELOW WHERE INDICATED. IF A POLICY
IS ISSUED, THIS SIGNED STATEMENT WILL BE ATTACHED TO THE POLICY.

The insured hereby acknowledges that he/she/it is aware that the limit of liability contained in this policy shall be
reduced, and may be completely exhausted, by the costs of legal defense and, in such event, the Company shall not
be liable for the costs of legal defense or for the amount of any judgement or settlement to the extent that such
exceeds the limit of liability of this policy.

The insured hereby further acknowledges that he/she/it is aware that legal defense costs that are incurred shall be applied
against the deductible amount.

Signed: _____

Title: _Chief Executive Officer_

(Must Be Signed by the President if a Corporation,
a General Partner if a Partnership)

Date: __4/13/05__

# EXHIBIT N

# UNIFORM SUBMISSION AGREEMENT
## NASD Arbitration

> **Received**
>
> APR 1 8 2005
>
> NASD West Regional
> Dispute Resolution Office

In the Matter of the Arbitration Between
Name(s) of Claimant(s)

**ROGER WHEELER and PAUL WHEELER Under the Power of Attorney for ROGER WHEELER; ROGER WHEELER and MARY WHEELER as Joint Tenants; MARY WHEELER**

and

Name(s) of Respondent(s)

CARDINAL CAPITAL MANAGEMENT, INC.; CARDINAL CAPITAL.NET, INC.; J.P. TURNER & CO. LLC.; STERLING FINANCIAL INVESTMENT GROUP, INC.; HUNTER SCOTT FINANCIAL, LLC.; SCOTT HOWARD WEISSMAN, CRD 2664118; ALEXI BETHEL, CRD 4188275; JAY HARRIS, CRD 3146249; ANTHONY THOMPSON, CRD 3188342; JAMES CLEARY, CRD 2655551; DAVID DEMAREST, CRD 2284078; CHRISTOPHER SWEENEY, CRD 823375; HERSHEL SMITH, JR., CRD 427817; ARNOLD ROSEMAN. CRD 500276; STEPHEN BAUMAN, CRD 2207311; DEAN VERNOIA, CRD 1723925; ALFRED PIERANTOZZI, CRD 862189; WILLIAM MELLO, CRD 1491454; TIMOTHY MCAFEE, CRD 1230884; STEVEN FISCHER, CRD 2250271; CHARLES GARCIA, CRD 2933864; CHESTER JONES, JR., CRD 1012908; ALEXIS KORYBUT, CRD 2361771; PAUL RICHARDSON, CRD 1006146; KAREN ZILLIA FISCHER, CRD 1708090; JASON GANTON, CRD 2751305; PETER GOUZOS, CRD 1959666; VASILLIOS KOUTSOGIANNIS, CRD 2301199; BANK OF NEW YORK CLEARING SERVICES, LLC.; PENS ON FINANCIAL SERVICES, INC.; FISERV SECURITIES, INC.; CORRESPONDENT SERVICES CORP.; WEXFORD CLEARING SERVICES CORP.; BEAR STEARNS SECURITIES CORP.      ; ADVANTAGE TRADING GROUP, INC.; SAL FINANCIAL SERVICES, INC. SALOMON GREY FINANCIAL CORP: MARK HERMES, CRD 4200965; OMAR PLUMMER, CRD 2967570; PETER ANDOLPHO, JR., CRD 2034938: MICHAEL PETRUSHA, CRD 169.0224; MICHAEL MARCHETTA: ROBERT CILUFFO; GRANT ALLEN EDWARDS, CRD 2745376; BERNARD O'DONNELL, CRD 857139: KYLE BROWNING ROWE, CRD 2310978; R. MCCLURE WEBB, III, CRD 2609775; EMMET A. LARKIN COMPANY, INC.

1. The undersigned parties hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, and all related counterclaims and/or third-party claims which may be asserted, to arbitration in accordance with the Constitution, By-Laws, Rules, Regulations, and/or Code of Arbitration Procedure of the sponsoring organization.

2. The undersigned parties hereby state that they have read the procedures and rules of the sponsoring organization relating to arbitration.

3. The undersigned parties agree that in the event a hearing is necessary, such hearing shall be held at a time and place as may be designated by the Director of Arbitration or the arbitrator(s). The undersigned parties further agree and understand that the arbitration will be conducted in accordance with the Constitution,

By-Laws, Rules Regulations, and/or Code of Arbitration Procedure of the sponsoring organization.

4. The undersigned parties further agree to abide by and perform any award(s) rendered pursuant to this Submission Agreement and further agree that a judgment and any interest due thereon, may be entered upon such award(s) and, for purposes, the undersigned parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may property enter such judgment.

5. IN WITNESS WHEREOF, the parties hereto have signed and acknowledged the foregoing Submission Agreement.

## CLAIMANT(S) SIGNATURE(S)

ROGER WHEELER, Individually and as Joint Tenant

PAUL WHEELER Under the Power of Attorney for ROGER WHEELER

MARY WHEELER, Individually and as Joint Tenant

JONATHAN W. EVANS, ESQ.
JONATHAN W. EVANS & ASSOCIATES
12711 Ventura Boulevard – Suite 440
Studio City, California 91604-2456

Telephone: (818) 760-9880 – (213) 626-1881
Facsimile: (818) 760-9881 – (213) 626-1882
State Bar Number: 65735

Attorney for Claimants Roger Wheeler and Paul Wheeler under a Power
of Attorney for Roger Wheeler; Roger Wheeler and Mary Wheeler, as
Joint Tenants; Mary Wheeler

### NATIONAL ASSOCIATION FOR SECURITIES DEALERS

| | |
|---|---|
| In The Matter of the Arbitration Between | CASE NO.: 05-01877 |
| ROGER WHEELER and PAUL WHEELER under a Power of Attorney for ROGER WHEELER; ROGER WHEELER and MARY WHEELER as Joint Tenants; MARY WHEELER, | STATEMENT OF CLAIM AND DEMAND FOR ARBITRATION |
| Claimants, | |
| v. | |
| CARDINAL CAPITAL MANAGEMENT, INC.; CARDINAL CAPITAL.NET, INC.; J.P. TURNER & CO. LLC.; STERLING FINANCIAL INVESTMENT GROUP, INC.; HUNTER SCOTT FINANCIAL, LLC.; SALOMON GREY FINANCIAL CORP.; SCOTT HOWARD WEISSMAN, CRD 2664118; ALEXI BETHEL, CRD 4188275; JAY HARRIS, CRD 3146249; ANTHONY THOMPSON, CRD 3188342; JAMES CLEARY, CRD 2655551; DAVID DEMAREST, CRD 2284078; MARK HERMES, CRD | |

4200965;  OMAR
PLUMMER CRD 2967570; )
PETER ANDOLPHO, JR., )
CRD 2034938; MICHAEL )
PETRUSHA, CRD 1690224; )
MICHAEL MARCHETTA, CRD )
2832600; ROBERT CILUFFO, )
CRD unknown; )
CHRISTOPHER SWEENEY, )
CRD 823375; HERSHEL )
SMITH, JR., CRD 427817; )
ARNOLD ROSEMAN, CRD )
500276; STEPHEN BAUMAN, )
CRD 2207311; DEAN )
VERNOIA, CRD 1723925; )
ALFRED PIERANTOZZI, CRD )
862189; WILLIAM MELLO, )
CRD 1491454; TIMOTHY )
Mc'AFEE, CRD 1230884; )
STEVEN FISCHER, CRD )
2250271; CHARLES GARCIA, )
CRD 2933864; CHESTER )
JONES, JR., CRD 1012908; )
ALEXIS KORYBUT, CRD )
2361771; PAUL )
RICHARDSON, CRD )
1006146; KAREN ZILLIA )
FISCHER, CRD 1708090; )
JASON GANTON, CRD )
2751305; PETER GOUZOS, )
CRD 1959666; VASILLIOS )
KOUTSOGIANNIS, CRD )
2301199; GRANT ALLEN )
EDWARDS, CRD 2745376; )
BERNARD O'DONNELL, CRD )
857139; KYLE BROWNING )
ROWE, CRD 2310978; )
R. MCCLURE WEBB III, CRD )
2609775; BANK OF NEW )
YORK CLEARING )
SERVICES, LLC.; PENSON )
FINANCIAL SERVICES, INC.; )
FISERV SECURITIES, INC.; )
CORRESPONDENT )
SERVICES CORP.; )
WEXFORD CLEARING )
SERVICES CORP.; BEAR )
STEARNS SECURITIES )

2

CORP.; ADVANTAGE                    )
TRADING GROUP, INC.; SAL           )
FINANCIAL, SERVICES, INC.;         )
EMMET A. LARKIN                    )
COMPANY, INC.; and Doe             )
Respondents I through XX,          )
                                   )
                   Respondents.    )
                                   )

## PARTIES

1.    Claimant ROGER WHEELER is a 77 year-old real estate developer. At all times herein mentioned Claimant WHEELER suffered noticeably from symptoms of Alzheimer's and adult-onset attention deficit disorder, or ADD. During the period the subject accounts were held by Respondents, Claimant resided at 2258 N. Indian Hill Blvd., Claremont, California 91711. Since December 24th, 2005 Claimant has resided at and continues to reside at 900 E. Harrison #G6, Pomona, CA, 91767. PAUL WHEELER is ROGER WHEELER's son. PAUL WHEELER has taken on Power of Attorney for his father due to his father's diminished mental health.

2.    Respondent CARDINAL CAPITAL MANAGEMENT, INC. (hereinafter referred to as "CARDINAL CAPITAL") is qualified and licensed to do business in the State of California and is a registered securities broker-dealer.

3.    Respondent J.P. TURNER & CO., LLC. (hereinafter referred to as "J.P. TURNER") is qualified and licensed to do business in the State of California and is a registered securities broker-dealer.

3

# EXHIBIT O

**Penny Ainalakis-Barone**

**From:**     pt@trlawoffice.com
**Sent:**     Saturday, September 30, 2006 12:18 PM
**To:**       webcase@adr.org
**Cc:**       'painalakis@kplaw.net;jhirsch@kplaw.net
**Subject:** AAA Case filed on 9/28/06, with Case Confirmation No. 002-TOZ-GFV

In a case filed on 9/28/06, with Case Confirmation No. 002-TOZ-GFV, the Respondent (Insured) has the right under the Arbitration Agreement to Reject the Claimant's choice of ADR, and to choose Mediation instead of Arbitration.  The Respondent (Insured) does hereby Reject the Claimant's (Insurer's) ADR, and does choose, instead, Mediation.

Moreover, Charles Garcia is not a party to the Arbitration Agreement and does not agree to be a party to Arbitration, but will participate in mediation.

Yours,
Peter Ticktin



# EXHIBIT P

**Penny Ainalakis-Barone**

| | |
|---|---|
| **From:** | pt@trlawoffice.com |
| **Sent:** | Wednesday, August 01, 2007 12:39 PM |
| **To:** | Schierholzm@adr.org |
| **Cc:** | ECook@trlawoffice.com;painalakis@kphwlaw.com;jhirsch@kphwlaw.com |
| **Subject:** | RE: Brit Syndicates 2987, et al. v. Charles Garcia & Sterling Financial (case no. 50 174 V 00416 06) |

I do not know how I can make myself any more clear, but we are not willing to participate in any Arbitration in regard to the issues at hand.  We converted the first Arbitration to a Mediation pursuant to the policy, and now, again pursuant to the policy, after 120 days after the conclusion of the Mediation, we brought suit, including a claim to stop this Arbitration.

We are not committed by contract or any other way to participate in arbitration, and we will not do so.

Yours,
Peter Ticktin

Peter Ticktin
**Ticktin & Rodriguez, P.A.**
3700 Coconut Creek Parkway
Suite 160
Coconut Creek, Florida  33066
T (954) 978-8950
F (954) 978-9513
pt@trlawoffice.com
www.trlawoffice.com

NOTICE: This Email is covered by the federal Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521 and is legally privileged.  This email message is for the sole use of the intended recipient(s) and may contain highly confidential or privileged information.  Any  unauthorized copying, review, use, disclosure or distribution is prohibited.  If you are not the intended recipient, please contact the sender by reply email at pt@trlawoffice.com and delete the original message and all copies.  Thank you.

**From:** Miroslava Schierholz [mailto:Schierholzm@adr.org]
**Sent:** Wednesday, August 01, 2007 11:29 AM
**To:** painalakis@kphwlaw.com; Ejola Cook; Peter Ticktin; Jeff Hirsch
**Subject:** Brit Syndicates 2987, et al. v. Charles Garcia & Sterling Financial (case no. 50 174 V 00416 06)

Dear Counsel:

Please see the attached documents regarding Arbitrator Hanessian's appointment to hear this matter.

Please contact me with any questions.

**Best regards,**

**Miroslava Schierholz, LL.M**
**Doctor at Law, Russia**

**International Case Manager**
**International Centre for Dispute Resolution**
**The International Division of the American Arbitration Association**
**1633 Broadway, 10th Fl., New York, NY 10019**
**Phone: +01 212-484-3270**
**Fax: +01 212-246-7274**
**www.icdr.org**

This e-mail transmission is intended only for the use of the person or persons to whom it is addressed. It may contain information that is confidential, privileged or otherwise exempt from disclosure. If you are not the intended recipient you are hereby notified that any dissemination of this e-mail is prohibited. If you have received this e-mail in error please notify the sender by return e-mail and then delete it immediately.