Policy Number: FD0504362     **COPY**     

---

Contract Document                           Professional Risks

**STERLING FINANCIAL INVESTMENT GROUP, Inc**

24 May 2005 to 24 May 2006



**London**
8 Devonshire Square
London
EC2M 4PL

Tel +44 (0) 20 7623 5500
Fax +44 (0) 20 7621 1511

This Contract Document has been signed for and on behalf of Aon Limited on the date specified herein by:

*[signature]*
Account Executive
AON PROFESSIONAL RISKS
AON LIMITED

Dated in London: 20/9/05

*[signature]*
Executive Director / Authorised Signatory
AON PROFESSIONAL RISKS
AON LIMITED

Dated in London: 20/9/05

---

Aon Limited

Registered Office 8 Devonshire Square London EC2M 4PL
Registered in London No 210725  VAT Registration No 480 8401 48
Aon Limited is authorised and regulated by the Financial Services Authority in respect of insurance mediation activities only

VW 12/07/05 02

A 11

AGL0986

Policy Number: FD0504362



*Introduction*

I.   *Jacket*

II.  *Schedule*

III. *Wording*

IV.  *Supplemental Clauses*

V.   *Signing Schedule*

**Confirmation of Order:**

We thank you for your firm order in respect of the coverage outlined below, which we have bound with Underwriters. Would you please check this document in every detail and advise us immediately if the coverage provided does not conform with your instructions.

**Our commitment to Service Quality:**

As part of our commitment to continual improvement we welcome any comments you may have on the service provided. Please contact Aon Professional Risks Service Quality team on *APRQM@aon.co.uk*.

Policy Number: FD0504362



*Important Notices*

### General Client Notices:

This Insurance is issued persuant to the Florida Surplus Lines Law, persons insured by surplus lines carriers do not have the protection of the Florida Insurance Guaranty Act to the extent of any right of recovery for the obligation of an insolvent unlicensed insurer.

### Fraudulent Claims Statement

If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim(s) hereunder shall be forfeited.

### Premium Payment Warranty Notice:

Your attention is drawn to the terms of the Premium Payment Warranty and/or Prompt Payment Discount contained under **Payment Terms** within the schedule.

Policy Number: FD0504362



## Schedule

| | |
|---|---|
| **Form** | SECURITIES BROKER/DEALER'S PROFESSIONAL LIABILITY INSURANCE |
| | Signed and dated Application: 13 April 2005 |
| | Plus Aon Professional Risks Lines Clause 823AON00348 plus 823AON00349 where applicable. |
| **Insured** | STERLING FINANCIAL INVESTMENT GROUP, Inc |
| **Principal Address** | 1200 N. Federal Highway, Suite 400<br>Boca Raton, FLA 33432 |
| **Policy Period** | From: 24 May 2005<br>To: 24 May 2006<br>Both days inclusive |
| **Limit of Liability** | USD 1,000,000 any one Loss / USD 2,000,000 in the aggregate. |
| **Retention** | USD 100,000 each and every Claim. |
| **Territorial Limits** | WORLDWIDE |
| **Supplemental Clauses** | Asbestos and Toxic Mould Exclusion - 254PR. |
| | Failure to Maintain Exclusion - 550DO. |
| | Nuclear Incident Exclusion Clause - Liability - Direct (Broad) – NMA 1256. |
| | Premium Payment Warranty - 146DO.<br>Number of days allowed for payment of premium: 49. |
| | Radioactive Contamination Exclusion Clause - Liability - Direct – NMA 1477. |
| | Retroactive Clause - LSW778.<br>Retroactive Date: 30 May 1997. |
| | Service Of Suit Clause (USA) – NMA 1998.<br>Service of Process nominee: Sedgwick Detert Moran & Arnold, New York, NY. |
| | Terrorism Exclusion Endorsement (With An Exception For Certified Acts of Terrorism Under The Terrorism Risk Insurance Act of 2002) - 278PR. |
| | War and Terrorism Exclusion - NMA 2918 (amended). |
| | Market Fluctuation Clause (Brit Version number 2). |
| | Amendment of Change in Control Endorsement. |
| | Non-Licensed Business Activity Exclusion. |
| | Intentional Corporate Acts Exclusion. |

Policy Number: FD0504362



| | |
|---|---|
| **Supplemental Clauses Continued** | Registered Investment Advisory Endorsement (for Approved Activities). |
| | Short Covered Call Options (AIG Language). |
| | Excessive Fees Exclusion. |
| | After Hours Trading Exclusion. |
| | Laddering Exclusion. |
| | Extended Reporting Period. |
| **Conditions** | Wording is based on AIG Securities Broker/Dealer Professional Liability Insurance (3/97). |
| **Several Liability** | The subscribing insurers' obligations under contracts of insurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions. The subscribing insurers are not responsible for the subscription of any co-subscribing insurer who for any reason does not satisfy all or part of its obligations. |
| **Choice of Law and Jurisdiction** | Any dispute concerning the interpretation of the terms, conditions, limitations and/or exclusions contained in this Policy is understood and agreed by both the insured and the insurers to be subject to the law of per Service of Suit. |
| | Each party agrees to submit to the jurisdiction of per Service of Suit to comply with all requirements necessary to give such Court jurisdiction. |
| | In respect of claims brought against the insured and indemnified under this policy, as more fully described herein, the choice of law applicable is New York and the choice of jurisdiction is New York. |
| **Premium** | USD 245,000 |
| **Payment Terms** | One instalment payable in full due 45 days from inception. |
| **Taxes payable by Insured and Administered by the Underwriter(s)** | None |
| **Notice of Claims** | Kissel & Pesche LLP, Attention: Richard Kissel, 555 White Plains Road, Tarrytown, New York, NY 10591, U.S.A. |
| **Recording, Transmitting and Storage Information** | All documentation and information to be recorded and/or transmitted electronically and stored electronically in Aon Limited repositories. |

Policy Number: FD0504362



## SECURITIES BROKER/DEALER'S PROFESSIONAL LIABILITY INSURANCE

In consideration of the payment of the premium, and in reliance upon the statements made to the Insurer in the application attached hereto and made a part hereof, and its attachments and the material incorporated therein, and subject to the Limit of Liability and all other terms and conditions contained herein, Underwriters at Lloyd's, hereinafter called the "Insurer", agrees as follows:

1. **INSURING AGREEMENTS**

   A. **BROKER/DEALER PROFESSIONAL LIABILITY INSURANCE (INCLUDING FAILURE TO SUPERVISE)**

   This policy shall pay on behalf of the Broker/Dealer Loss arising from a Claim first made against the Broker/Dealer during the Policy Period or the Discovery Period (if applicable) and reported in writing to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act committed by the Broker/Dealer:

   1. In the rendering or failure to render Professional Services by the Brokers/Dealer; or

   2. In Failing to Supervise a Registered Representative in the rendering or failure to render Professional Services by such Registered Representative on the behalf of the Broker/Dealer; or

   3. In Failing to Supervise a Registered Representative in connection with any activity of the Registered Representative OTHER THAN the rendering or failure to render Professional Services by such Registered Representative on the behalf of the Brokers/Dealer.

   B. **REGISTERED REPRESENTATIVE PROFESSIONAL LIABILITY INSURANCE**

   This policy shall pay on behalf of a Registered Representative Loss arising from a Claim first made against the Registered Representative during the Policy Period or the Discovery Period (if applicable) and reported in writing to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act committed by the Registered Representative in the rendering or failure to render Professional Services on behalf of the Broker/Dealer.

   C. **DEFENSE, INVESTIGATION AND SETTLEMENT (INCLUDED IN THE LIMITS OF LIABILITY)**

   1. **Defense**

      The Insurer shall have the right and duty to defend, subject to and as part of the Limits of Liability, any Claim made against an Insured during the Policy Period or Discovery Period (if applicable) and reported in writing to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act for which coverage is afforded by this policy, even if any of the allegations of the Claim are groundless, false or fraudulent.

Policy Number: FD0504362



2. **Investigation and Settlement (including retention reduction provision)**

The Insurer shall have the right to make any investigation it deems necessary with respect to any Claim or notice of circumstances under this policy. The Insurer shall have the right to make, with the written consent of the Insured, any settlement of a Claim under this policy it deems expedient.

With respect to a Claim solely in the form of a pre-proceeding written demand as described in definition (c)(1), if the Insurer recommends a settlement within the policy's applicable Limit of Liability which is acceptable to the claimant (a "Settlement Opportunity") and the Insured(s) consents to such settlement, then each Insured's retention amount shall be retroactively reduced by twenty-five percent (25%).

However, if a Settlement Opportunity arises in connection with any Claim (regardless of type) and the Insured(s) do not consent to the settlement within the timeframe described below, the retention amount shall remain the applicable amount set forth in the Schedule even if consent is given to a subsequent settlement.

The Insured(s) must consent to a Settlement Opportunity within thirty (30) days of the date the Insured(s) are first made aware of the Settlement Opportunity, or in the case of a Settlement Opportunity which arises from a settlement offer by the claimant then within the time permitted by the claimant to accept such settlement offer but no later than thirty (30) days. Furthermore, in the event the Insured(s) do not consent to the settlement within the timeframe described herein, the Insurer's liability for the Claim shall not exceed the amount for which the Insurer could have settled the Claim plus Defense Costs incurred up to the date of the refusal to settle.

In the event the Insured(s) refuse to consent to a Settlement Opportunity, the Insurer shall have the right but not the obligation to continue the defense of the Claim after the date of the refusal to settle and may in such a case, at any time after the date of the refusal to settle, withdraw from the further defense of the Claim by tendering control of the defense to the Insured.

In all events, the Insurer shall not be obligated to settle any Claim, pay any Loss or undertake or continue defense of any Claim after the applicable Limit of Liability has been exhausted by settlement of a Claim(s) or payment of Loss. In each such case, the Insurer shall have the right to withdraw from the further defense of the Claim by tendering control of the defense to the Insured(s).

The Insured(s) shall not admit liability for or settle any Claim or incur any Defense Costs without the Insurer's prior written consent. The Insured(s) shall give the Insurer and defense counsel full cooperation and such information as the Insurer and defense counsel reasonably request; including upon the Insurer's request, assisting in making settlements in the conduct of Claims, attending hearings, trials, arbitrations, mediations, and assisting in securing and giving evidence and obtaining the attendance of witnesses.

If all Insured defendants are able to dispose of all Claims which are subject to one retention amount for an amount not exceeding the

Policy Number: FD0504362

AON

retention amount (inclusive of Defense Costs), then the Insured's consent to such disposition shall not be required for such Claims.

2. **DEFINITIONS**

   (a) "Approved Activity" means a service or activity performed by the Registered Representative on behalf of the Broker/Dealer which:

   (1) has been approved by the Broker/Dealer to be performed by the Registered Representative, and is

   (2) in connection with the purchase or sale of a specific security, annuity or insurance product which has been approved by the Broker/Dealer to be transacted through the Registered Representative, and for which

   (3) the Registered Representative has obtained all licenses required by the Broker/Dealer or applicable law or regulation

   (b) "Broker/Dealer" means the Broker/Dealer designated in the Schedule and any Subsidiary thereof.

   (c) "Claim" means the following brought by an Insured's customer or client in such capacity:

   (1) a written demand for monetary relief; or

   (2) a civil or arbitration proceeding for monetary or non-monetary relief

   which is commenced by:

   (i) service of a complaint or similar pleading; or

   (ii) receipt or filing of an arbitration demand or statement of claim.

   (d) "Defense Costs" means reasonable and necessary fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of a Claim against an Insured(s), but excluding salaries of any Insured.

   (e) "Failing to Supervise" means the failure to create, implement, enact or enforce any applicable supervisory procedures required by law, common or statutory, regulation, governmental authority or regulation authority or self-regulatory authority, including but not limited to the procedures established by the National Association of Securities Dealers as outlined in Section 3010 of the NASD, Inc. Manual, and any amendments thereto.

   (f) "Insured" means:

   (1) the Broker/Dealer

   (2) any past, present or future director, officer, partner or employee of the Broker/Dealer, and

   (3) any past, present or future Registered Representatives of the Broker/Dealer.

Policy Number: FD0504362



(g) "Interrelated Wrongful Act(s)" means Wrongful Acts which are the same, related or continuous, or Wrongful Acts which arise from the same, related or common nexus of facts regardless of whether such Claims involve the same or different claimants, Insureds or legal causes of action. Further, and without limiting the aforementioned, the following Claims shall automatically be deemed to allege Interrelated Wrongful Acts:

1. Claims in connection with securities of any entity (or affiliated entities) which become(s) the subject of any bankruptcy, insolvency, receivership, liquidation or reorganization proceeding, or

2. Claims in connection with securities purchased in connection with an offering (or series of offerings) of securities issued by the same entity or affiliated entities;

(h) "Investment Banking Activity" means, but is not limited to, the underwriting, syndicating or promotion of any security or partnership interest in connection with any of the following: any actual, alleged or threatened merger, acquisition, divestiture, tender offer, proxy contest, leveraged buy-out, going private transaction, reorganization (voluntary or involuntary), capital restructuring, recapitalization, spin-offs, primary or secondary offerings of securities (regardless of whether the offering is a public offering or private placement), dissolution or sale of all or substantially all of the assets or stock of a business entity, or effort to raise or furnish capital or financing for any enterprise or entity, or any acquisition or sale of securities by the Broker/Dealer for its own account, or any activity by any Insured as a specialist or market maker (including the failure to make a market) for any securities, or any disclosure requirements in connection with any of the foregoing. Investment Banking also includes the rendering of advice or recommendations or the rendering of a written opinion in connection with any of the foregoing.

(i) "Loss" means damages, judgements, settlements and Defense Costs; however, Loss shall not include:

(1) salaries of any Insured;

(2) the cost of complying with any settlement for or award of non-monetary relief;

(3) civil or criminal fines or penalties imposed by law, punitive or exemplary damages, the multiplied portion of multiplied damages, taxes, any amounts for which the Insureds are not financially liable or which are without legal recourse to the Insureds, or matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed; not withstanding the foregoing, Loss shall include awards of punitive or exemplary damages (where insurable by law) in an amount not greater than the amount of compensatory damages award; and

(4) fees, commissions, or other compensation for any Professional Services rendered or required to be rendered by the Insured or that portion of any settlement or award in an amount equal to such fees, commissions, or other compensation.

Loss arising from Claim(s) alleging the same Wrongful Act or Interrelated Wrongful Acts shall be deemed a single Loss under this policy.

Policy Number: FD0504362



(j) "Policy Period" means the period from the inception date of this policy shown in the Schedule to the earlier of the expiration date shown in the Schedule or the effective date of cancellation of this policy.

(k) "Professional Services" means the following services if rendered in connection with an Approved Activity for or on the behalf of a customer or client of the Broker/Dealer pursuant to a written agreement between the Broker/Dealer and the customer or client:

   (1) purchase or sale of securities, including investment companies,

   (2) purchase or sale of annuities or variable annuities,

   (3) purchase or sale of life or accident and health insurance,

   (4) providing brokerage services for individual retirement accounts (IRA's), Keogh retirement plans and employee benefit plans (other than multiple employer or multiemployee welfare arrangements),

   (5) services performed as a registered investment advisor but only if and to the extent such coverage is added to this policy by specific written endorsement attached hereto;

   and in connection with or incidental to any of the foregoing 5 activities:

   (6) providing economic advice, financial advice or investment advisory services, or

   (7) providing financial planning advice including without limitation any of the following activities in conjunction therewith: the preparation of a financial plan or personal financial statements, the giving of advice relating to personal risk management, insurance, savings, investments, retirement planning or taxes.

(l) "Registered Representative" means an individual who is registered with the National Association of Securities Dealers, Inc., including a registered principal, and who for compensation engages in the business of rendering Professional Services on behalf of the Broker/Dealer.

(m) "Subsidiary" means:

   (1) a corporation of which the Broker/Dealer owns on or before the inception of the Policy Period more than 50% of the issued and outstanding voting stock either directly, or indirectly through one or more of its subsidiaries;

   (2) automatically a corporation created, or acquired during the Policy Period if the number of registered representatives of such other corporation total less than 10% of the total number of Registered Representatives of the Broker/Dealer as of inception date of this policy. The Broker/Dealer shall provide the Insurer with full particulars of the new Subsidiary before the end of the Policy Period;

   (3) a corporation created, or acquired during the Policy Period (other than a corporation described in paragraph (2) above) but only upon the condition that within 90 days of its becoming a Subsidiary, the Broker/Dealer shall have provided the Insurer with full particulars of the new Subsidiary and agreed to any additional premium and/or