Policy Number: FD0504362



amendment of the provisions of this policy required by the Insurer relating to such new Subsidiary. Further, coverage as shall be afforded to the new Subsidiary is conditioned upon the Broker/Dealer paying when due any additional premium required by the Insurer relating to such new Subsidiary.

A Broker/Dealer creates or acquires a Subsidiary when the Broker/Dealer owns more than 50% of the issued and outstanding voting stock, either directly, or indirectly through one or more of its Subsidiaries. A corporation ceases to be a Subsidiary when the Broker/Dealer ceases to own more than 50% of the issued and outstanding voting stock, either directly, or indirectly through one or more of its Subsidiaries.

In all events, coverage as is afforded with respect to a Claim made against a Subsidiary or any director, officer, employee or Registered Representative thereof shall only apply for Wrongful Acts committed or allegedly committed after the effective time that such Subsidiary became a Subsidiary and prior to the time that such Subsidiary ceased to be a Subsidiary.

(n) "Wrongful Act" means any act, error or omission by the Broker/Dealer, any director, officer, partner or employee thereof, or by any Registered Representative, in their respective capacities as such.

3. **EXTENSIONS**

Subject otherwise to the terms hereof, this policy shall cover Loss arising from a Claim made against the estates, heirs, or legal representatives of any deceased Individual Insured, and the legal representatives of such Individual Insured in the event of incompetency, insolvency or bankruptcy, who were Individual Insured at the time the Wrongful Acts upon which such Claims are based were committed.

Subject otherwise to the terms hereof, this policy shall cover Loss arising from a Claim made against the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) of an Individual Insured for a Claim arising solely out of his or her status as the spouse of an Individual Insured, including a Claim that seeks damages recoverable from marital community property, property jointly held by the Individual Insured and the spouse, or property transferred from the Individual Insured to the spouse; provided, however, that this extension shall not afford coverage for any Claim for any actual or alleged Wrongful Acts of the spouse, but shall apply only to Claims arising our of any actual or alleged Wrongful Acts of an individual Insured, subject to the policy's terms, conditions and exclusions.

4. **EXCLUSIONS**

The Insurer shall not be liable for Loss in connection with any Claim made against an Insured:

a) arising out of, based upon or attributable to the gaining in fact any profit or advantage to which the Insured was not legally entitled, including but not limited to any actual or alleged commingling of funds or accounts;

b) arising out of, based upon or attributable to the committing in fact of: any criminal or deliberately fraudulent act, or any willful violation of any law of the United States or Canada, or any state, territory, county, political division or municipality thereof, or any rules or regulations promulgated thereunder;

Policy Number: FD0504362



---

c) for bodily injury, sickness, disease, death or emotional distress of any person, or damage to or destruction of any tangible property, including the loss of use thereof, or for injury from libel or slander or defamation or disparagement, or for injury from a violation of a person's right of privacy.

d) alleging, arising out of, based upon or attributable to any bankruptcy, insolvency, conservatorship, receivership or liquidation of, or suspension of payment or refusal to pay by any broker or dealer in securities or commodities, clearing agency, or any bank or banking firm, or any insurance or reinsurance entity or any Insured; provided, however, this exclusion will not apply to Wrongful Acts solely in connection with any Insured's investment on the behalf of the claimant in the stock of any of the foregoing entities;

e) alleging, arising out of, based upon or attributable to any Wrongful Act occurring prior to the inception date of the first Securities Broker/Dealer's Errors And Omissions policy or Securities Brokers Professional Liability Insurance policy issued to the Broker/Dealer designated in the Schedule by the Insurer and continuously renewed and maintained in effect thereafter to the inception date of this policy, if on or before such date any Insured knew or could have reasonably forseen that such Wrongful Act could lead to a Claim, or alleging, arising out of, based upon or attributable to any subsequent Interrelated Wrongful Act;

f) alleging, arising out of, based upon or attributable to any Wrongful Act occurring prior to the Retroactive Date stated in the Schedule or arising out of any subsequent Interrelated Wrongful Act;

g) alleging, arising out of, based upon or attributable to any: (i) employee benefit plan or trust sponsored by any Insured or sponsored by any business enterprise that is operated or managed or owned, directly or indirectly, in whole or in part, by any Insured; or (ii) any plan in which an Insured is a participant or is a named fiduciary; or arising out of, based upon or attributable to any services performed by any Insured acting in fact as a trustee, administrator or fiduciary under the Employee Retirement Income Security Act of 1974, or amendments thereto, or any similar federal or state statutory law or any regulation or order issued pursuant thereto;

h) brought by or on behalf of any Insured, or the successors or assigns of any Insured; or by or on behalf or any enterprise, trust or other entity that is operated or managed or owned, directly or indirectly, in whole or in part, by any Insured; or for which any Insured is a trustee, fiduciary, director or officer thereof;

i) alleging, arising out of, based upon or attributable to, in whole or in part, any Investment Banking Activity by an Insured, including but not limited to any disclosure requirements in connection with the foregoing; provided, however, that this exclusion shall not apply to Claims arising out of the sale by an Insured to a particular client or customer of any open-ended investment company or variable annuity which alleges that a client or customer of the Broker/Dealer was unsuitable for and wrongfully placed into such investment company or variable annuity.

j) alleging, arising out of, based upon or attributable to the facts alleged, or arising out of the same or Interrelated Wrongful Acts alleged or contained in any Claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

k) brought by or on behalf of any clearing agency, or alleging, arising out of, based upon or attributable to any function of any Insured as a clearing agency;

---

Policy Number: FD0504362



l) alleging, arising out of, based upon or attributable to any: use by any Insured of, or aiding or abetting by any Insured in the use of, or participating after the fact by any Insured in the use of, non-public information in a manner prohibited by the laws of the United States, including, but not limited to, the Insider Trading and Securities Fraud Endorsement Act of 1988 (as amended), Section 10(b) of the Securities Exchange Act of 1934 (as amended) and Rule 10b-5 thereunder, any state, commonwealth, territory or subdivision thereof, or the laws of any other jurisdiction, or any rules or regulations promulgated under any of the foregoing;

m) alleging, arising out of, based upon or attributable to the purchase or sale of (or failure to purchase or sell) any of the following, or any advice in connection therewith:

1) commodities, futures contracts, forwards contracts or any type of option or futures contract, or any similar investment or investment product; or

2) any collectible, including but not limited to stamps, art, cards, jewelry, antiques or any other tangible personal property; or

3) any equity security priced under $5.00 at the time that the Wrongful Act triggering such Claim arose; however, this exclusion shall not apply if the security is:

(i) registered, or approved for registration upon notice of issuance, on a national securities exchange; or

(ii) authorized, or approved for authorization upon notice of issuance, for quotation in the NASDAQ National Market System or the NASDAQ SmallCap Market; or

(iii) issued by an investment company registered under the Investment Company Act of 1940 (as amended); or

4) any security in any market outside of the United States of America and its territories and possessions and Canada; or

5) annuities used in connection with any structured settlement;

n) alleging, arising out of, based upon or attributable to any mechanical or electronic failure, breakdown or malfunction of machines or systems;

o) brought by or on behalf of, or instigated or continued with the solicitation, assistance, participation or intervention of, any State or Federal regulatory or administrative agency or bureau or any other governmental, quasi-governmental or self-regulatory entity ("Governmental Entity"), whether directly or indirectly, and whether brought in its capacity as trustee, liquidator, or assignee of the Broker/Dealer, or in any other capacity and whether brought in its own name or in the name of any other entity; however, this exclusion shall not apply to any Claim brought solely in such Governmental Entity's capacity as a customer or client of the Broker/Dealer and instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any Insured.

p) alleging, arising out of, based upon or attributable to rendering of or failure to render any of the following services or activities:

Policy Number: FD0504362



 (i) actuarial,

 (ii) accounting,

 (iii) legal,

 (iv) real estate agent or broker, or

 (v) tax preparation or appearing before the Internal Revenue Service as an enrolled agent;

q) for any actual or alleged Wrongful Act in rendering or failure to render Professional Services to any securities broker/dealer; however this exclusion shall not apply if the Professional Service is solely the purchase or sale of securities to such broker/dealer for its own account;

r) with respect to coverage provided under Coverage B only, alleging, arising out of, based upon or attributable to any activity of, or service provided by, the Registered Representative other than a covered Professional Service, including but not limited to "selling away";

s) alleging, arising out of, based upon or attributable to an Insured exercising discretionary authority or control with regard to management or disposition of assets; however, this exclusion shall not apply to any Insured's purchase or sale of no-load investment company or variable annuities in which there is no initial or contingent sales charge or commission;

t) alleging, arising out of, based upon or attributable to, or in any way involving, directly or indirectly, the formation, operation, administration or management by an Insured, in part or in whole, of any entity other than the Broker/Dealer including but not limited to general partnerships, including but not limited to Claims arising out of an Insured acting as a general partner of any limited partnership and/or managing general partner of any general partnership;

u) alleging, arising out of, based upon or attributable to any liability assumed by the Insured under any indemnification contract or agreement, either oral or in writing; however, this exclusion does not apply to liability that would exist in the absence of such contract or agreement;

v) alleging, arising out of, based upon or attributable to employment or work place practices, including claims arising under worker compensation laws or claims in respect of alleged discrimination, harassment or inappropriate employment conduct of any sort.;

w) alleging, arising out of, based upon or attributable to the presence or actual, alleged, or threatened discharge, seepage, dispersal, migration, release, escape, generation, transportation, storage, or disposal of pollutants at any time, including any request, demand or order that the Insured or others test for, monitor, clean up, remove, assess, or respond to the effects of pollutants. Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, odors, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed

5. **LIMITS OF LIABILITY**

The Limit of Liability stated in the Schedule as "each Loss" is the limit of the Insurer's liability for all Loss arising out of all Claims alleging the same Wrongful Act or Interrelated Wrongful Act. This "each Loss" limit shall be part of and not in addition to

Policy Number: FD0504362



the "aggregate for all Loss" limit set forth in the Schedule as well as the "Policy Aggregate" limit set forth in the Schedule, as described below.

The Limits of Liability stated in the Schedule as "aggregate for all Loss" is the total limit of the Insurer's liability for all Loss arising out of all Claims first made against the Insureds during the Policy Period and the Discovery Period (if applicable) and reported to the Insurer in accordance with the terms herein. This "aggregate for all Loss" limit shall be part of and not in addition to the "Policy Aggregate" limit set forth in the Schedule, as described below.

The Limits of Liability stated in the Schedule whether as "each loss" or "aggregate for all Loss" shall apply to Claims first made against the Insureds during the Policy Period and the Discovery Period (if applicable) and reported to the Insurer in accordance with the terms herein for which coverage is provided, in whole or in part, under Insuring Agreement A.3.

The Limits of Liability stated in the Schedule whether as "each loss" or "aggregate for all Loss" shall apply to Claims first made against the Insureds during the Policy Period and the Discovery Period (if applicable) and reported to the Insurer in accordance with the terms herein for which coverage is provided by this policy other than a Claim for which coverage is provided, in whole or in part, under Insuring Agreement A.3.

The Limit of Liability stated in the Schedule is the aggregate total limit of the Insurer's liability for Loss arising out of all Claims first made against the Insureds during the Policy Period and the Discovery Period (if applicable) and reported to the Insurer in accordance with the terms herein under this policy.

The Limit of Liability for the Discovery Period shall be part of, and not in addition to, the applicable Limit of Liability for the Policy Period. Further, a Claim which is made subsequent to the Policy Period or the Discovery Period (if applicable) which pursuant to Clause 8(b) or 8(c) is considered made during the Policy Period or the Discovery Period shall also be subject to the aggregate Limit of Liability stated in the Schedule.

**Defense Costs are not payable by the Insurer in addition to the Limit of Liability. Defense Costs are part of Loss and as such are subject to the Limit of Liability for Loss.**

6. **RETENTION**

The Insurer shall only be liable for the amount of Loss arising from a Claim which is in excess of the applicable Retention Amount stated in the Schedule, such Retention Amount to be borne by the Insureds and shall remain uninsured with regard to all Loss arising from any Claim.

The Retention stated in the Schedule as the "Broker/Dealer Retention" shall apply to Claims for which coverage is provided under Insuring Agreement A of this policy.

The Retention stated in the Schedule as the "Registered Representative Retention" shall apply to Claims for which coverage is provided under Insuring Agreement B of this policy except for those Claims described immediately below.

The Retention stated in the Schedule as "Registered Representative Life Products Retention" shall apply to Claims solely arising from the purchase or sale of life, health and accident insurance (including advice in connection therewith) for which coverage is provided under Insuring Agreement B of this policy.

In the event of a Claim (or Claim alleging Interrelated Wrongful Acts) for which more than one retention amount set forth in the Schedule is applicable, then all such

Policy Number: FD0504362



retentions shall apply to the Claim(s); provided, however, that the maximum retention amount shall not exceed the highest applicable single retention amount.

Notwithstanding the foregoing, in the event the Insured consents to a Settlement Opportunity under the circumstances as described in Insuring Agreement C.2. of this policy, the applicable retention shall be reduced in the amount described in Insuring Agreement C.2.

7. **NOTICE/CLAIM REPORTING PROVISIONS**

   Notice hereunder shall be given in writing to Underwriter representatives as denoted in the Schedule page. If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

   (a) The Broker/Dealer or the Insured shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of a Claim made against an Insured as soon as practicable during the Policy Period or during the Discovery Period (if applicable) as long as such Claim(s) is reported no later than 30 days after the date such Claim was first made against an Insured.

   (b) If written notice of a Claim has been given to the Insurer pursuant to Clause 8 (a) above, then a Claim which is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to the facts alleged in the Claim for which such notice has been given, or alleging any Wrongful Act which is the same as or related to any Wrongful Act alleged in the Claim of which such notice has been given, shall be considered made at the time such notice was given.

   (c) If during the Policy Period or during the Discovery Period (if applicable) the Broker/Dealer or the Insureds shall become aware of any circumstances which may reasonably by expected to give rise to a Claim being made against the Insureds and shall give written notice to the Insurer of the circumstances and the reasons for anticipating such a Claim, with full particulars as to dates, persons and entities involved, then a Claim which is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to such circumstances or alleging any Wrongful Act which is the same as or related to any Wrongful Act alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given.

8. **PROTECTION FOR INNOCENT INSURED**

   Whenever coverage under this policy would be excluded under Exclusion a) or b) because an Insured committed a criminal or deliberately fraudulent act; or wilfully violated the law or gained a profit or advantage to which the Insured was not legally entitled, the coverage otherwise afforded under this policy to a natural person Insured will continue to apply to each such Insured who did not personally commit or personally participate in committing such criminal or deliberately fraudulent act; did not wilfully violate the law or gain a profit or advantage; and did not personally acquiesce in or remain passive after having personal knowledge or becoming aware of one or more such acts, wilful violation or improper gain as set forth in Exclusions a) and b).

Policy Number: FD0504362



9. **CANCELLATION CLAUSE**

This policy may be cancelled by the Broker/Dealer first named in the Schedule at any time only by mailing written prior notice to the Insurer stating when thereafter such cancellation shall be effective, or by surrender of this policy to the Insurer or its authorized agent. This policy may also be cancelled by or on behalf of the Insurer by delivering to the Broker/Dealer or by mailing to the Broker/Dealer, by registered, certified, or other first class mail, at the Broker/Dealer's address as shown in the Schedule, written notice stating when, not less than sixty (60) days thereafter, or ten (10) days thereafter in the event of nonpayment of premium when due, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The Policy Period terminates at the date and hour specified in such notice, or at the date and time of surrender.

If this policy shall be cancelled by the Broker/Dealer, the Insurer shall retain the customary short rate proportion of the premium hereon.

If this policy shall be cancelled by the Insurer, the Insurer shall retain the pro rata proportion of the premium hereon.

Payment or tender of any unearned premium by the Insurer shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable. If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

10. **CHANGE IN CONTROL OF BROKER/DEALER**

If during the Policy Period:

a. the Broker/Dealer shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons and/or entities acting in concert; or

b. any person or entity or group of persons and/or entities acting in concert shall acquire an amount of the outstanding securities representing more than 50% of the voting power for the election of directors of the Broker/Dealer, or acquires the voting rights of such an amount of such securities;

(either of the above events herein referred to as the "Transaction")

then, this policy shall continue in full force and effect as to Wrongful Acts occurring prior to the effective time of the Transaction, but there shall be no coverage afforded by any provision of this policy for any actual or alleged Wrongful Act occurring after the effective time of the Transaction. This policy may not be canceled after the effective time of the Transaction and the entire premium for this policy shall be deemed earned as of such time. The Broker/Dealer shall also have the right to an offer by the Insurer of a Discovery Period described in Clause 10 of the policy.

The Broker/Dealer shall give the Insurer written notice of the Transaction as soon as practicable, but not later than 30 days after the effective date of the Transaction.

11. **SUBROGATION**

In the event of any payment under this policy, the Insurer shall be subrogated to the extent of such payment to all the Broker/Dealer's and the Insureds' rights of recovery

Policy Number: FD0504362



thereof, and the Broker/Dealer and the Insureds shall execute all papers required and shall do everything that may be necessary to secure such rights including the execution of such documents necessary to enable the Insurer effectively to bring suit in the name of the Broker/Dealer and/or the Insureds. In no event, however, shall the Insurer exercise its rights to subrogation against an Insured under this policy unless such Insured has been convicted of a criminal act, or been judicially determined to have committed a deliberate fraudulent act, or obtained any profit or advantage to which such Insured was not legally entitled, or arising out of an act other than a covered Professional Service or Broker/Dealer service by such other Insured.

### 12. OTHER INSURANCE

Such insurance as is provided by this policy shall apply only as excess over any other valid and collectible insurance.

### 13. NOTICE AND AUTHORITY

It is agreed that the Broker/Dealer first named in the Schedule shall act on behalf of Insureds with respect to the giving of notice of Claim or giving and receiving notice of cancellation, the payment of premiums and the receiving of any return premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy and the exercising or declining to exercise any right to a Discovery Period. Notice to any agent or knowledge possessed by any agent or any other person shall not effect a waiver or a change in any part of this policy or stop the Insurer from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed except by endorsement issued to form a part of this policy and signed by an authorized representative of the Insurer.

### 14. TERRITORY

This policy applies to Claims which are bought anywhere in the World.

### 15. ASSIGNMENT

This policy and any and all rights hereunder are not assignable without the written consent of the Insurer.

### 16. ALTERNATIVE DISPUTE RESOLUTION PROCESS

It is hereby understood and agreed that all disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of Loss, shall be subject to the alternative dispute resolution process ("ADR") set forth in this clause.

Either the Insurer or the Insured(s) may elect the type of ADR discussed below; provided, however, that the Insureds shall have the right to reject the Insurer's choice of ADR at any time prior to its commencement, in which case the Insureds' choice of ADR shall control.

The Insurer and Insured(s) agree that there shall be two choices of ADR: (1) non-binding mediation administered by the America Arbitration Association, in which the Insurer and Insureds shall try in good faith to settle the dispute by mediation under or in accordance with its then-prevailing Commercial Mediation Rules; or (2) arbitration submitted to the America Arbitration Association under or in accordance with its then-prevailing commercial arbitration rules, in which the arbitration panel shall be composed of three disinterested individuals. In either mediation or arbitration, the mediator(s) or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. The mediator(s) or arbitrators

Policy Number: FD0504362



shall also give due consideration to the general principles of the law of the state where the Broker/Dealer is incorporated in the construction or interpretation of the provisions of this policy; provided, however, that the terms, conditions, provisions and exclusions of this policy are to be construed in an even-handed fashion in the manner most consistent with the relevant terms, conditions, provisions or exclusions of the policy. In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the arbitrators' award shall not include attorneys fees or other costs. In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least 120 days shall have elapsed from the date of the termination of the mediation. In all events, each party shall share equally the expenses of the ADR.

Either choice of ADR may be commenced in either New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state indicated in the Schedule page as the mailing address for the Broker/Dealer. The Broker/Dealer shall act on behalf of all Insureds in deciding to proceed with ADR under this clause.

17. **ACTION AGAINST INSURER**

Except as provided in Clause 18 of this policy, no action shall lie against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the Insureds' obligation to pay shall have been finally determined either by judgment against the Insureds after actual trial or by written agreement of the Insureds, the claimant and the Insurer.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the Insurer as a party to any action against the Insureds or the Broker/Dealer to determine the Insureds' liability, nor shall the Insurer be impleaded by the Insureds or the Broker/Dealer or their legal representatives. Bankruptcy or insolvency of the Broker/Dealer or the Insureds or of their estates shall not relieve the Insurer of any of its obligations hereunder.

18. **HEADINGS**

The descriptions in the headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

19. **SERVICE OF SUIT CLAUSE (U.S.A.)**

This Clause is not intended to conflict with or override the parties' obligation to arbitrate their disputes in accordance with Clause 18

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

It is further agreed that service of process in such suit may be made upon Sedgwick, Detert, Moran & Arnold, 125 Broad Street, New York, NY 10004, USA, and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

Policy Number: FD0504362 

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefore Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.