JUN 10 2004 14:02 FR LEX ITON INSURANCE617 439 4733 TO    14420726430060    P.08

**Swinglehurst Limited**      **0302 SWI**
(in association with Safeonline Ltd)
Policy No. SF403040X

4) NMA2918 War and Terrorism Exclusion Clause. However, terrorism cover as provided by the Terrorism Risk Insurance Act 2002 (TRIA) is available at 7.5% additional Premium. Under Federal law the United States reimburses 90% of covered terrorism losses exceeding the statutorily established

## SECURITIES BROKER/DEALER'S PROFESSIONAL LIABILITY INSURANCE

In consideration of the payment of the premium, and in reliance upon the statements made to the Insurer in the application attached hereto and made a part hereof, and its attachments and the material incorporated therein, and subject to the Limit of Liability and all other terms and conditions contained herein, Underwriters at Lloyds, hereinafter called the "Insurer", agrees as follows:

1. **INSURING AGREEMENTS**

    A. **BROKER/DEALER PROFESSIONAL LIABILITY INSURANCE (INCLUDING FAILURE TO SUPERVISE)**

    This policy shall pay on behalf of the Broker/Dealer Loss arising from a Claim first made against the Broker/Dealer during the Policy Period or the Discovery Period (if applicable) and reported in writing to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act committed by the Broker/Dealer:

    1. in the rendering or failure to render Professional Services by the Brokers/Dealer; or

    2. in Failing to Supervise a Registered Representative in the rendering or failure to render Professional Services by such Registered Representative on the behalf of the Broker/Dealer; or

    3. in Failing to Supervise a Registered Representative in connection with any activity of the Registered Representative OTHER THAN the rendering or failure to render Professional Services by such Registered Representative on the behalf of the Brokers/Dealer.

    B. **REGISTERED REPRESENTATIVE PROFESSIONAL LIABILITY INSURANCE**

    This policy shall pay on behalf of a Registered Representative Loss arising from a Claim first made against the Registered Representative during the Policy Period or the Discovery Period (if applicable) and reported in writing to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act committed by the Registered Representative in the rendering or failure to render Professional Services on behalf of the Broker/Dealer.

    C. **DEFENSE, INVESTIGATION AND SETTLEMENT (INCLUDED IN THE LIMITS OF LIABILITY)**

    1. **Defense**
    The Insurer shall have the right and duty to defend, subject to and as part of the Limits of Liability, any Claim made against an Insured during the Policy Period or Discovery Period (if applicable) and reported in writing to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act for which coverage is afforded by this policy, even if any of the allegations of the Claim are groundless, false or fraudulent.

2. **Investigation and Settlement (including retention reduction provision)**

The Insurer shall have the right to make any investigation it deems necessary with respect to any Claim or notice of circumstances under this policy. The Insurer shall have the right to make, with the written consent of the Insured, any settlement of a Claim under this policy it deems expedient.

With respect to a Claim solely in the form of a pre-proceeding written demand as described in definition (c)(1), if the Insurer recommends a settlement within the policy's applicable Limit of Liability which is acceptable to the claimant (a "Settlement Opportunity") and the Insured(s) consents to such settlement, then each Insured's retention amount shall be retroactively reduced by twenty-five percent (25%).

However, if a Settlement Opportunity arises in connection with any Claim (regardless of type) and the Insured(s) do not consent to the settlement within the timeframe described below, the retention amount shall remain the applicable amount set forth in Item 5 of the Declarations even if consent is given to a subsequent settlement.

The Insured(s) must consent to a Settlement Opportunity within thirty (30) days of the date the Insured(s) are first made aware of the Settlement Opportunity, or in the case of a Settlement Opportunity which arises from a settlement offer by the claimant then within the time permitted by the claimant to accept such settlement offer but no later than thirty (30) days. Furthermore, in the event the Insured(s) do not consent to the settlement within the timeframe described herein, the Insurer's liability for the Claim shall not exceed the amount for which the Insurer could have settled the Claim plus Defense Costs incurred up to the date of the refusal to settle.

In the event the Insured(s) refuse to consent to a Settlement Opportunity, the Insurer shall have the right but not the obligation to continue the defense of the Claim after the date of the refusal to settle and may in such a case, at any time after the date of the refusal to settle, withdraw from the further defense of the Claim by tendering control of the defense to the Insured.

In all events, the Insurer shall not be obligated to settle any Claim, pay any Loss or undertake or continue defense of any Claim after the applicable Limit of Liability has been exhausted by settlement of a Claim(s) or payment of Loss. In each such case, the Insurer shall have the right to withdraw from the further defense of the Claim by tendering control of the defense to the Insured(s).

The Insured(s) shall not admit liability for or settle any Claim or incur any Defense Costs without the Insurer's prior written consent. The Insured(s) shall give the Insurer and defense counsel full cooperation and such information as the Insurer and defense counsel reasonably request, including upon the Insurer's request, assisting in making settlements in the conduct of Claims, attending hearings, trials, arbitrations, mediations, and assisting in securing and giving evidence and obtaining the attendance of witnesses.



If all Insured defendants are able to dispose of all Claims which are subject to one retention amount for an amount not exceeding the retention amount (inclusive of Defense Costs), then the Insured's consent to such disposition shall not be required for such Claims.

2. **DEFINITIONS**

(a) "Approved Activity" means a service or activity performed by the Registered Representative on behalf of the Broker/Dealer which:

(1) has been approved by the Broker/Dealer to be performed by the Registered Representative, and is

(2) in connection with the purchase or sale of a specific security, annuity or insurance product which has been approved by the Broker/Dealer to be transacted through the Registered Representative, and for which

(3) the Registered Representative has obtained all licenses required by the Broker/Dealer or applicable law or regulation.

(b) "Broker/Dealer" means the Broker/Dealer designated in Item 1 of the Declarations and any Subsidiary thereof.

(c) "Claim" means the following brought by an Insured's customer or client in such capacity:

(1) a written demand for monetary relief; or

(2) a civil or arbitration proceeding for monetary or non-monetary relief

which is commenced by:

(i) service of a complaint or similar pleading; or

(ii) receipt or filing of an arbitration demand or statement of claim.

(d) "Defense Costs" means reasonable and necessary fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of a Claim against an Insured(s), but excluding salaries of any Insured.

(e) "Failing to Supervise" means the failure to create, implement, enact or enforce any applicable supervisory procedures required by law, common or statutory, regulation, governmental authority or regulation authority or self-regulatory authority, including but not limited to the procedures established by the National Association of Securities Dealers as outlined in Section 3010 of the NASD, Inc. Manual, and any amendments thereto.



(f) "Insured" means:

   (1) the Broker/Dealer

   (2) any past, present or future director, officer, partner or employee of the Broker/Dealer, and

   (3) any past, present or future Registered Representatives of the Broker/Dealer.

(g) "Interrelated Wrongful Act(s)" means Wrongful Acts which are the same, related or continuous, or Wrongful Acts which arise from the same, related or common nexus of facts regardless of whether such Claims involve the same or different claimants, Insureds or legal causes of action. Further, and without limiting the aforementioned, the following Claims shall automatically be deemed to allege Interrelated Wrongful Acts:

   1. Claims in connection with securities of any entity (or affiliated entities) which become(s) the subject of any bankruptcy, insolvency, receivership, liquidation or reorganization proceeding, or

   2. Claims in connection with securities purchased in connection with an offering (or series of offerings) of securities issued by the same entity or affiliated entities;

(h) "Investment Banking Activity" means, but is not limited to, the underwriting, syndicating or promotion of any security or partnership interest in connection with any of the following: any actual, alleged or threatened merger, acquisition, divestiture, tender offer, proxy contest, leveraged buy-out, going private transaction, reorganization (voluntary or involuntary), capital restructuring, recapitalization, spin-offs, primary or secondary offerings of securities (regardless of whether the offering is a public offering or private placement), dissolution or sale of all or substantially all of the assets or stock of a business entity, or effort to raise or furnish capital or financing for any enterprise or entity, or any acquisition or sale of securities by the Broker/Dealer for its own account, or any activity by any Insured as a specialist or market maker (including the failure to make a market) for any securities, or any disclosure requirements in connection with any of the foregoing. Investment Banking also includes the rendering of advice or recommendations or the rendering of a written opinion in connection with any of the foregoing.

(i) "Loss" means damages, judgements, settlements and Defense Costs; however, Loss shall not include:

   (1) salaries of any Insured;

   (2) the cost of complying with any settlement for or award of non-monetary relief;

   (3) civil or criminal fines or penalties imposed by law, punitive or exemplary damages, the multiplied portion of multiplied damages, taxes, any amounts for which the Insureds are not financially liable or which are without legal recourse to the Insureds, or matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed; not withstanding the foregoing, Loss shall include awards of punitive or exemplary damages



(where insurable by law) in an amount not greater than the amount of compensatory damages award; and

(4)    fees, commissions, or other compensation for any Professional Services rendered or required to be rendered by the Insured or that portion of any settlement or award in an amount equal to such fees, commissions, or other compensation.

Loss arising from Claim(s) alleging the same Wrongful Act or Interrelated Wrongful Acts shall be deemed a single Loss under this policy.

(j)    "Policy Period" means the period from the inception date of this policy shown in Item 2 of the Declarations to the earlier of the expiration date shown in Item 2 of the Declarations or the effective date of cancellation of this policy.

(k)    "Professional Services" means the following services if rendered in connection with an Approved Activity for or on the behalf of a customer or client of the Broker/Dealer pursuant to a written agreement between the Broker/Dealer and the customer or client:

(1)    purchase or sale of securities, including investment companies,

(2)    purchase or sale of annuities or variable annuities,

(3)    purchase or sale of life or accident and health insurance,

(4)    providing brokerage services for individual retirement accounts (IRA's), Keogh retirement plans and employee benefit plans (other than multiple employer or multiemployee welfare arrangements),

(5)    services performed as a registered investment advisor but only if and to the extent such coverage is added to this policy by specific written endorsement attached hereto;

and in connection with or incidental to any of the foregoing 5 activities:

(6)    providing economic advice, financial advice or investment advisory services, or

(7)    providing financial planning advice including without limitation any of the following activities in conjunction therewith: the preparation of a financial plan or personal financial statements, the giving of advice relating to personal risk management, insurance, savings, investments, retirement planning or taxes.

(l)    "Registered Representative" means an individual who is registered with the National Association of Securities Dealers, Inc., including a registered principal, and who for compensation engages in the business of rendering Professional Services on behalf of the Broker/Dealer.



    (m)    "Subsidiary" means:

        (1)    a corporation of which the Broker/Dealer owns on or before the inception of the Policy Period more than 50% of the issued and outstanding voting stock either directly, or indirectly through one or more of its subsidiaries;

        (2)    automatically a corporation created, or acquired during the Policy Period if the number of registered representatives of such other corporation total less than 10% of the total number of Registered Representatives of the Broker/Dealer as of inception date of this policy. The Broker/Dealer shall provide the Insurer with full particulars of the new Subsidiary before the end of the Policy Period;

        (3)    a corporation created, or acquired during the Policy Period (other than a corporation described in paragraph (2) above) but only upon the condition that within 90 days of its becoming a Subsidiary, the Broker/Dealer shall have provided the Insurer with full particulars of the new Subsidiary and agreed to any additional premium and/or amendment of the provisions of this policy required by the Insurer relating to such new Subsidiary. Further, coverage as shall be afforded to the new Subsidiary is conditioned upon the Broker/Dealer paying when due any additional premium required by the Insurer relating to such new Subsidiary.

A Broker/Dealer creates or acquires a Subsidiary when the Broker/Dealer owns more than 50% of the issued and outstanding voting stock, either directly, or indirectly through one or more of its Subsidiaries. A corporation ceases to be a Subsidiary when the Broker/Dealer ceases to own more than 50% of the issued and outstanding voting stock, either directly, or indirectly through one or more of its Subsidiaries.

In all events, coverage as is afforded with respect to a Claim made against a Subsidiary or any director, officer, employee or Registered Representative thereof shall only apply for Wrongful Acts committed or allegedly committed after the effective time that such Subsidiary became a Subsidiary and prior to the time that such Subsidiary ceased to be a Subsidiary.

    (n)    "Wrongful Act" means any act, error or omission by the Broker/Dealer, any director, officer, partner or employee thereof, or by any Registered Representative, in their respective capacities as such.

3.    **EXTENSIONS**

Subject otherwise to the terms hereof, this policy shall cover Loss arising from a Claim made against the estates, heirs, or legal representatives of any deceased individual Insured, and the legal representatives of such individual Insured in the event of incompetency, insolvency or bankruptcy, who were individual Insured at the time the Wrongful Acts upon which such Claims are based were committed.

Subject otherwise to the terms hereof, this policy shall cover Loss arising from a Claim made against the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) of an individual Insured for a Claim arising solely out of his or her status as the spouse of an individual Insured, including

Claim that seeks damages recoverable from marital community property, property jointly held by the individual Insured and the spouse, or property transferred from the individual Insured to the spouse; provided, however, that this extension shall not afford coverage for any Claim for any actual or alleged Wrongful Acts of the spouse, but shall apply only to Claims arising out of any actual or alleged Wrongful Acts of an individual Insured, subject to the policy's terms, conditions and exclusions.

4. **EXCLUSIONS**

The Insurer shall not be liable for Loss in connection with any Claim made against an Insured:

a) arising out of, based upon or attributable to the gaining in fact any profit or advantage to which the Insured was not legally entitled, including but not limited to any actual or alleged commingling of funds or accounts;

b) arising out of, based upon or attributable to the committing in fact of: any criminal or deliberately fraudulent act, or any willful violation of any law of the United States or Canada, or any state, territory, county, political division or municipality thereof, or any rules or regulations promulgated thereunder;

c) for bodily injury, sickness, disease, death or emotional distress of any person, or damage to or destruction of any tangible property, including the loss of use thereof, or for injury from libel or slander or defamation or disparagement, or for injury from a violation of a person's right of privacy.

d) alleging, arising out of, based upon or attributable to any bankruptcy, insolvency, conservatorship, receivership or liquidation of, or suspension of payment or refusal to pay by any broker or dealer in securities or commodities, clearing agency, or any bank or banking firm, or any insurance or reinsurance entity or any Insured; provided, however, this exclusion will not apply to Wrongful Acts solely in connection with any Insured's investment on the behalf of the claimant in the stock of any of the foregoing entities;

e) alleging, arising out of, based upon or attributable to any Wrongful Act occurring prior to the inception date of the first Securities Broker/Dealer's Errors And Omissions policy or Securities Brokers Professional Liability Insurance policy issued to the Broker/Dealer designated in Item 1 of the Declarations by the Insurer and continuously renewed and maintained in effect thereafter to the inception date of this policy, if on or before such date any Insured knew or could have reasonably forseen that such Wrongful Act could lead to a Claim, or alleging, arising out of, based upon or attributable to any subsequent Interrelated Wrongful Act;

f) alleging, arising out of, based upon or attributable to any Wrongful Act occurring prior to the Retroactive Date stated in Item 6 of the Declarations or arising out of any subsequent Interrelated Wrongful Act;

g) alleging, arising out of, based upon or attributable to any: (i) employee benefit plan or trust sponsored by any Insured or sponsored by any business enterprise that is operated or managed or owned, directly or indirectly, in whole or in part, by any Insured; or (ii) any plan in which an Insured is a participant or is a named fiduciary;



or arising out of, based upon or attributable to any services performed by any Insured acting in fact as a trustee, administrator or fiduciary under the Employee Retirement Income Security Act of 1974, or amendments thereto, or any similar federal or state statutory law or any regulation or order issued pursuant thereto;

h) brought by or on behalf of any Insured, or the successors or assigns of any Insured; or by or on behalf of any enterprise, trust or other entity that is operated or managed or owned, directly or indirectly, in whole or in part, by any Insured; or for which any Insured is a trustee, fiduciary, director or officer thereof;

i) alleging, arising out of, based upon or attributable to, in whole or in part, any Investment Banking Activity by an Insured, including but not limited to any disclosure requirements in connection with the foregoing; provided, however, that this exclusion shall not apply to Claims arising out of the sale by an Insured to a particular client or customer of any open-ended investment company or variable annuity which alleges that a client or customer of the Broker/Dealer was unsuitable for and wrongfully placed into such investment company or variable annuity.

j) alleging, arising out of, based upon or attributable to the facts alleged, or arising out of the same or Interrelated Wrongful Acts alleged or contained in any Claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

k) brought by or on behalf of any clearing agency, or alleging, arising out of, based upon or attributable to any function of any Insured as a clearing agency;

l) alleging, arising out of, based upon or attributable to any: use by any Insured of, or aiding or abetting by any Insured in the use of, or participating after the fact by any Insured in the use of, non-public information in a manner prohibited by the laws of the United States, including, but not limited to, the Insider Trading and Securities Fraud Endorsement Act of 1988 (as amended), Section 10(b) of the Securities Exchange Act of 1934 (as amended) and Rule 10b-5 thereunder, any state, commonwealth, territory or subdivision thereof, or the laws of any other jurisdiction, or any rules or regulations promulgated under any of the foregoing;

m) alleging, arising out of, based upon or attributable to the purchase or sale of (or failure to purchase or sell) any of the following, or any advice in connection therewith:

  1) commodities, futures contracts, forwards contracts or any type of option or futures contract, or any similar investment or investment product; or

  2) any collectible, including but not limited to stamps, art, cards, jewelry, antiques or any other tangible personal property; or

  3) any equity security priced under $5.00 at the time that the Wrongful Act triggering such Claim arose; however, this exclusion shall not apply if the security is:

     (i) registered, or approved for registration upon notice of issuance, on a national securities exchange; or



    (ii) authorized, or approved for authorization upon notice of issuance, for quotation in the NASDAQ National Market System or the NASDAQ SmallCap Market; or

    (iii) issued by an investment company registered under the Investment Company Act of 1940 (as amended); or

4) any security in any market outside of the United States of America and its territories and possessions and Canada; or

5) annuities used in connection with any structured settlement;

n) alleging, arising out of, based upon or attributable to any mechanical or electronic failure, breakdown or malfunction of machines or systems;

o) brought by or on behalf of, or instigated or continued with the solicitation, assistance, participation or intervention of, any State or Federal regulatory or administrative agency or bureau or any other governmental, quasi-governmental or self-regulatory entity ("Governmental Entity"), whether directly or indirectly, and whether brought in its capacity as trustee, liquidator, or assignee of the Broker/Dealer, or in any other capacity and whether brought in its own name or in the name of any other entity; however, this exclusion shall not apply to any Claim brought solely in such Governmental Entity's capacity as a customer or client of the Broker/Dealer and instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any Insured.

p) alleging, arising out of, based upon or attributable to rendering of or failure to render any of the following services or activities:

    (i) actuarial,
    (ii) accounting,
    (iii) legal,
    (iv) real estate agent or broker, or
    (v) tax preparation or appearing before the Internal Revenue Service as an enrolled agent;

q) for any actual or alleged Wrongful Act in rendering or failure to render Professional Services to any securities broker/dealer; however this exclusion shall not apply if the Professional Service is solely the purchase or sale of securities to such broker/dealer for its own account;

r) with respect to coverage provided under Coverage B only, alleging, arising out of, based upon or attributable to any activity of, or service provided by, the Registered Representative other than a covered Professional Service, including but not limited to "selling away";

s) alleging, arising out of, based upon or attributable to an Insured exercising discretionary authority or control with regard to management or disposition of assets; however, this exclusion shall not apply to any Insured's purchase or sale of no-load investment company or variable annuities in which there is no initial or contingent sales charge or commission;

