**Kissel & Pesce LLP**
Attorneys at Law

555 White Plains Road
Tarrytown, New York 10591

Telephone (914) 750-5933
Facsimile (914) 750-5922

August 1, 2006

**CONFIDENTIAL**

**VIA E-MAIL AND CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Cristina Avila
Sterling Financial Investment Group, Inc.
1200 North Federal Highway, Suite 400
Boca Raton, Florida 33432

Re: Securities Broker/Dealer Professional Liability Insurance
Insured: Sterling Financial Investment Group, Inc.
Policy Ref.: FD0504362
Policy Period: May 24, 2005-2006
Policy Limits: $1 M any one Loss/$2 M in the aggregate, xs $100,000 each and every Claim retention
Claimants: Carmella Donnino
Our File No.: 40117.00035

Dear Cristina:

As you are aware, this firm represents the interests of certain Underwriters at Lloyd's ("Underwriters") that issued the referenced Securities Broker/Dealer Professional Liability Insurance policy to Sterling Financial Investment Group, Inc. ("Sterling") for claims made and reported during the period May 24, 2005 to May 24, 2006. The subject policy provides limits of liability of $1 million for each Claim and $2 million in the aggregate in excess of a $100,000 self-insured retention for each Claim.

We understand that settlement negotiations with the claimants in this matter have resulted in a reduced demand of $43,000 but that the claimant's attorney represented to Marshall Dennehey that his clients would be inclined to settle all claims against Sterling for an amount in the range of $32,000 to $35,000. Claimants demand this amount in full and final settlement of all claims against Sterling in the Donnino matter. It is our understanding that Sterling refused to

**New York City**
60 East 42nd Street, Suite 817
New York, New York 10165
Telephone (212) 557-7927
Facsimile (212) 557-7950

**London**
81 Gracechurch Street
London EC3V 0AU. England
Telephone +44 (0) 20 7398-4350
Facsimile +44 (0) 20 7398-4351

**New Jersey**
111 Dunnell Road
Maplewood, New Jersey 07040-2689
Telephone (973) 275-1588
Facsimile (973) 275-7808

make a counter-offer to this opportunity above $15,000. For the reasons set forth in this letter, Sterling's insurers demand that Sterling settle the Donnino matter within the applicable self-insured retention up to the claimants' current formal demand of $43,000.

* * *

We understand that the parties are still exchanging discovery and that the arbitration hearing is scheduled to begin on December 18, 2006.

Marshall Dennehey also provided us with the results of their investigation of the Donnino accounts and reported that the out-of pocket losses in those accounts are $60,218.

Based on the foregoing, Underwriters have instructed us to invoke the terms of the subject policy regarding settlement opportunities. *See Section 1.C.2.Investigation and Settlement*. The relevant provisions of the policy follow:

> ...if a Settlement Opportunity[1] arises in connection with any Claim (regardless of type) and the Insured(s) do not consent to the settlement within the timeframe described below, the retention amount shall remain the applicable amount set forth in the Schedule [the retention amount is $100,000, inclusive of Defense Costs] even if consent is given to a subsequent settlement.
>
> The Insured(s) must consent to a Settlement Opportunity within thirty (30) days of the date the Insured(s) are first made aware of the Settlement Opportunity, or in the case of a Settlement Opportunity which arises from a settlement offer by the claimant then within the time permitted by the claimant to accept such settlement offer but no later than thirty (30) days. Furthermore, in the event the Insured(s) do not consent to the settlement within the timeframe described herein, the Insurer's liability for the Claim shall not exceed the amount for which the Insurer could have settled the Claim plus Defense Costs[2] incurred up to the date of the refusal to settle.
>
> In the event the Insured(s) refuse to consent to a Settlement Opportunity, the Insurer shall have the right but not the obligation to continue the defense of the Claim after the date of the refusal to settle and may in such a case, at any time after the date of the

---

[1] According to the policy, a "Settlement Opportunity" exists if the Insurer recommends a settlement that does not exceed the policy's applicable Limit of Liability and which is acceptable to the claimant (a "Settlement Opportunity").... *Section 1.C.2.Defense, paragraph two.*

[2] Defense Costs are defined by the policy as "reasonable and necessary fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of a Claim against an Insured(s), but excluding salaries of any Insured. *Section 2.(d) "Defense Costs."*

> refusal to settle, withdraw from the further defense of the Claim by tendering control of the defense to the Insured.

Claimant has represented a willingness to settle this matter for $43,000, but informally expressed an opportunity to settle in the range of $32,000 to $35,000. Both opportunities are within the policy's $1 million limit of liability and within Sterling's $100,000 self-insured retention. The opportunities also represent a significant discount off of the loss suffered by the claimant's accounts, i.e., the out-of-pocket losses. It will certainly cost Sterling more than $43,000 to have Marshall Dennehey continue to defend Sterling through arbitration. Based on (1) the uncertainty of how the arbitration panel will view the strength of the claimants' claims against Sterling, (2) the costs incurred in defending this matter, (3) the anticipated costs of defense (defense counsel's projected budget for this matter is more than $45,000), and (4) the results of the profit and loss analyses performed on the Camilleri accounts (out-of-pocket losses are approximately $60,000), we invoke the above-referenced provisions of the policy. Sterling shall have until 30 days from receipt of this letter to agree to this Settlement Opportunity. If Sterling does not agree Underwriters will withdraw from the further defense of the Donnino matter.

To be clear, Sterling has an opportunity to settle this matter for an amount well within the $100,000 retention. Sterling's payment of the current demand taking together with incurred Defense Cost would not exceed the applicable retention. Since the retention would not be exhausted, Underwriters would not be obligated to make any payments under the policy.[3]

As a final point, we have been notified that Sterling has not yet paid any of Marshall Dennehey's fees/expenses incurred in connection with their defense of Sterling in this matter and that Sterling has a minimum outstanding balance of $13,000. As we advised you in previous correspondence, Sterling is responsible for the payment of any Defense Costs that are incurred within the $100,000 self-insured retention. Underwriters are "only liable for the amount of Loss arising from a Claim which is in excess of the applicable Retention Amount..., such Retention Amount to be borne by the Insureds and shall remain uninsured with regard to all Loss arising from any Claim." *Section 6*. Loss is defined by the subject policy to include Defense Costs. *Section 2.(i)*. In view of the foregoing policy provisions, Sterling's failure to pay Marshall Dennehey's fees in connection with this matter is unacceptable and a violation of it's obligations under the policy and at law. Sterling should make arrangements to pay all of Marshall Dennehey's outstanding invoices without further delay.

Please note that nothing in this letter is intended to amend or replace the coverage positions taken in previous correspondence and we hereby continue to fully reserve all of Underwriters' rights under the policy and applicable law. We note that by referring to certain provisions of the policy, Underwriters do not intend to waive or limit any of their rights. To the contrary, we expressly reserve all of Underwriters' rights under applicable law and under the

---

[3] The Retention provisions of the policy provide that Sterling's insurers are only liable for the amount of Loss arising from a Claim which is in excess of the applicable Retention Amount.

policy, including but not limited to, the right to raise all policy terms, conditions and exclusions as defenses to coverage where appropriate.

We invite you to contact us with any questions you may have regarding the contents of this letter

Very truly yours,

J Hirsch (pa)

Jeffrey Hirsch

cc: Charles Garcia (*via* e-mail only)
Peter Tictin, Esq. (*via* e-mail only)
Aon (U.K., *via* e-mail only)
Aon (U.S., *via* e-mail only)
Panagiota Ainalakis, Esq.

# EXHIBIT C

**Kissel & Pesce LLP**
Attorneys at Law

555 White Plains Road
Tarrytown, New York 10591

Telephone (914) 750-5933
Facsimile (914) 750-5922

August 1, 2006

**CONFIDENTIAL**

**VIA E-MAIL AND CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Cristina Avila
Sterling Financial Investment Group, Inc.
1200 North Federal Highway, Suite 400
Boca Raton, Florida 33432

Re: Securities Broker/Dealer Professional Liability Insurance
Insured: Sterling Financial Investment Group, Inc.
Policy Ref.: FD0504362
Policy Period: May 24, 2005-2006
Policy Limits: $1 M any one Loss/$2 M in the aggregate, xs $100,000 each and every Claim retention
Claimants: Charles P. and Frances Camilleri
Our File No.: 40117.00042

Dear Cristina:

As you are aware, this firm represents the interests of certain Underwriters at Lloyd's ("Underwriters") that issued the referenced Securities Broker/Dealer Professional Liability Insurance policy to Sterling Financial Investment Group, Inc. ("Sterling") for claims made and reported during the period May 24, 2005 to May 24, 2006. The subject policy provides limits of liability of $1 million for each Claim and $2 million in the aggregate in excess of a $100,000 self-insured retention for each Claim.

We understand that settlement negotiations with the claimants in this matter have resulted in a formal settlement demand of $92,000. However, it is our understanding that the claimants' attorney represented to Marshall Dennehey on June 28, 2006 that his clients would be inclined to settle all claims against all respondents for $46,000. It is our understanding that Sterling authorized Marshall Dennehey to communicate a counter-offer of $17,500 in response to the

**New York City**
60 East 42nd Street, Suite 817
New York, New York 10165
Telephone (212) 557-7927
Facsimile (212) 557-7950

**London**
81 Gracechurch Street
London EC3V OAU, England
Telephone +44 (0) 20 7398-4350
Facsimile +44 (0) 20 7398-4351

**New Jersey**
111 Dunnell Road
Maplewood, New Jersey 07040-2689
Telephone (973) 275-1588
Facsimile (973) 275-7808

$46,000 demand. For the reasons set forth in this letter, Sterling's insurers demand that Sterling settle the Camilleri matter within the applicable self-insured retention up to the claimants' current demand of $46,000.

* * *

We understand that the parties are still exchanging discovery and that the arbitration hearing is scheduled to begin on October 4, 2006.

Marshall Dennehey provided us with the results of their investigation of the Camilleri accounts and reported that the out-of pocket losses in those accounts are $112,235, which does not include the $25,000 that the claimants allegedly invested in Ultimate Body Scan through Marc Levy.

Based on the foregoing, Underwriters have instructed us to invoke the terms of the subject policy regarding settlement opportunities. *See Section 1.C.2.Investigation and Settlement*. The relevant provisions of the policy follow:

> ...if a Settlement Opportunity[1] arises in connection with any Claim (regardless of type) and the Insured(s) do not consent to the settlement within the timeframe described below, the retention amount shall remain the applicable amount set forth in the Schedule [the retention amount is $100,000, inclusive of Defense Costs] even if consent is given to a subsequent settlement.
>
> The Insured(s) must consent to a Settlement Opportunity within thirty (30) days of the date the Insured(s) are first made aware of the Settlement Opportunity, or in the case of a Settlement Opportunity which arises from a settlement offer by the claimant then within the time permitted by the claimant to accept such settlement offer but no later than thirty (30) days. Furthermore, in the event the Insured(s) do not consent to the settlement within the timeframe described herein, the Insurer's liability for the Claim shall not exceed the amount for which the Insurer could have settled the Claim plus Defense Costs[2] incurred up to the date of the refusal to settle.

---

[1] According to the policy, a "Settlement Opportunity" exists if the Insurer recommends a settlement that doesnot exceed the policy's applicable Limit of Liability and which is acceptable to the claimant (a "Settlement Opportunity").... *Section 1.C.2.Defense, paragraph two.*

[2] Defense Costs are defined by the policy as "reasonable and necessary fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond. but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of a Claim against an Insured(s), but excluding salaries of any Insured. *Section 2.(d) "Defense Costs."*

> In the event the Insured(s) refuse to consent to a Settlement Opportunity, the Insurer shall have the right but not the obligation to continue the defense of the Claim after the date of the refusal to settle and may in such a case, at any time after the date of the refusal to settle, withdraw from the further defense of the Claim by tendering control of the defense to the Insured.

Claimants made a settlement demand of $46,000 from Sterling on June 28, 2006. The demand is within the policy's $1 million limit of liability and within Sterling's $100,000 self-insured retention. It also represents less than one-half of the claimants' out-of-pocket losses, a significant discount off of the loss suffered by the accounts. It will certainly cost Sterling more than $46,000 to have Marshall Dennehey continue to defend Sterling through arbitration. Based on (1) the uncertainty of how the arbitration panel will view the strength of the claimants' claims against Sterling, (2) the costs incurred in defending this matter, (3) the anticipated costs of defense (defense counsel's projected budget for this matter is more than $45,000), and (4) the results of the profit and loss analyses performed on the Camilleri accounts (out-of-pocket losses are approximately $112,000), we invoke the above-referenced provisions of the policy. Sterlign shall have until 30 days from receipt of this letter to agree to this Settlement Opportunity. If Sterling does not agree Underwriters will withdraw from the further defense of the Camilleri matter.

To be clear, Sterling has an opportunity to settle this matter for an amount well within the $100,000 retention. Sterling's payment of the current demand taken together with incurred Defense Costs would not exceed the applicable retention. Since the retention would not be exhausted, Underwriters would not be obligated to make any payments under the policy.[3]

As a final point, we have been notified that Sterling has not yet paid any of Marshall Dennehey's fees/expenses incurred in connection with their defense of Sterling in this matter and that Sterling has a minimum outstanding balance of $28,000. As we advised you in previous correspondence, Sterling is responsible for the payment of any Defense Costs that are incurred within the $100,000 self-insured retention. Underwriters are "only liable for the amount of Loss arising from a Claim which is in excess of the applicable Retention Amount…, such Retention Amount to be borne by the Insureds and shall remain uninsured with regard to all Loss arising from any Claim." *Section 6.* Loss is defined by the subject policy to include Defense Costs. *Section 2.(i).* In view of the foregoing policy provisions, Sterling's failure to pay Marshall Dennehey's fees in connection with this matter is unacceptable and a violation of it's obligations under the policy and at law.[4] Sterling should make arrangements to pay all of Marshall Dennehey's outstanding invoices without further delay.

Please note that nothing in this letter is intended to amend or replace the coverage positions taken in previous correspondence and we hereby continue to fully reserve all of Underwriters' rights under the policy and applicable law. We note that by referring to certain

---

[3] The Retention provisions of the policy provide that Sterling's insurers are only liable for the amount of Loss arising from a Claim which is in excess of the applicable Retention Amount.

provisions of the policy, Underwriters do not intend to waive or limit any of their rights. To the contrary, we expressly reserve all of Underwriters' rights under applicable law and under the policy, including but not limited to, the right to raise all policy terms, conditions and exclusions as defenses to coverage where appropriate.

We invite you to contact us with any questions you may have regarding the contents of this letter.

Very truly yours,

J. Hirsch (pa)
Jeffrey Hirsch

cc: Charles Garcia (*via* e-mail only)
Peter Tictin, Esq. (*via* e-mail only)
Aon (U.K., *via* e-mail only)
Aon (U.S., *via* e-mail only)
Panagiota Ainalakis, Esq.

# EXHIBIT D