# Kissel & Pesce LLP

Ms. Avila
September 20, 2006
Page No.: 2

cc:   Charles Garcia (*via* e-mail only)
      Peter Tictin, Esq. (*via* e-mail only)
      Aon (U.K., *via* e-mail only)
      Aon (U.S., *via* e-mail only)
      Panagiota Ainalakis, Esq.

# Kissel & Pesce LLP

Ms. Avila

# EXHIBIT G

# Kissel & Pesce LLP
Attorneys at Law

555 White Plains Road
Tarrytown, New York 10591

Telephone (914) 750-5933
Facsimile (914) 750-5922

September 20, 2006

CONFIDENTIAL

VIA E-MAIL AND CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Cristina Avila
Sterling Financial Investment Group, Inc.
1200 North Federal Highway, Suite 400
Boca Raton, Florida 33432

Re:   Securities Broker/Dealer Professional Liability Insurance
      Insured:        Sterling Financial Investment Group, Inc.
      Policy Ref.:    FD0504362
      Policy Period:  May 24, 2005-2006
      Policy Limits:  $1 M any one Loss/$2 M in the aggregate, xs
                      $100,000 each and every Claim retention
      Claimants:      Charles P. and Frances Camilleri
      Our File No.:   40117.00042

Dear Cristina:

It has now been more than thirty days since our August 1, 2006 letter (enclosed), which advised, among other things, that "Sterling shall have until 30 days from receipt of this letter to agree to [a] Settlement Opportunity [in the Camilleri matter]. If Sterling does not agree, Underwriters will withdraw from the further defense of the Camilleri matter."

Because Sterling did not agree to settle the Camilleri matter, we hereby advise Sterling that Underwriters further invoke the terms of Section I.C.2. of the Policy and withdraw coverage, including the defense, of this matter. Such withdrawal is effective immediately.

We invite you to contact us with any questions you may have regarding the contents of this letter.

Very truly yours,

Jeffrey Hirsch

---

| New York City | London | New Jersey |
|---|---|---|
| 60 East 42nd Street, Suite 817 | 81 Gracechurch Street | 111 Dunnell Road |
| New York, New York 10165 | London EC3V OAU, England | Maplewood, New Jersey 07040-2689 |
| Telephone (212) 557-7927 | Telephone +44 (0) 20 7398-4350 | Telephone (973) 275-1588 |
| Facsimile (212) 557-7950 | Facsimile +44 (0) 20 7398-4351 | Facsimile (973) 275-7808 |

# Kissel & Pesce LLP

Ms. Avila
September 20, 2006
Page No.: 2

cc:  Charles Garcia (*via* e-mail only)
Peter Tictin, Esq. (*via* e-mail only)
Aon (U.K., *via* e-mail only)
Aon (U.S., *via* e-mail only)
Panagiota Ainalakis, Esq.

# EXHIBIT H



KISSEL PESCE HIRSCH & WILMER

580 White Plains Rd - 5th Floor
Tarrytown, New York 10591
Main Tel: 914.750.5933
Facsimile: 914.750.5922

Direct Dial: 914.733.7770
E-Mail: jhirsch@kphwlaw.com

March 9, 2007

**CONFIDENTIAL**

**VIA E-MAIL AND CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Cristina Avila
Sterling Financial Investment Group, Inc.
1200 North Federal Highway, Suite 400
Boca Raton, Florida 33432

Re: Securities Broker/Dealer Professional Liability Insurance
Insured: Sterling Financial Investment Group, Inc.
Policy Ref.: FD0504362
Policy Period: May 24, 2005-May 24, 2006
Policy Limits: $1 million/$2 million in the aggregate, including Defense Costs excess of a $100,000 retention (includes Defense Costs)
Subject: *Frank v. Sterling*
Claimants: Howard and Diana Frank
Our File No. 40117.00045

Dear Cristina:

As you are aware, this firm represents the interests of certain Underwriters at Lloyd's ("Underwriters") that issued the referenced Securities Broker/Dealer Professional Liability Insurance policy to Sterling Financial Investment Group, Inc. ("Sterling") for claims made and reported during the period May 24, 2005 to May 24, 2006. The subject policy provides limits of liability of $1 million for each Claim and $2 million in the aggregate, in excess of a $100,000 self-insured retention for each Claim.

We understand that recent settlement negotiations with the claimants in this matter have resulted in a settlement demand of $30,000 and that payment of such demand would result in a full and final settlement of the Franks' claims against Sterling. It is our understanding that Sterling made a counter-offer to this demand in the amount of $20,000 (consisting mostly of vFinance stock), but that claimants rejected the offer and threatened to amend their Statement of Claim to name additional parties. For the reasons set forth in this letter, Sterling's insurers have authorized us to withdraw coverage for the *Frank* matter.

\* \* \*

NEW YORK | LONDON | NEW JERSEY

KISSEL PESCE HIRSCH & WILMER LLP

Cristina Avila
March 9, 2007
Page 2

  Throughout their handling of this matter, defense counsel Sutherland Asbill & Brennan advised Sterling that the Franks' out-of pocket losses are approximately $37,000 and that a settlement in the range of 25,000-$40,000 would be both reasonable and recommended. The claimants' most recent settlement demand was $30,000 and defense counsel believed that there would be some room to negotiate a further discount and achieve a settlement had the matter been mediated as scheduled. However, it appears that Sterling failed to keep enough cash on reserve for this matter and as a result, was unable to negotiate a settlement with the claimants. As such, the mediation was cancelled.

  Opportunities to mediate and arbitrate this matter were apparently jeopardized or stalled by Sterling's inability or failure to commit to having cash available to fund a settlement in this matter.

  Based on the foregoing, Underwriters have instructed us to invoke the terms of the subject policy regarding settlement opportunities. *See Section 1.C.2.Investigation and Settlement.* The relevant provisions of the policy follow:

> ...if a Settlement Opportunity[1] arises in connection with any Claim (regardless of type) and the Insured(s) do not consent to the settlement within the timeframe described below, the retention amount shall remain the applicable amount set forth in the Schedule [the retention amount is $100,000, inclusive of Defense Costs] even if consent is given to a subsequent settlement.
>
> The Insured(s) must consent to a Settlement Opportunity within thirty (30) days of the date the Insured(s) are first made aware of the Settlement Opportunity, or in the case of a Settlement Opportunity which arises from a settlement offer by the claimant then within the time permitted by the claimant to accept such settlement offer but no later than thirty (30) days. Furthermore, in the event the Insured(s) do not consent to the settlement within the timeframe described herein, the Insurer's liability for the Claim shall not exceed the amount for which the Insurer could have settled the Claim plus Defense Costs[2] incurred up to the date of the refusal to settle.
>
> In the event the Insured(s) refuse to consent to a Settlement Opportunity, the Insurer shall have the right but not the obligation

---

[1] According to the policy, a "Settlement Opportunity" exists if the Insurer recommends a settlement that does not exceed the policy's applicable Limit of Liability and which is acceptable to the claimant (a "Settlement Opportunity").... *Section 1.C.2.Defense, paragraph two.*

[2] Defense Costs are defined by the policy as "reasonable and necessary fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of a Claim against an Insured(s), but excluding salaries of any Insured. *Section 2.(d) "Defense Costs."*

KISSEL PESCE HIRSCH & WILMER LLP

Cristina Avila
March 9, 2007
Page 3

to continue the defense of the Claim after the date of the refusal to settle and may in such a case, at any time after the date of the refusal to settle, withdraw from the further defense of the Claim by tendering control of the defense to the Insured.

Claimants have represented a willingness to settle this matter for $30,000. This opportunity is within the policy's $1 million limit of liability and within Sterling's $100,000 self-insured retention. Based on: (1) the fact that this matter presented Sterling with a settlement opportunity between $20,000 (defense counsel's estimation) to $30,000 (claimants' pre-mediation settlement demand) at mediation in early January 2007 and defense fees could have been capped; (2) the results of the profit and loss analyses performed on the accounts (out-of-pocket losses are approximately $37,000); (3) the fact that claimants now want to amend their claims to name additional parties, which will increase the cost of defense; and (4) the fact that it's unclear how a panel will view the strength of claimants' claims against Sterling, we invoke the above-referenced provisions of the policy.[3]

We are advised, moreover, that Sterling has not paid defense counsel for any of the services rendered to date and $61,136.48 in (unaudited) fees and costs remain outstanding. These Defense Costs remain within Sterling's $100,000 self-insured retention and, as we previously advised you, should be paid promptly to Sutherland Asbill. There have been serious adverse consequences to the handling of the *Frank* matter based on Sterling's failure to pay these Defense Costs, including Sutherland Asbill's withdrawal as counsel for Sterling.

We have advised you on numerous occasions that Sterling is responsible for the payment of any Defense Costs that are incurred within the $100,000 self-insured retention. Underwriters are "only liable for the amount of Loss arising from a Claim which is in excess of the applicable Retention Amount..., such Retention Amount to be borne by the Insureds and shall remain uninsured with regard to all Loss arising from any Claim." Section 6. Loss is defined by the subject policy to include Defense Costs. Section 2.(i). In view of the foregoing policy provisions, Sterling's failure to pay Sutherland Asbill & Brennan's fees in connection with this matter is unacceptable and a violation of it's obligations under the policy and at law.

If Sterling pays Sutherland Asbill's outstanding balance and settles the *Frank* matter (for $30,000 or less) within the next thirty (30) days, we will retract our client's withdrawal position. Please be aware that we intend to bring this matter to the attention of the mediator that has been selected to mediate the claim we instituted against Sterling and Mr. Garcia before the AAA's International Centre for Dispute Resolution (case no. 50 174 V 00416 06). We are amending our AAA claim formally to include the *Frank* matter as part of that proceeding.

Please note that nothing in this letter is intended to amend or replace the coverage positions taken in previous correspondence and we hereby continue to fully reserve all of Underwriters' rights under the policy and applicable law. We note that by referring to certain

---

[3] The Retention provisions of the policy provide that Sterling's insurers are only liable for the amount of Loss arising from a Claim which is in excess of the applicable Retention Amount.

KISSEL PESCE HIRSCH & WILMER LLP

Cristina Avila
March 9, 2007
Page 4

provisions of the policy, Underwriters do not intend to waive or limit any of their rights. To the contrary, we expressly reserve all of Underwriters' rights under applicable law and under the policy, including but not limited to, the right to raise all policy terms, conditions and exclusions as defenses to coverage where appropriate.

We invite you to contact us with any questions you may have regarding the contents of this letter

Very truly yours,

Jeffrey Hirsch

JH/mda

cc:  Charles Garcia (*Via* E-mail Only)

Peter Tictin, Esq. (*Via* E-mail Only)

Aon (U.S., *Via* E-Mail Only)

Panagiota Ainalakis-Barone, Esq.

# EXHIBIT I